| | |
|---|---|
| Adam R. Alper (SBN: 196834) <br> adam.alper@kirkland.com <br> Laura Vartain Horn (SBN: 258485) <br> laura.vartain@kirkland.com <br> KIRKLAND & ELLIS LLP <br> 555 California Street <br> San Francisco, CA 94104 <br> Telephone:   (415) 439-1400 <br><br> Michael W. De Vries (SBN: 211001) <br> michael.devries@kirkland.com <br> KIRKLAND & ELLIS LLP <br> 695 Town Center Drive <br> Costa Mesa, CA 92626 <br> Telephone:   (714) 982-9922 <br><br> Leslie M. Schmidt (admitted *pro hac vice*) <br> leslie.schmidt@kirkland.com <br> KIRKLAND & ELLIS LLP <br> 601 Lexington Avenue <br> New York, NY 10022-4611 <br> Telephone:   (212) 446-4800 <br><br> Maria M. Beltran (SBN: 327237) <br> maria.beltran@kirkland.com <br> KIRKLAND & ELLIS LLP <br> 2049 Century Park East, Suite 3700 <br> Los Angeles, CA 90067 <br> Telephone:   (310) 552-4200 <br><br> *Attorneys for Plaintiff Apple Inc.* | Annabel Hayoung Chang (SBN: 267261) <br> annabel@ahc-law.com <br> 39116 Fremont Hub #1121 <br> Fremont, CA 94536 <br> Telephone:   (510) 404-8186 <br><br> *Attorney for Defendant Chen Shi* <br><br> Robyn Carrico Crowther (SBN: 193840) <br> Rcrowther@steptoe.com <br> Sara Alwash Morse (SBN: 347086) <br> smorse@steptoe.com <br> STEPTOE LLP <br> 633 West Fifth Street, Suite 1900 <br> Los Angeles, CA 90017 <br> Telephone:   (213) 439-9428 <br><br> *Attorneys for Defendant Guangdong Oppo Mobile Telecommunications Corp., Ltd.* <br><br> Randall Evan Kay (SBN: 149369) <br> rekay@jonesday.com <br> JONES DAY <br> 4655 Executive Drive, Suite 1500 <br> San Diego, CA 92121 <br> Telephone:   (858) 314-1139 <br><br> *Attorneys for Defendant InnoPeak Technology, Inc.* <br><br> [Additional counsel in signature page] |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC., <br><br> Plaintiff, <br><br> v. <br><br> CHEN SHI, GUANGDONG OPPO MOBILE TELECOMMUNICATIONS CORP., LTD., and INNOPEAK TECHNOLOGY, INC., <br><br> Defendants. | CASE NO. 5:25-CV-07105-EKL <br><br> **JOINT STATUS REPORT** <br><br> Date: August 29, 2025 <br> Time: 3:00 pm <br> Judge: Honorable Eumi K. Lee <br> Complaint Filed:  August 21, 2025 |

Plaintiff Apple Inc. ("Apple"), Defendant Chen Shi ("Dr. Shi"), Defendant Guangdong Oppo Mobile Telecommunications Corp., Ltd. ("OPPO"), and Defendant InnoPeak Technology, Inc. ("InnoPeak"), by and through their respective undersigned counsel, hereby submit the following joint status report, pursuant to the Court's August 26, 2025 Order approving the parties' Joint Status Report (Dkt. 31). Pursuant to the agreement of the parties and Court Order, the parties submit this joint statement on the two required issues for submission: (1) proposed schedule for preliminary injunction proceedings; (2) expedited discovery, and set out their respective positions below.

I.   **Proposed Schedule for Preliminary Injunction Proceedings**

   A.   **Apple's Statement**

The Proposed Order that Apple submitted in connection with its *Ex Parte* Application for a Temporary Restraining Order requested Defendants be enjoined from disclosing, retaining, or using "any Apple confidential information or trade secrets." At the guidance of the Court, and in an effort to halt the most egregious aspects of Defendants theft, Apple agreed to a narrower provision that was limited to the specific files listed in Attachment A to the order and other Apple materials that Defendants identified in their investigation. The theft in this case, however, goes beyond that information, as Apple's complaint and TRO made clear. Dkt. 1 ¶¶ 7, 10, 72-75; Dkt. 11 at 2, 6-8, 13-15 (describing 1:1 meetings that Dr. Shi set up under false pretenses to induce Apple employees to share trade-secret information). As such, expedited discovery, in combination with a preliminary injunction, is critical to fully protect Apple's trade secrets during the pendency of this action.

On August 28, 2025, the parties submitted their joint status report (Dkt. 29), which the Court approved. Dkt. 31. In the joint status report, the parties stated: "The parties jointly request that they be permitted to provide ***a proposed briefing schedule***" for a preliminary injunction "on Thursday, August 28, 2025." Dkt. 31 at 1 (emphasis added). The Court's stipulated interim measures order even recognizes "Apple's forthcoming preliminary injunction motion." (Dkt. 30 at 2.) The parties also jointly told the Court that "[t]he parties are in agreement that expedited discovery ***will be conducted and that it begins immediately.***" Dkt. 31 at 1. (emphasis added). Defendants now backtrack and refuse to agree to a briefing schedule or participate in expedited discovery. Apple negotiated and agreed to the interim relief ordered

by the Court (Dkt. 31) based on Defendants' representations during Monday's hearing and the subsequent meet and confer process, and respectfully requests that the Court enter a briefing schedule for a preliminary injunction (discussed in this section) and for expedited discovery (discussed in the section below).

Defendants' transparent attempts to delay this case, and obstruct Apple's ability to ascertain whether the interim relief is sufficient, should be rejected.[1] Defendants contend that the Court should divert from traditional steps in circumstances like this where there is evidence of a massive theft—*i.e.,* expedited discovery followed by a preliminary injunction briefing and hearing—and instead pause all such activities. InnoPeak and OPPO already had their chance to stop the theft when Dr. Shi told them that he was going to collect Apple confidential information for use at his new job with Defendants. But instead, as set out in detail in Apple's complaint and TRO, they encouraged it. Dkt. 1 at 2, 17-18 ;Dkt. 11-1 at 8, 13-14. As such, Defendants should not be permitted to be the sole arbiter of their own malfeasance, while Apple's confidential information is further disseminated through Defendants' organizations. Indeed, Dr. Shi has been communicating with Defendants about Apple confidential information for months, and has been working onsite with Defendants since at least June. Tellingly, Defendants claim that the existing interim relief provides adequate relief, but admit that they have not materially begun any investigation to be in a position to determine if that is true. Defendants also fail to appreciate the terms and force of the interim relief, further demonstrating the need for a preliminary injunction and discovery. Innopeak, for example, claims that it is taking actions "to remediate any Apple information deserving of remediation, if any (Stipulation at pages 2-3)." The interim relief, however, does not permit Defendants to deem what "Apple information" is worthy of "remediation" (presumably, Innopeak means "quarantine" and not "remove" by its use of "remediate," as that would be contrary to the interim relief). OPPO also claims that there is "nothing left to brief" because Apple has not sufficiently identified what other information is in Defendants' possession, but that is precisely why expedited discovery is necessary—to determine what additional measures are necessary to protect Apple's intellectual property.

Accordingly, Apple proposes the following schedule for proceedings on its forthcoming motion

---

[1] Innopeak was served today, and Apple will file the summons as soon as the proof of service is finalized.

for preliminary injunction. The schedule follows the briefing schedule and page limits in the Local Rules. To the extent that Defendants file separate opposition briefs, Apple will endeavor to file a single reply within the page limits, but respectfully requests that it be permitted to file separate replies if it is not feasible to file a single, 15-page reply in response to separate briefing from Defendants.

| Event | Deadline | Page Limit |
|---|---|---|
| Apple to file motion for preliminary injunction | October 7, 2025 | 25 pages |
| Defendants' opposition brief(s) | October 21, 2025 | 25 pages |
| Apple's reply brief(s) | October 28, 2025 | 15 pages |
| Preliminary injunction hearing | To be set by the Court | |

### B. Shi's Statement

During the parties' meet and confer on August 28, 2025, OPPO asserted that there was no need for a preliminary injunction if the parties agreed to extend the terms of the interim relief. Dr. Shi agrees with this position.

In addition, there are legal and logistical challenges to participating in discovery that Dr. Shi requires time to analyze and resolve, and he believes that providing responses to written discovery by October 17, 2025, is sufficient, while depositions are premature.

### C. OPPO's Statement

OPPO has not reneged on any agreement that it made with Apple. To the contrary, OPPO has offered to extend that agreement until further order of the Court. For its part, Apple is unable to articulate any additional relief to which it might be entitled now that the interim relief is in place. Unwilling to take yes for an answer, Apple has instead misrepresented OPPO's position and insisted upon unrealistic and unnecessary deadlines. Apple asserts that OPPO and the other Defendants should not be permitted to investigate the claims Apple has made before engaging in the discovery process

because it would be prejudicial and inequitable for them to do so. That is nonsensical: Any party to a lawsuit must investigate the opposing party's claims before responding to discovery requests.

It is unclear how Apple believes a corporate entity such as OPPO (without tens of thousands of employees) would go about responding to questions about actions of one or two individuals that it learned about less than two weeks ago. What Apple attempts to characterize as nefarious conduct is just fact gathering that any party to litigation must do before responding to questions under oath. That is why Parties – whether individuals or entities – generally have a minimum of 30 days to respond to discovery requests. To the extent that the factual investigation allowed the opportunity for misconduct, there are already orders in place to prevent it.

To resolve the need for the Court to rule on Apple's *Ex Parte* Application for a Temporary Restraining Order ("TRO Application"), Defendants stipulated to interim measures that preserved the status quo and agreed that expedited discovery could begin. Notably, this was at the Court's suggestion. OPPO was prepared to oppose the TRO Application and believes that it would have been denied as Apple offered no showing of irreparable harm and the orders it sought were impermissibly vague and overly broad. Faced with the prospect of an unsuccessful Application, Apple largely accepted the reasonable interim measures that Defendants proposed.

OPPO agreed to search for more than 500 files identified by Apple, and files or materials derived from, concerning or referencing those files, on the devices and systems to which Shi had access. If OPPO finds any such files or materials, OPPO has agreed to quarantine and preserve them. OPPO also agreed to quarantine and preserve any company-issued devices issued to Zeng or Shi and to prevent Zeng and Shi from accessing their facilities and systems. OPPO is willing to agree to extend those interim measures until further order of the Court.

If those agreements are extended, OPPO believes Apple's request for further preliminary injunctive relief is mooted. The Proposed Order Apple submitted with its TRO Application sought three specific things:

1. To enjoin Defendants from "disclosing, retaining or using any Apple confidential information or trade secrets;"

2. To require Defendants to preserve all documents, data, devices, communications, and other evidence potentially relevant to the facts and circumstances of this case; and

3. To require Defendants to return to Apple "all Apple confidential information or trade secrets" in their possession, custody or control.

As to the second item, OPPO has already agreed to preserve relevant information and was obligated to do so under the law once it became aware of OPPO's claims. As such, no further interim order is necessary.

Regarding the third item, OPPO cannot return documents or materials to Apple as it has obligations to preserve them under various laws, but it has agreed to quarantine them and will agree to continue to do so unless and until an order of the Court modifying this agreement is entered. Again, no further relief is permitted or necessary.

OPPO has also largely agreed to the relief sought in Item 1, except that the agreement is more specific and narrow than what appeared in Apple's Proposed Order. The Court noted during the August 25, 2025 status conference that Apple's original Proposed Order was overly broad. There is no way for OPPO to identify "Apple confidential information" or "trade secrets" as Apple never defines those terms in any of the papers it has filed beyond the specific files OPPO has already agreed to look for, preserve and quarantine. Apple has already obtained all the provisional relief to which it might be entitled. As such, there is nothing for the Parties to brief.

    **D.**    **InnoPeak's Statement**

This lawsuit was filed just last week on August 21, 2025. On August 26, 2025, the parties agreed and the Court ordered that the Defendants would preserve certain documents and conduct fact investigations as to whether any defendant is in possession of certain files and information identified by Apple. *See* August 26, 2025 Stipulation and Order Regarding Interim Measures ("Stipulation") [Dkt. 28]. Jones Day entered their appearance on behalf of Defendant InnoPeak earlier today, August 28, 2025. Jones Day has begun conducting that fact investigation on behalf of InnoPeak.

InnoPeak submits that the parties' Stipulation greatly informs the next steps to be taken here. Pursuant to the Stipulation, actions are underway by InnoPeak to remediate any Apple information deserving of remediation, if any (Stipulation at pages 2-3). It is necessary for InnoPeak's investigation to be completed for the parties to know if there is any need for further early proceedings or not. As a practical matter, InnoPeak cannot produce discovery that comes from an investigation until it performs the investigation. This is not a case of refusal to produce discovery; rather, it is infeasible to produce discovery until the investigation is carried out in a meaningful way. That takes reasonable time. As the Stipulation speaks to immediate commencement of expedited discovery, it is already underway. InnoPeak has begun its investigation as agreed to in the Stipulation, and once completed InnoPeak will produce results of the investigation to Apple in the form of discovery responses when those investigative results are available.

At this time, there is no indication of need for preliminary relief beyond that provided in the Stipulation. Instead, InnoPeak believes that the existing Stipulation can sufficiently protect the parties' rights. InnoPeak would be agreeable to modification of the Stipulation to provide that it shall remain in force until further order of the court. This would allow any party to seek modification for good cause shown.

InnoPeak understands that Apple seeks expedited discovery and a schedule for preliminary injunction briefing. InnoPeak submits that these requests are premature. At this early stage, it is

difficult to predict the exact time required for InnoPeak to conduct the investigation set forth in the Stipulation. Thus, InnoPeak proposes that the Court schedule a status conference in four weeks, at which time InnoPeak believes it will have completed or substantially completed the investigation agreed to in the Stipulation. InnoPeak proposes that it will then serve its objections and responses to Apple's expedited written discovery 21 days later (needing the results of the investigation in order to respond to the discovery). At that time, Apple can determine based on the results of the defendants' investigations whether any preliminary injunction briefing is needed, the scope of that briefing, which defendant(s) are impacted by the briefing, and the nature of a reasonable schedule. InnoPeak additionally requests that the Court order that InnoPeak answer or otherwise respond to the complaint within 45 days after service. Accordingly, InnoPeak proposes the following deadlines:

| Event | Proposed Date |
|---|---|
| Status Conference Regarding Investigation | September 26, 2025 |
| InnoPeak Provides Objections/Responses to Expedited Written Discovery | October 17, 2025 |
| InnoPeak Answer or Otherwise Respond to Complaint | Service + 45 days |
| Preliminary Injunction Briefing, if needed | To commence following completion of the defendants' ongoing investigations, reporting of results, and any necessary expedited discovery, anticipated to be October 17, 2025 |

InnoPeak respectfully submits that InnoPeak's proposal is a logical and efficient order of next steps. First, there is no exigency. The Stipulation sufficiently preserves relevant documents and prevents their use. Second, any Apple preliminary injunction motion necessarily will be informed by the outcome of the stipulated investigation and written discovery responses. Third, motions under Rule 12 must be decided first.

## II. Plaintiff's Request for Expedited Discovery, as Detailed in the TRO Motion

### A. Apple's Statement

In the Joint Status Report approved by the Court (Dkt. 31), the parties stated that they "are in agreement that expedited discovery **will be conducted and that it begins immediately.**" Following submission of that agreement to the Court, Plaintiff served narrowed discovery on Defendants, in the form of interrogatories (4 to each defendant), requests for production (4 to each defendant), deposition notices to Drs. Shi and Zeng, and a 30(b)(6) notice to the corporate defendants (8 topics). *See* Exhibit A. Apple's discovery is not, as OPPO claims "full merits discovery." It is narrowly tailored, and Apple narrowed its interrogatories and requests for production from what it submitted with the TRO. Regardless, if OPPO believed Apple's discovery was too broad, it could have conferred with Apple on that point, but it did not. Despite Defendants' representations to Apple and the Court, Defendants now will not engage in expedited discovery. And Defendants refused to provide any schedule for that discovery at all, and instead are insisting that they be permitted to conduct their own, internal investigation, on their own time frame, before providing Apple any information into the extent of the theft through an expedited discovery process. Allowing Defendants to conduct a unilateral investigation into their own malfeasance while depriving Apple of the ability to use the discovery processes provided by the Federal Rules of Civil Procedure to discover the full extent of the theft prior to preliminary injunction proceeding would severely prejudice Apple. Apple respectfully requests that the Court order expedited discovery, as the parties initially agreed, and submits that there is good cause to do so, as set out below.

Expedited discovery is routinely ordered in cases such as this, where there is direct evidence of serious acts of misappropriation. This is necessary here: to date, Apple has been able to uncover at least *part* of the Defendants' scheme to steal Apple's trade secrets and use that information to the OPPO Defendants' benefit. Despite the strong indications that Defendants engaged in very serious acts of misappropriation—including the fact that Defendants put Dr. Shi and another Oppo employee on leave,—Oppo has not revealed the extent of the dissemination, and the full extent of Defendants' misappropriation, and the full range of necessary remedial steps, is not yet known. Dr. Shi deleted materials from his Apple-owned devices to obscure the full extent of precisely what he took and how he shared those materials with

the OPPO Defendants.  Further, Apple has no access to Defendants' devices, systems, and personnel to assess how broad the dissemination of Apple's trade secrets has been.

As a result, the existing interim measures are likely insufficient to protect the full extent of what was stolen, and expedited discovery is critical to ensuring that the preliminary injunctive relief has the appropriate scope and provides sufficient specificity.  *See, e.g.*, *Comet Techs. United States of Am. v. Beuerman*, 2018 WL 1990226, at *6 ("Quickly determining what information Defendant removed from Plaintiff, and whether and how Plaintiff's information is being used by Plaintiff's competitors is essential in order to minimize any harm to Plaintiff's competitive position."); *Pyro Spectaculars N., Inc. v. Souza*, 861 F. Supp. 2d 1079, 1086 (E.D. Cal. 2012) (granting forensic examination and depositions).  Accordingly, Apple's need for this discovery is significant.  *Semitool, Inc. v. Tokyo Electron Am. Inc.*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002) ("Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.").

Allowing Defendants to conduct their own investigation before engaging in the discovery process is also highly prejudicial and inequitable, given that Defendants are the parties that engaged in the malfeasance that is the subject of these proceedings.  *See Sierra Club v. Trump*, 929 F.3d 670, 706 (9th Cir. 2019) (in discussing balance of equities, Ninth Circuit considered that concern for defendants' harm "would, in effect, reward them for self-inflicted wounds"). The mere fact that Defendants are unwilling to provide fulsome disclosures in view of the direct evidence of massive theft in this case is itself cause for great concern, given the high risk that the misappropriated materials will be further disseminated within Defendants and beyond while their "investigation" unfolds.  Defendants should not be permitted to shield highly relevant information from Apple under the guise of an internal "investigation" into their own unlawful conduct—which raises a host of valid concerns on Apple's part—before engaging in any discovery with Apple.  Defendants agree that they are going to conduct some sort of investigation in the theft, so they are not prejudiced by conducting that investigation in a bilateral fashion, as part of expedited discovery in this case in which Apple (the trade secret owner) is permitted to participate.  Defendants claim that they cannot participate in discovery because they have to first conduct an investigation.  But in every case, a party must conduct some sort of investigation before responding to discovery, and that is not

a basis for declining to engage in expedited discovery, particularly given the detailed information Defendants have, via Apple's complaint, TRO briefing, and discovery requests, about what they should be looking for. Defendants should not be permitted to delay their participation in that process so they can conduct an "investigation" on their own. Defendants' investigation and their discovery responses can proceed in parallel, as is typical of cases in federal court.

And while Defendants claim they require 30 days to perform an investigation before discovery can commence, that is incorrect: for instance, Drs. Shi and Zeng's devices can be turned over to a forensic examiner to search for Apple confidential material, transfers of such material to other destinations, and deletions of such material. Additionally, Defendants' email files can be immediately searched for Apple material and references to the use of it. Likewise, Drs. Shi and Zeng can be immediately questioned about their conduct, and promptly made available for deposition. None of these critical activities need wait for an extended investigation to be completed.

Apple respectfully proposes the following schedule for expedited discovery.

| Event | Deadline |
|---|---|
| Apple to serve narrowed discovery requests: | August 26, 2025 |
| Defendants to respond to Apple's discovery requests | September 9, 2025. |
| Defendants to produce documents responsive to Apple's requests | September 16, 2025 |
| Mr. Shi, Mr. Zeng, 30(b)(6) deponents to be made available for deposition | The week of September 22, 2025 |
| Any remaining issues to be raised with the Court | September 29, 2025 |

**B.     Shi's Statement**

*See* § I.B. above

**C.     OPPO's Statement**

On August 26, 2025, Apple served Amended Requests for Production and Interrogatories and Notices of Deposition for Shi and non-party Zijing Zeng. On August 28, 2025, Apple served Notices of

Deposition for InnoPeak and OPPO. Contrary to Apple's position, OPPO has not refused to participate in expedited discovery, but instead has identified practical limitations that make Apple's deadlines unworkable and substantive issues that make them unnecessary.

A party must show good cause for expedited discovery. *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 274 (N.D. Cal. 2002). Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party. *Rovio Ent. Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1099 (N.D. Cal. 2012). Factors to consider include the reason for requesting expedited discovery, and the burden on the opponent to comply. *Id.* Apple requested expedited discovery so that it might augment its motion for preliminary injunction. As demonstrated above, there is no longer any need for any further provisional relief, and so no need for expedited discovery. *Rebecca Bamberger Works, LLC v. Bamberger*, 2024 WL 3552190, at *2 (S.D. Cal. June 17, 2024) (injunctive relief is already in place weighs against allowing expedited discovery). Apple has not identified any additional, specific provisional relief that it needs, and consequently, cannot point to any category of discovery that it needs to seek that relief. Under such circumstances, it is appropriate to deny a request for expedited discovery. *Rovio*, 907 F.Supp. at 1100.

That said, OPPO has not categorically refused to participate in expedited discovery. OPPO has raised no objection that Apple served discovery before the Parties' Rule 26 Conference. OPPO instead disputes that its deadline to respond to that discovery should be expedited. The only discovery that might be justified at this point would be to assure Apple that the measures OPPO agreed to are sufficient to prevent the dissemination of any of Apple's material that may be in OPPO's possession custody or control. Before OPPO can provide those assurances, however, it must investigate Apple's claims – claims that OPPO learned of fewer than 10 days ago.

Additionally, because Apple has designated its materials as Highly Confidential, OPPO must hire a vendor, supervised by outside counsel, to search for the documents to avoid exposing them to

OPPO employees. OPPO has engaged a vendor and that investigation is under way, but OPPO must have at least preliminary results from the investigation before it is able to respond to written discovery requests about whether Apple's files appear on OPPO's systems and what OPPO has done to locate and contain them. There are other logistical and legal limitations on the ability to respond to discovery, particularly on the production information that exists in China, that OPPO will be prepared to discuss with the Court. But under no circumstances will OPPO be able to meet the deadlines Apple has proposed.

The discovery Apple has served also includes overly broad and vague definitions that make responses extraordinarily difficult. Courts "generally deny motions for expedited discovery when the movant's discovery requests are overly broad." *Philadelphia Newspapers, Inc. v. Gannett Satellite Info.*, 1998 WL 404820 at *2 (E. D. Pa. July 15, 1998)(citation omitted). Apple claims that it served "narrowed" discovery on Defendants yet fail, once again, to provide meaningful definitions for terms like "Apple Trade Secret Information" and "Apple Originated Document(s)" necessary for responding to their discovery requests. While Apple provided a list of some documents at issue, their requests admittedly seek material beyond the defined list and they provide no way for OPPO to identify the information they seek.[2] The discovery requests also cover the full range of Apple's claims, and OPPO has the right to raise various challenges to Apple's Complaint under F. R. Civ. P. 12 which should be resolved before it is required to participate in full merits discovery.

---

[2] Apple defines "Apple Trade Secret Information" as "any Apple trade secrets (as defined by the Defend Trade Secrets Act and any other applicable statute or case law) including, without limitation, as identified in the Complaint in the above-captioned action (and any amendments thereto) and supporting documents, and/or identified in any trade secret disclosures (and any amendments thereto) provided by Apple in connection with discovery in this action. This includes the documents identified on Exhibit A to the parties' Stipulation and any recording of information Mr. Shi obtained from 1:1 meetings with Apple engineers, including as it relates to unannounced products." No further information is provided regarding the "1:1 meetings," such as when they took place, with whom, where, or what was discussed, nor does it provide a definition for "unannounced products."

OPPO therefore suggests setting another conference on September 26, 2025 to discuss the status of its investigation and any open issues that may have arisen. OPPO proposes to serve written responses to Apple's Requests for Production and Interrogatories on or before October 17, 2025. These responses will include OPPO's objections and substantive responses to the extent OPPO agrees and is able to provide them.

The depositions that Apple has noticed are premature. Before a corporate representative for OPPO can respond to Apple's questions, at least OPPO's preliminary investigation must be complete. OPPO therefore suggests that depositions and the need for the Parties to brief any requests for further injunctive relief be discussed after the written discovery responses have been provided.

### D. InnoPeak's Statement

See § I.D. above

Respectfully submitted this 28th day of August, 2025.

/s/ Adam R. Alper
Adam R. Alper (SBN: 196834)
adam.alper@kirkland.com
Laura Vartain Horn (SBN: 258485)
laura.vartain@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone:    (415) 439-1400

Michael W. De Vries (SBN: 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
695 Town Center Drive
Costa Mesa, CA 92626
Telephone:    (714) 982-9922

Leslie M. Schmidt (admitted *pro hac vice*)
leslie.schmidt@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022-4611
Telephone:    (212) 446-4800

Maria M. Beltran (SBN: 327237)

/s/ Annabel Hayoung Chang
Annabel Hayoung Chang (SBN: 267261)
annabel@ahc-law.com
39116 Fremont Hub #1121
Fremont, CA 94536
Telephone:    (510) 404-8186

*Attorney for Defendant Chen Shi*

/s/ Robyn Carrico Crowther
Robyn Carrico Crowther (SBN: 193840)
Rcrowther@steptoe.com
Sara Alwash Morse (SBN: 347086)
smorse@steptoe.com
STEPTOE LLP
633 West Fifth Street, Suite 1900
Los Angeles, CA 90017
Telephone:    (213) 439-9428

*Attorneys for Defendant Guangdong Oppo Mobile Telecommunications Corp., Ltd.,*

/s/ Randall Evan Kay
Randall Evan Kay (SBN: 149369)
rekay@jonesday.com

| | | |
|---|---|---|
| 1 | maria.beltran@kirkland.com<br>KIRKLAND & ELLIS LLP | JONES DAY<br>4655 Executive Drive, Suite 1500 |
| 2 | 2049 Century Park East, Suite 3700<br>Los Angeles, CA 90067 | San Diego, CA 92121<br>Telephone:   (858) 314-1139 |
| 3 | Telephone:   (310) 552-4200 | Jennifer Diane Bennett (SBN: 235196) |
| 4 | *Attorneys for Plaintiff Apple Inc.* | jenniferbennett@jonesday.com<br>Matthew Chung (SBN: 339854) |


maria.beltran@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone:   (310) 552-4200

*Attorneys for Plaintiff Apple Inc.*

JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA 92121
Telephone:   (858) 314-1139

Jennifer Diane Bennett (SBN: 235196)
jenniferbennett@jonesday.com
Matthew Chung (SBN: 339854)
mchung@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104-1500
Telephone:   (415) 875-5795

*Attorneys for Defendant InnoPeak Technology, Inc.*

**ATTESTATION:** Pursuant to Local Rule 5-1(i)(3) I hereby attest that concurrence in the filing of this document has been obtained from Annabel Hayoung Chang, Robyn Carrico Crowther and Randall Evan Kay.

<div style="text-align:right">

*/s/ Adam R. Alper*
Adam R. Alper

</div>