Robyn C. Crowther (State Bar No. 193840)
*rcrowther@steptoe.com*
Sara A. Morse (State Bar No. 347086)
*smorse@steptoe.com*
**STEPTOE LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone:     (213) 439-9400
Facsimile:     (213) 439-9599

Boyd T. Cloern (*admitted pro hac vice*)
*bcloern@steptoe.com*
Yueyue Wang (*admitted pro hac vice*)
*gwang@steptoe.com*
**STEPTOE LLP**
1330 Connecticut Avenue NW
Washington, DC 20036
Telephone:     (202) 429-2000
Facsimile:     (202) 429-3902

David Eiseman (State Bar No. 114758)
*davideiseman@quinnemanuel.com*
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, Ca 94111
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Ryan Landes (State Bar No. 252642)
*ryanlandes@quinnemanuel.com*
Patrick T. Schmidt (State Bar No. 274777)
*patrickschmidt@quinnemanuel.com*
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

*[Additional counsel in signature page]*

Attorneys for Defendant
GUANGDONG OPPO MOBILE
TELECOMMUNICATIONS
CORP., LTD.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC.,<br><br>             Plaintiff,<br><br>       v.<br><br>CHEN SHI, GUANGDONG OPPO MOBILE TELECOMMUNICATIONS CORP., LTD., and INNOPEAK TECHNOLOGY, INC.,<br><br>             Defendants. | Case No. 5:25-cv-07105-EKL<br><br>**DEFENDANT GUANGDONG OPPO MOBILE TELECOMMUNICATIONS CORP, LTD'S MOTION TO DISMISS**<br><br>Date:        December 17, 2025<br>Time:        10:00 a.m.<br>Courtroom:  7<br>Judge:       The Hon. Eumi K. Lee<br><br>Trial Date:  None Set |

1

2

<u>**NOTICE OF MOTION AND MOTION**</u>

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3   PLEASE TAKE NOTICE that on December 17, 2025 at 10:00 a.m. or as soon thereafter as

4   the matter may be heard in the above-entitled Court, the Honorable Eumi K. Lee presiding, located

5   at the San Jose Courthouse, Courtroom 7, 4th Floor, 280 South 1st Street, San Jose, CA 95113,

6   Defendant Guangdong OPPO Mobile Telecommunications Corp., Ltd. ("OPPO") will and hereby

7   does move this Court for an order dismissing Plaintiff Apple Inc.'s ("Apple") Complaint as to OPPO

8   pursuant to Federal Rule of Civil Procedure 12(b)(6).

9   Pursuant to section VIII(A) of the Court's Standing Order for Civil Cases, Counsel for OPPO

10   certifies that it met and conferred with counsel for Apple regarding the substance of this motion on

11   October 6, 2025.  No agreement could be reached.

12   This motion is made on the grounds that Apple's Complaint fails to state a claim for which

13   relief may be granted against OPPO.

14   This motion is based on this Notice of Motion and Motion, the accompanying Memorandum

15   of Points and Authorities, the other pleadings and filings on record in this action, as well as other

16   written or oral argument that OPPO may present to the Court.

17

18

19

20

21

22

23

24

25

26

27

28

Dated: October 13, 2025

**STEPTOE LLP**

By:   /s/ Robyn C. Crowther
        Robyn C. Crowther
        Boyd T. Cloern (*admitted pro hac vice*)
        Yueyue Wang (*admitted pro hac vice*)
        Sara A. Morse

Paul J. Stancil (*admitted pro hac vice*)
*pstancil@steptoe.com*
717 Texas Avenue, Suite 2800
Houston, TX 77002
Telephone:    (713) 221-2300
FACSIMILE:  (713) 221-2320

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

David Eiseman
Ryan Landes
Patrick T. Schmidt

Yixuan Zhu (*admitted pro hac vice*)
*yixuanzhu@quinnemanuel.com*
Central Park Plaza, 13th Floor
10 Chaoyang Park South Road
Chaoyang District
Beijing 100026, China
Telephone: +86 10 53350105

Joseph E. Reed (State Bar No. 323524)
*joereed@quinnemanuel.com*
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, Ca 94065
Telephone: (650) 801-5000

GUANGDONG OPPO MOBILE
TELECOMMUNICATIONS CORP., LTD.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION.................................................................................................1

II.     RELEVANT ALLEGATIONS IN APPLE'S COMPLAINT.................................1

III.    LEGAL STANDARD ...........................................................................................3

IV.     ARGUMENT ........................................................................................................3

    A.      Apple Fails to Plead Ownership of Any Trade Secret ...............................4

    B.      Apple Fails to Plead that OPPO Misappropriated Any Alleged Trade Secret...........9

        1.      Apple Fails to Plausibly Allege Direct Misappropriation by OPPO.............9

        2.      Apple Fails to Plausibly Allege Indirect Misappropriation by OPPO .........13

        3.      Apple Fails to Differentiate Between OPPO and InnoPeak........................20

    C.      Apple Fails to Allege Any Damages Caused by OPPO...........................21

V.      CONCLUSION ..................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page**

### <u>Cases</u>

*Agensys, Inc. v. Regents of the Univ. of Cal.*,
   Case No. CV 24-3961-JFW(PDx), 2024 WL 5679166 (C.D. Cal. Oct. 22,
   2024) .................................................................................................................. 20

*Alert Enter., Inc. v. Rana*,
   No. 22-cv-06646-JSC, 2023 WL 2541353 (N.D. Cal. Mar. 16, 2023) ................................... 11

*AlterG, Inc. v. Boost Treadmills LLC*,
   388 F. Supp. 3d 1133 (N.D. Cal. 2019) .................................................................... 9

*Apple Inc. v. Rivos, Inc.*,
   2023 WL 5183034 (N.D. Cal. Aug. 11, 2023) .............................................. 10, 12, 13, 14, 20

*Arthur J. Gallagher & Co. v. Tarantino*,
   498 F. Supp. 3d 1155 (N.D. Cal. 2020) ..................................................................... 9, 12, 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 3

*Attia v. Google LLC*,
   983 F.3d 420 (9th Cir. 2020) ................................................................................. 7

*Beatport LLC v. SoundCloud Ltd*,
   2020 WL 3977602, No. CV 19-847 MRW (C.D. Cal. July 13, 2020) ................................... 20

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................ 17

*BGC Partners, Inc. v. Avison Young (Canada) Inc.*,
   75 N.Y.S.3d 1 (Sup. Ct. 2018) .............................................................................. 11

*CleanFish, LLC v. Sims*,
   No. 19-cv-03663-HSG, 2020 WL 4732192 (N.D. Cal. Aug. 14, 2020) ................. 5, 6, 16, 19

*Cooper Interconnect, Inc. v. Glenair, Inc*,
   No. CV 14–08018–RGK, 2015 WL 13722129 (C.D. Cal. Feb. 3, 2015) .............................. 21

*Davis v. Cnty. of Los Angeles*,
   No. CV 15–09343–GHK (DTB), 2016 WL 10647191 (C.D. Cal. Mar. 9, 2016) ................. 20

*Eclectic Props E , LLC v. Marcus Millichap Co*,
   751 F.3d 990 (9th Cir. 2014)............................................................................... 19

*Farhang v. Indian Inst. of Tech., Kharagpur*,
   2010 WL 2228936, No. C–08–02658 RMW (N.D. Cal. June 1, 2010) ................................ 10

*Fayer v. Vaughn,*
    649 F.3d 1061 (9th Cir. 2011) ............................................................................. 3

*Fitbit, Inc. v. Valencell, Inc.,*
    964 F.3d 1112 (Fed. Cir. 2020) ........................................................................... 15

*Greineder v. Masonic Homes of the R.W. Grand Lodge, F & AM of Penn.,*
    No. 13–2376, 2014 WL 1632143 (E.D. Pa. Apr. 23, 2014) .................................. 17

*Hooked Media Grp., Inc. v. Apple Inc.,*
    55 Cal. App. 5th 323 (2020) ........................................................................... 11, 12

*IDX Systems Corp. v. Epic Systems Corp.,*
    285 F.3d 581 (7th Cir. 2002) ................................................................................. 8

*Jennifer Tulley Architect, Inc. v. Shin,*
    2023 WL 3437819 (N.D. Cal. May 11, 2023) ...................................................... 10

*Jobscience, Inc. v. CVPartners, Inc.,*
    No. C 13-04519 WHA, 2014 WL 852477 (N.D. Cal. Feb. 28, 2014) ..................... 4

*Kimera Labs Inc. v. Jayashankar,*
    No. 21-CV-2137-MMA (DDL), 2022 WL 11965058 (S.D. Cal. Oct. 20, 2022) .................. 14

*Lamont v. Conner,*
    No. 5:18-CV-04327-EJD, 2019 WL 1369928 (N.D. Cal. Mar. 26, 2019) ............... 9

*Loop AI Labs Inc. v. Gatti,*
    195 F. Supp. 3d 1107 (N.D. Cal. 2016) .............................................................. 6, 8

*Maiberger v. City of Livonia,*
    724 F. Supp. 2d 759 (E.D. Mich. 2010) .............................................................. 17

*Nat'l Specialty Pharmacy, LLC v. Padhye,*
    734 F. Supp. 3d 922 (N.D. Cal. 2024) .................................................................. 6

*Navigation Holdings, LLC v. Molavi,*
    445 F. Supp. 3d 69 (N.D. Cal. 2020) ......................................... 3, 10, 13, 19, 20, 21

*Palantir Techs., Inc. v. Abramowitz,*
    No. 19-CV-06879-BLF, 2020 WL 9553151 (N.D. Cal. July 13, 2020) ................... 8

*Pellerin v. Honeywell Int'l, Inc.,*
    877 F. Supp. 2d 983 (S.D. Cal. 2012) ................................................................ 15

*Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.,*
    149 F.4th 1081 (9th Cir. 2025) .............................................................................. 4

*Soc. Apps, LLC v. Zynga, Inc.,*
    No. 4:11-CV-04910 YGR, 2012 WL 2203063 (N.D. Cal. June 14, 2012) ........... 5, 6

*Space Data Corp. v. X*,
  No. 16-CV-03260-BLF, 2017 WL 5013363 .................................................... 8, 9, 15

*Spice Jazz LLC v. Youngevity Int'l, Inc.*,
  No. 19-cv-0583-BAS-DEB, 2020 WL 6484640 (S.D. Cal. Nov. 4, 2020)............................ 15

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001).................................................................... 17

*Synopsys, Inc. v. ATopTech, Inc.*,
  No. C 13–cv–02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013)............................. 6, 7

*Tao of Sys. Integration, Inc. v. Analytical Serv's. & Materials, Inc.*,
  330 F. Supp. 2d 668 (E.D. Va. 2004) aff'd, 141 F. App'x 129 (4th Cir. 2005)...................... 8

*Teradata Corp. v. SAP SE*,
  No. 18-cv-03670-WHO, 2018 WL 6528009 (N.D. Cal. Dec. 12, 2018) ................................. 9

*Trustwell v. RLH Assets, LLC*,
  No. 3:25-cv-00880-AB, 2025 WL 2697107 (D. Or. Sept. 22, 2025)................................... 4

*U.S. v. Corinthian Colleges*,
  655 F.3d 984 (9th Cir. 2011).................................................................... 19

*U.S. v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003).................................................................... 19

*Vendavo, Inc. v. Price*
  *f(x) AG*, 2018 WL 1456697 at *4 (N.D. Cal. Mar. 23, 2018) ............................. 6, 7, 9, 20, 21

*Via Techs., Inc. v. Asus Computer Int'l*,
  No. 14-CV-03586-BLF, 2016 WL 1056139 (N.D. Cal. Mar. 17, 2016) ................................. 7

*Vox Network Sols., Inc. v. Gage Techs., Inc.*,
  No. 22-cv-09135-AMO, 2024 WL 1260573 (N.D. Cal. Mar. 25, 2024) ........................ 14, 19

*Wilson Aerospace LLC v. Boeing Co. Inc.*,
  No. 2:23-cv-00847-JHC, 2025 WL 2733893 (W.D. Wash. Sept. 25, 2025) .......................... 4

*X6D Ltd. v. Li-Tek Corps. Co.*,
  2012 WL 12952726 (C.D. Cal. Aug. 27, 2012) ..................................................... 8

## **Statutes**

18 U.S.C. § 1839(5) .............................................................................. 9

Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*. ......................... 1, 2, 3, 4, 9, 10, 12

10

1    I.    **INTRODUCTION**

2    Apple brings a single claim against OPPO for misappropriation of trade secrets under the

3    Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*. ("DTSA"), but Apple fails to allege any of the

4    elements of that claim.  Its Complaint against OPPO should be dismissed.

5    First, Apple's Complaint does not identify any trade secrets with sufficient particularity,

6    offering only generic categories of alleged trade secrets seemingly covering entire areas of

7    smartwatch technology.  Second, Apple provides no plausible allegations of any misappropriation

8    by OPPO, instead relying on conclusory arguments and statements to fashion a claim.  While full

9    of accusations against its former employee, Apple's Complaint makes no factual allegation that

10   OPPO used or even received any Apple trade secrets whatsoever. Apple's case against OPPO—

11   against whom Apple has demanded intrusive expedited discovery and sought provisional

12   remedies—rests on brief text messages, one of which is just two emojis.  Apple's Complaint grossly

13   distorts those text messages, but in any event, those messages do not show that OPPO has received,

14   much less used or disclosed, trade secrets.  Third, Apple does not plausibly allege any harm caused

15   by any alleged misappropriation by OPPO.  Here too, Apple makes conclusory allegations of harm

16   supported by no specific facts.  The allegations are therefore insufficient to state a claim of trade

17   secret misappropriation against OPPO, and Apple's sole claim against OPPO should be dismissed.

18   II.    **RELEVANT ALLEGATIONS IN APPLE'S COMPLAINT**[1]

19   OPPO is a consumer electronics company that was founded in 2004.  ¶ 62.  It makes and

20   sells a wide range of products, and has made and sold smartwatches since 2020.  *Id.*  OPPO does

21   not sell products in the United States.  *Id.*  Apple is one of the largest companies in the world, with

22   a market capitalization of approximately $3.79 trillion.  Among many other products, Apple offers

23   smartwatches under its Apple Watch brand.  ¶¶ 41-42.  Apple's smartwatches include health sensing

24   technology that "uses small sensors to collect, process, and transmit data related to the wearer's

25   ─────────────────────────

26   [1]  Solely for purposes of this Motion, OPPO accepts the well-pleaded factual allegations in Apple's
     Complaint as true.    OPPO does ***not*** accept Apple's self-serving and argumentative

27   mischaracterizations of those factual allegations or the legal conclusions Apple asks the Court to
     draw from those mischaracterizations.  Paragraph citations in this Motion are to Apple's Complaint,

28   Dkt. 1.

physiological signals, movements, and environment," which Apple alleges "allows monitoring of metrics such as heart rate, temperature, blood oxygen, sleep patterns, and more." ¶ 45.  Apple claims that it owns certain protectable trade secrets relating to its health sensing technology.  But Apple's Complaint does not specify what those alleged trade secrets are, instead defining the alleged trade secrets collectively and vaguely as:

> (1) confidential schematics and technical specifications concerning hardware and software implementations of sensors and related technologies on Apple products, including temperature sensors, ECG functionality, and PPG sensors on Apple Watch; (2) confidential materials relating to technological capabilities in unreleased products and features; (3) confidential documents relating to temperature sensing technology, including technical parameters and design elements; (4) Apple's confidential Silicon Engineering Group documents on chip-related technologies, including silicon technologies; and (5) Apple-confidential information concerning engineering innovation, research, methodologies, and techniques.

¶ 50.

Defendant Dr. Chen Shi worked at Apple from January 2020 through June 2025.  ¶¶ 3, 64.  Apple alleges that he worked primarily on the Apple Watch team during his time at Apple.  *Id.*  Apple further alleges that in April 2025, Dr. Shi began communicating via text on his Apple-issued work devices with Dr. Zijing Zeng, whom Apple describes as Vice President and Head of OPPO Health, about the possibility of working for OPPO or its U.S.-based affiliated company Defendant InnoPeak Technologies, Inc.  *See* ¶ 65.

The Complaint makes various allegations about Dr. Shi's conduct in the weeks preceding his departure.  *See generally* ¶¶ 7-9, 72, 76-85.  Apple's claims against OPPO, however, rely on two messages Dr. Zeng sent to Dr. Shi.  In one, Dr. Zeng asked Dr. Shi if he was "familiar with PPG" (¶ 67), a generic type of health sensor technology commonly used in certain smartwatches that OPPO itself has used in its products for years.  *See* https://pmc.ncbi.nlm.nih.gov/articles/PMC10860396/ (2024 article regarding study of OPPO smartwatch "with PPG technology").  Dr. Shi responded that he did "understand the principles of PPG and related optical knowledge" and would "make [his] best effort to learn more about it." ¶ 68.  Dr. Zeng responded with what Apple calls "two 'awesome' emojis. ¶ 69.  Apple characterizes

1    this—without any factual support—as Dr. Zeng "assent[ing] to Dr. Shi's efforts to gather 'as much

2    information as possible' from Apple." ¶ 75.

3        In another exchange, Apple alleges that Dr. Zeng responded "alright" and with an "ok" emoji

4    after Dr. Shi sent multiple messages, including one that said, among other things, that he was

5    collecting information from internal materials and 1:1 meetings that he would "share with you all

6    later." ¶ 10.

7        Neither of these exchanges show OPPO colluding with Dr. Shi to steal Apple's trade secrets

8    as Apple claims, and all of Apple's other allegations are purely conclusory.  For instance, Apple

9    claims, without alleging any specific facts in support, that "Dr. Shi has used and disclosed Apple's

10    trade secrets within the course and scope of his employment with the OPPO defendants and for their

11    benefit." ¶ 95.  Apple also claims, again with no specific factual allegations in support, that Dr. Shi

12    acted "with approval of the OPPO Defendants, and within the scope of his employment with the

13    OPPO Defendants."  ¶ 96.  And Apple states—again without factual support—that "[t]he OPPO

14    Defendants are retaining and using Apple's trade secret and confidential information to compete

15    with and/or otherwise harm Apple," that these alleged acts "ha[ve] proximately caused damages to

16    Apple," and that "[t]he OPPO Defendants have been unjustly enriched." ¶¶ 100-02.

17    **III.    LEGAL STANDARD**

18        To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to

19    state a claim to relief that is plausible on its face," but "[t]hreadbare recitals of the elements of a

20    cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556

21    U.S. 662, 678 (2009) (internal quotation omitted).  "Although factual allegations are taken as true,

22    [courts] do not assume the truth of legal conclusions merely because they are cast in the form of

23    factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotation

24    omitted).

25    **IV.    ARGUMENT**

26        To state a claim for trade secret misappropriation under the DTSA, "a plaintiff must allege

27    (1) that it is the owner of a trade secret; (2) that the defendant misappropriated the trade secret; and

28    (3) that it was damaged by the defendant's actions."  *Navigation Holdings, LLC v. Molavi*, 445 F.

1   Supp. 3d 69, 78 (N.D. Cal. 2020).  Apple's Complaint must plausibly plead **all three** of these

2   elements to state a claim, but Apple fails to plausibly plead **any** of them against OPPO.  Apple

3   instead offers sparse, conclusory, and innocuous factual allegations against OPPO, and relies on

4   attorney (mis)characterization of those alleged facts to spin a tale of trade secret theft.  Because the

5   well-pleaded facts in Apple's Complaint do not establish a DTSA violation by OPPO, Apple's sole

6   claim against OPPO should be dismissed.

7            A.        <u>Apple Fails to Plead Ownership of Any Trade Secret</u>

8            Apple's Complaint fails at the threshold because it fails to allege that Apple owns any

9   protectable trade secret.  "A true trade secret plaintiff ought to be able to identify, up front, and with

10  specificity the particulars of the trade secrets without any discovery."  *Jobscience, Inc. v.

11  CVPartners, Inc.*, No. C 13-04519 WHA, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014); *see

12  also Trustwell v. RLH Assets, LLC*, No. 3:25-cv-00880-AB, 2025 WL 2697107, at *5 (D. Or. Sept.

13  22, 2025) ("Allegations that set out purported trade secrets in broad, categorical terms that are

14  merely descriptive of the types of information that generally may qualify as protectable trade secrets

15  are insufficient to state a claim.") (internal quotations and citations omitted); *Quintara Biosciences,

16  Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1088 (9th Cir. 2025) (holding that, even under "the

17  conventional procedures under the Federal Rules of Civil Procedure," a trade secret plaintiff must

18  "identify a trade secret with sufficient particularity" and not "simply rely upon catchall phrases or

19  identify categories of trade secrets") (internal quotations and citations omitted); *Wilson Aerospace

20  LLC v. Boeing Co. Inc.*, No. 2:23-cv-00847-JHC, 2025 WL 2733893, at *3 (W.D. Wash. Sept. 25,

21  2025) (citing *Quintara* and finding trade secrets insufficiently identified where plaintiff failed to

22  identify, for example, which documents pertained to which alleged trade secret).   Despite this clear

23  requirement, it has long been recognized that trade secret plaintiffs virtually never "provide a precise

24  and complete identification of the alleged trade secrets at issue without a court order requiring them

25  to do so."  Charles Tait Graves & Brian D. Range, *Identification of Trade Secret Claims in

26  Litigation: Solutions for a Ubiquitous Dispute*, 5 Nw. J. Tech. Intell. Prop. 68, 68 (2006).  "This is

27  a strategy, not an accident."  *Id.*   It is an effective strategy because, unless courts require plaintiffs

28  to plead trade secrets with the particularity required by law, "it is easy to allege theft of trade secrets

-4-                                        Case No. 5:25-CV-07105-EKL
                                          OPPO'S MOTION TO DISMISS

with vagueness, then take discovery into the defendants' files, and then cleverly specify what ever happens to be there as having been trade secrets stolen from plaintiff." *JobScience*, 2014 WL 852477, at *5.

Of course, at the complaint stage, the plaintiff "need not spell out the details of the trade secret." *CleanFish, LLC v. Sims*, No. 19-cv-03663-HSG, 2020 WL 4732192, at *9 (N.D. Cal. Aug. 14, 2020) (citations omitted). But the plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and ***to permit the defendant to ascertain at least the boundaries within which the secret lies***.'" *Id.* (citation omitted, emphasis added). "On a motion to dismiss, the burden is on the plaintiff to identify protectable trade secrets and '[show] that they exist.'" *Id.* (citation omitted).

Here, Apple's Complaint fails to identify any alleged trade secret with the specificity required to survive a motion to dismiss. Indeed, Apple's only identification of its alleged trade secrets in its Complaint is as follows:

> (1) confidential schematics and technical specifications concerning hardware and software implementations of sensors and related technologies on Apple products, including temperature sensors, ECG functionality, and PPG sensors on Apple Watch; (2) confidential materials relating to technological capabilities in unreleased products and features; (3) confidential documents relating to temperature sensing technology, including technical parameters and design elements; (4) Apple's confidential Silicon Engineering Group documents on chip-related technologies, including silicon technologies; and (5) Apple-confidential information concerning engineering innovation, research, methodologies, and techniques.

¶ 50. Even assuming there could theoretically be specific features within the broad categories Apple identifies that could qualify for trade secret protection, Apple has failed to identify any such specific features. "A description of [a] category, or even of the subcategories of information within a category, does not comply with the requirement to identify the actual matter that is claimed to be a trade secret." *Soc. Apps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 WL 2203063, at *4 (N.D. Cal. June 14, 2012).

Categories as broad as "hardware and software implementations of sensors and related technologies in Apple products," "technological capabilities in unreleased products and features,"

"temperature sensing technology," "chip-related technologies," and "information concerning engineering innovation, research, methodologies, and techniques" (¶ 50) fail to "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade." *CleanFish*, 2020 WL 4732192, at *3. Such broad categories appear to sweep in entire fields of technology. Courts regularly hold that generic categorical descriptions like these are insufficient to state a claim. *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697 at *4 (N.D. Cal. Mar. 23, 2018) (dismissing trade secret claim where plaintiff only offered "broad, categorical terms, more descriptive of the types of information that generally may qualify as protectable trade secrets than as any kind of listing of particular trade secrets [plaintiff] has a basis to believe actually were misappropriated here."); *Synopsys, Inc. v. ATopTech, Inc.*, No. C 13–cv–02965 SC, 2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013) (dismissing trade secret claim because descriptions, including "proprietary input and output formats, scripts, and technical product documentation," were "too sweeping and vague"); *Nat'l Specialty Pharmacy, LLC v. Padhye*, 734 F. Supp. 3d 922, 929 (N.D. Cal. 2024) (dismissing trade secret claim because "catchall categories of the *kinds* of trade secrets that might be at issue," such as "vendor and partner information, proprietary formulas, business processes, pricing strategies, pricing data, marketing methods, other data, computer and software processes and systems," did not "clearly refer to tangible trade secret material as required") (internal quotations and citations omitted).

While categories as generic as Apple's fail to state a claim under any circumstances, in the context of a case like this one Apple's identification is especially deficient for two additional reasons. *First*, the categories Apple identifies—"specifications" and "capabilities" for smartwatches and associated components—involve "incremental variations" in a field (smartwatches and related health monitoring technology) that has been steadily developing for at least a decade. ¶ 42; *see Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1112 (N.D. Cal. 2016) (finding trade secrets were not identified with enough specificity, especially because, "[w]here alleged trade secrets consist of incremental variations on, or advances in, the state of the art in a highly specialized technical field, a more exacting level of particularity may be required…to

distinguish the alleged trade secrets from matters already known to persons skilled in that field");

*Soc. Apps.*, 2012 WL 2203063, at *4. There can be no dispute that certain aspects of the broad categories Apple identifies are known to the public, or at least to those skilled and knowledgeable in the development of smartwatches and related health monitoring technology; Apple does not allege otherwise. For example, Apple does not and cannot deny that temperature sensors, ECG functionality, and PPG sensors are longstanding, widely utilized technologies that are routinely incorporated into wearables design and development, but Apple does nothing to separate the specific information within each category that it claims is a trade secret as opposed to information that is publicly available. Apple's failure to do so warrants dismissal. *Vendavo*, 2018 WL 1456697 at *3; *Synopsys*, 2013 WL 5770542, at *6.

*Second*, and similarly, Apple admits that it protects some of its purported inventions with patents (¶ 45) and cannot dispute that it owns numerous patents covering health sensor technology in smartwatches. *See, e.g.*, U.S. Patent No. 10537284-B2 (issued Jan. 21, 2020) (Apple patent for PPG sensors); U.S. Patent No. 10987054-B2 (issued April 27, 2021) (Apple patent for wearable electronic device with electrodes for sensing biological parameters). Publicly disclosing an alleged invention, in a patent or patent application or elsewhere, "extinguishes the information's trade secret status." *Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020). Apple's Complaint does nothing to separate the allegedly trade secret features of its smartwatch health sensor technology from the patented, non-trade secret features of that technology.

On its face, Apple's Complaint seems to claim that "*all* of" Apple's broadly defined categories "are trade secrets in their entirety." *Via Techs., Inc. v. Asus Computer Int'l*, No. 14-CV-03586-BLF, 2016 WL 1056139, at *3 (N.D. Cal. Mar. 17, 2016). Like the plaintiff in *Via Techs.*, Apple begins its trade secret description with a list of its at-issue products and their features (*see* ¶¶ 42-46), then claims that "many aspects" of this technology are confidential and proprietary. ¶ 48; *see Via Techs*, 2016 WL 1056139 at *3 (rejecting trade secret identification where plaintiff claims its "trade secrets 'include, but are not limited to,' the technologies that its products implement"). Such a vague "disclosure gives Defendants—and the court—practically no guidance on precisely

1    what [Apple] claims as its trade secrets." *Id.* Thus, Apple's disclosure of its alleged trade secrets

2    is deficient.

3        Three weeks after filing its Complaint, and hours before the parties submitted a Joint Status

4    Report in which Apple knew OPPO would raise Apple's failure to identify its alleged trade secrets,

5    Apple served Defendants with a purported trade secret disclosure. *See* Dkt. 59. Apple's

6    identification is irrelevant to OPPO's motion to dismiss. Because courts analyzing a motion to

7    dismiss are limited to the complaint, identifying alleged trade secrets in other documents "does not

8    change the Court's analysis." *Palantir Techs., Inc. v. Abramowitz*, No. 19-CV-06879-BLF, 2020

9    WL 9553151, at *18 (N.D. Cal. July 13, 2020) (finding that, despite filing a separate trade secret

10   disclosure, plaintiff's "complaint still fails to describe with sufficient particularity the trade secrets

11   that were disclosed to Defendants and which parts of the patent applications contain those purported

12   trade secrets"); *see also Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL 5013363, at *2

13   (N.D. Cal. Feb. 16, 2017) (same).

14       In any event, Apple's disclosure still fails to identify any alleged trade secrets with

15   particularity. Among other significant deficiencies, Apple's trade secret identification essentially

16   lists a series of documents or files and claims that each document or file, "as a whole," is Apple's

17   trade secret. That fails as a matter of law: a "document itself cannot be a trade secret, although it

18   may contain trade secrets." *Tao of Sys. Integration, Inc. v. Analytical Serv's. & Materials, Inc.*, 330

19   F. Supp. 2d 668, 678 (E.D. Va. 2004) aff'd, 141 F. App'x 129 (4th Cir. 2005). Courts in this District

20   have similarly held that "identifying documents alone would not be an adequate substitute for

21   detailed identification of the trade secrets therein, since review of the documents may not inform

22   Defendants as to what precisely Plaintiff is asserting is a trade secret." *Loop AI Labs*, 195 F. Supp.

23   3d at 1116. Instead, a plaintiff must specifically identify "what in these documents is a trade secret

24   and where within these documents that information is located." *X6D Ltd. v. Li-Tek Corps. Co.*, 2012

25   WL 12952726, at *6 (C.D. Cal. Aug. 27, 2012); *see also IDX Systems Corp. v. Epic Systems Corp.*,

26   285 F.3d 581, 584 (7th Cir. 2002) (holding that a plaintiff may not avoid the requirement to identify

27   its alleged trade secrets by "tender[ing] the complete documentation for the" alleged trade secrets

28   but failing to identify "exactly which pieces of information are the trade secrets"). Thus, even if

Apple's trade secret identification could be considered as part of the Complaint, it fails to identify any alleged trade secrets with sufficient particularity.

Courts routinely dismiss trade secret claims where the complaint does not identify the alleged trade secrets with sufficient particularity to put the defendants on notice of what trade secrets they allegedly took.  *Lamont v. Conner*, No. 5:18-CV-04327-EJD, 2019 WL 1369928, at *8 (N.D. Cal. Mar. 26, 2019) (granting motion to dismiss where "Plaintiff's description of his trade secrets as stated in the complaint are not plead with sufficient particularity"); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144  (N.D. Cal. 2019) (dismissing claim where plaintiff "fail[ed] to identify its allegedly misappropriated trade secrets with sufficient particularity to state a claim under the DTSA"); *Vendavo*, 2018 WL 1456697, at *4 (same); *Teradata Corp. v. SAP SE*, No. 18-cv-03670-WHO, 2018 WL 6528009, at *4 (N.D. Cal. Dec. 12, 2018) (same); *Space Data Corp.*, 2017 WL 5013363 at *2 (same).  This alone is sufficient reason to dismiss Apple's trade secret misappropriation claim against OPPO.

## B.    Apple Fails to Plead that OPPO Misappropriated Any Alleged Trade Secret

Apple has also failed to adequately plead the second element of its DTSA claim against OPPO: misappropriation by OPPO.  To establish misappropriation against OPPO, Apple must allege either wrongful acquisition, which is the "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" (i.e., direct misappropriation); or the unauthorized "disclosure or use of a trade secret" that was acquired by improper means (i.e., indirect misappropriation).  18 U.S.C. § 1839(5); *see Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1172 (N.D. Cal. 2020).

### 1.    Apple Fails to Plausibly Allege Direct Misappropriation by OPPO

To the extent Apple offers any factual support for its misappropriation claims, Apple's allegations describe actions supposedly taken by Dr. Shi, ***not*** by OPPO.  Rather than assert any wrongful acquisition of Apple trade secrets by OPPO itself, Apple claims that Dr. Shi's alleged wrongful acquisition occurred "within the scope of his employment with the OPPO Defendants" and "at least in part, for the benefit of the OPPO Defendants."  ¶ 96.  Apple asserts that "[t]he OPPO defendants are therefore at least vicariously liable for Dr. Shi's actions."  *Id.*  But, even assuming

for the purposes of this Motion that Apple's non-conclusory factual allegations are true, Dr. Shi engaged in the alleged wrongful acquisition before leaving Apple and certainly before joining OPPO.  ¶¶ 8, 81 (alleged downloads occurred between June 5 and June 25, 2025), 71 (alleged meetings occurred at the end of May or beginning of June 2025), 76 (Dr. Shi's last day at Apple was set for June 27, 2025), 74 (Dr. Shi started at OPPO on June 30, 2025).  Specifically, Apple alleges that Dr. Shi planned to start at OPPO on June 30, 2025—*after* the alleged transfers to the USB drive and one-on-one meetings.  ¶ 74.  OPPO "cannot be held vicariously liable for torts that [Dr. Shi] allegedly committed before he started working for [OPPO]."  *Jennifer Tulley Architect, Inc. v. Shin*, 2023 WL 3437819, at *4 (N.D. Cal. May 11, 2023); *see also Apple Inc. v. Rivos, Inc.*, 2023 WL 5183034, at *8 (N.D. Cal. Aug. 11, 2023) (dismissing Apple's trade secret misappropriation claim against Rivos where "the Individual Defendants were not Rivos employees when they allegedly 'acquired' the information, improperly or otherwise").

Instead, to survive a motion to dismiss, a DTSA complaint must include factual allegations as to *OPPO's* involvement in the alleged misappropriation.  A complaint that bases its "trade secret misappropriation claims on [an employee's] conduct, without differentiating what each specific [corporate] Defendant is alleged to have done" cannot survive Rule 12(b)(6) review.  *Navigation Holdings*, 445 F. Supp. 3d at 79; *see also Farhang v. Indian Inst. of Tech., Kharagpur*, 2010 WL 2228936, No. C–08–02658 RMW, at *15 (N.D. Cal. June 1, 2010) (nonspecific allegation "that defendants disclosed plaintiffs' trade secrets without their express or implied consent" insufficient to avoid dismissal).

Apple does not make any *factual* allegations that would plausibly establish that any alleged misappropriation by Dr. Shi was on behalf of OPPO or within the scope of Dr. Shi's employment for OPPO.  Rather than allege specific acts by OPPO, Apple distorts and exaggerates documents that contradict Apple's allegations on their face.  At best, Apple alleges that in a scattered handful of text messages with Dr. Zeng, Dr. Shi used the word "our" to refer to OPPO's "ring/watch products" and OPPO's "U.S. research center."  ¶ 75.  But even if those text messages supposedly using the word "our" could be read as indicating that Dr. Shi saw himself as part of OPPO's research

team,[2] nothing about them relates to *misappropriation*, let alone indicates that misappropriation was within the scope of Dr. Shi's not-yet-started employment for OPPO.  *Alert Enter., Inc. v. Rana*, No. 22-cv-06646-JSC, 2023 WL 2541353, at *1, 3 (N.D. Cal. Mar. 16, 2023) (dismissing trade secret claim against employer defendant, even where individual defendant repeatedly met with employer defendant prior to resigning from plaintiff's company, and noting: "How can a person be acting within the scope of his employment with an entity for whom he is not yet employed?").

Similarly, to the extent that Apple attempts to argue that OPPO wrongfully acquired trade secrets by paying Dr. Shi extra presumably in exchange for nefarious activity, that theory is belied by facts and reason, and is not actually supported by Apple's allegations.  *See* ¶¶ 71-72 (alleging, with limited and disjointed quotations, that Dr. Shi demanded a high salary; OPPO initially offered half that amount; but then decided to meet Dr. Shi's demand in exchange for "long-term cooperation").  As the messages themselves show, discrepancies in the compensation amounts discussed during the negotiation are accounted for by the fact that the China and U.S. companies "have separate compensation systems" (Dkt. 11-21 at 3, message of April 30, 2025, at 11:13:08 p.m.) and salaries "will be higher in the U.S." (*id.* at 8, message of May 23, 2025, at 7:25:19 a.m.).[3] But even in Apple's selective quotation and framing, Apple does not allege that Dr. Shi's salary was above market or unreasonable for his position.  Regardless, offering "competitive compensation," "better pay," or "more desirable terms" is not wrongful or improper behavior and cannot support a

---

[2]    Apple obscures a linguistic distinction in Dr. Shi's Chinese messages.  Dr. Shi did not use the word "our" (我们 *wǒmen*) when referring to OPPO.  Instead, he used 咱们 (*zánmen*), a courteous and informal term often used to mean "your company" or "your product," while avoiding the distance implied by the direct "your" (你们 *nǐmen*).  This contrasts with "our" (我们 *wǒmen*), which he used when referring to Apple (Dkt. 11-4 at 4, message at April 17, 2025, 6:24:33 p.m.).  The use of *zánmen* is a politeness convention, not evidence of affiliation or control.  *See* https://blog.dailoan.vn/understanding-%E5%92%B1%E5%80%91-zan-men-meaning-grammatical-structure-and-usage-in-chinese/ ("The use of 咱們 [*zánmen*] is prevalent in Chinese-speaking communities to foster a sense of belonging. It is often used in informal situations, among friends, family, or groups with a shared bond, reflecting the communal spirit inherent in Chinese culture.").

[3]    Apple relies on the text messages contained in this exhibit but fails to attach them to its complaint.  The Court may "consider unattached evidence on which the complaint 'necessarily relies,'" *U.S. v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011), and consider it on a motion to dismiss. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

1    claim of trade secret misappropriation.  *Hooked Media Grp., Inc. v. Apple Inc.*, 55 Cal. App. 5th

2    323, 336 (2020), publication ordered (Sept. 30, 2020); *see also BGC Partners, Inc. v. Avison Young*

3    *(Canada) Inc.*, 75 N.Y.S.3d 1, 2 (Sup. Ct. 2018) ("The cause of action for theft of trade secrets

4    should be dismissed since in the circumstances the means by which defendants allegedly lured the

5    brokers … i.e., offering them competitive compensation, are not wrongful or improper.").   In

6    *Hooked Media*, an Apple competitor alleged that Apple had seduced engineers by offering higher

7    pay, and that those engineers brought plaintiff's trade secrets with them to Apple.  55 Cal. App. 5th

8    at 413-14.  The court affirmed summary judgment for Apple, finding that even if engineers did

9    retain plaintiff's trade secrets while working at Apple, plaintiff had not shown that ***Apple***

10   "improperly acquired or used" the trade secrets.  *Id.*; *see also id.* at 416-17 ("Enticing a competitor's

11   employees to leave by offering better pay or more desirable terms is simply a competitive business

12   practice.").

13           Courts have consistently held that plaintiffs who, like Apple, lack specific allegations about

14   the new employer's actions constituting misappropriation cannot state a claim against the new

15   employer.  For example, in *Gallagher & Co. v. Tarantino*, the plaintiff's complaint included detailed

16   allegations of misappropriation by certain employees named as individual defendants, including that

17   they exfiltrated hundreds of documents and solicited clients based on information in those

18   documents. 498 F. Supp. 3d at 1161.  But just like Apple here, the plaintiff in *Tarantino* included

19   "no specific facts" to support a DTSA claim against the individual defendants' new employer.  498

20   F. Supp. 3d at 1173.  Instead, the plaintiff merely asserted conclusory allegations—as Apple does

21   here—that the new employer directed individual defendants to steal trade secrets.  *Compare id.*

22   (dismissing allegations against employer defendant Alliant "even if Alliant ultimately benefitted

23   from their acquisition and use of the trade secret"); *with* ¶ 95 (alleging that OPPO misappropriated

24   trade secrets "by virtue of Dr. Shi's transfer of confidential Apple information to a secret USB hard

25   drive for use in connection with and to benefit Dr. Shi's work with the OPPO Defendants"); ¶ 96

26   (alleging that Dr. Shi's alleged actions were "at the OPPO Defendants' instruction" and "subject to

27   the OPPO Defendants' control").  Without any specifics alleged against the new employer, the court

28   in *Tarantino* noted that the individual defendants "could well have taken the trade secrets . . . without

1    [their new employer's] knowledge[.]" *Tarantino*, 498 F. Supp. 3d at 1173.    As a result, the court

2    concluded that the allegations of misappropriation levied against the individual defendants were not

3    sufficient to support a claim against their new employer.  *Id.*

4          Indeed, Apple has tried and failed before in this tactic to use employees' alleged

5    misappropriation to state a claim against their new employer.  In *Apple v. Rivos*, 2023 WL 5183034,

6    Apple similarly brought breach of contract claims against individual defendants and trade secret

7    claims against the new employer (Rivos) to whom individual defendants allegedly brought trade

8    secret information.  Apple claimed that Rivos improperly acquired Apple's trade secrets through the

9    individual defendants, including by conferring with individual defendants prior to their departure

10   from Apple and coaching them about actions to take during their departure.  *Id.* at *2.  The Court

11   held that, even where the complaint plausibly alleged that numerous individual defendants

12   exfiltrated trade secrets after being approached by Rivos and were using Apple's confidential

13   information at Rivos, Apple had not alleged sufficient facts to impute liability to Rivos.  *Id.* at *6-

14   9.

15         Here, as in *Tarantino* and *Rivos*, Apple has asserted no allegations to support a trade secret

16   misappropriation claim against OPPO and its allegations against the Dr. Shi are insufficient to

17   support such a claim against OPPO.

                        2.    Apple Fails to Plausibly Allege Indirect Misappropriation by OPPO

18

19         To the extent Apple purports to state a claim that OPPO is liable for misappropriation

20   because it knew or had reason to know Dr. Shi misappropriated Apple's trade secrets, that indirect

21   trade secret misappropriation theory fails as well.  To state a claim for indirect misappropriation, a

22   plaintiff must allege facts showing that the defendant "(a) knew or had reason to know before the

23   use or disclosure that the information was a trade secret and knew or had reason to know that the

24   disclosing party had acquired it through improper means or was breaching a duty of confidentiality

25   by disclosing it; or (b) knew or had reason to know it was a trade secret and that the disclosure was

26   a mistake."  *Navigation Holdings, LLC*, 445 F. Supp. at 78.

27         It is not enough to "make a conclusory assertion that Defendants 'had reason to know'" that

28   the information was improperly acquired or disclosed; Apple must provide "factual substantiation

of Defendants' knowledge." *Id.* at *79. In dismissing claims against employer defendants in *Navigation Holdings*, the court noted indirect misappropriation may be plausible in cases where defendants actually received and reviewed information "clearly labelled with the plaintiff's name and clearly marked 'Confidential' and 'Internal Only,'" or in cases where defendants received information and were specifically told that the information was "confidential" to plaintiffs. *Id.* (internal citations and quotations omitted). But because plaintiffs in *Navigation Holdings* made "a conclusory assertion….devoid of any factual substantiation of Defendants' knowledge," plaintiffs failed to state an indirect misappropriation claim. *Id.*; *see also Vox Network Sols., Inc. v. Gage Techs., Inc.*, No. 22-cv-09135-AMO, 2024 WL 1260573, at *4 (N.D. Cal. Mar. 25, 2024) (dismissing misappropriation claim against competitor where complaint offered "conclusory assertion that competitor 'conspired with [individual defendants] to improperly acquire Vox's trade secrets'"); *Tarantino*, 498 F. Supp. 3d at 1173 (dismissing misappropriation claim against competitor where complaint "charge[d competitor] with giving the directive to take the trade secrets" but lacked "specific facts to support [competitor] giving such a directive").

Apple cannot establish indirect misappropriation because it fails to allege use or disclosure of a trade secret by anyone, ***and*** it fails to allege OPPO's knowledge of misappropriation.

**First**, Apple's indirect misappropriation theory fails at the outset because Apple does not allege any use or disclosure of its trade secrets, not even by Dr. Shi. Where, as here, a plaintiff accuses a defendant of obtaining plaintiff's trade secrets indirectly (i.e., from Dr. Shi rather than directly from Apple), the plaintiff must plead "disclosure or use of a trade secret of another" by someone who knew or should have known that the information was a trade secret. *Kimera Labs Inc. v. Jayashankar*, No. 21-CV-2137-MMA (DDL), 2022 WL 11965058, at *9 (S.D. Cal. Oct. 20, 2022). Here, Apple has no plausible allegations of use or disclosure. Apple's Complaint is built around statements Dr. Shi made about what he would do in the future without referencing confidential or trade secret information at all, but Apple does not plausibly allege that Dr. Shi did, in fact, use or disclose Apple's trade secrets to OPPO.

Without any connection to specific factual allegations, Apple claims that "Dr. Shi has used and disclosed Apple's trade secrets within the course and scope of his employment with the OPPO

Defendants" and "us[ed] such information in his role with the OPPO Defendants…at least in part…to give the OPPO Defendants an unfair advantage against Apple."   ¶¶ 95-96.  Nowhere does Apple identify any specific Apple materials (let alone Apple trade secrets) Dr. Shi allegedly used or disclosed to OPPO.  Nor does Apple plausibly allege that OPPO has received or relied on any allegedly trade secret information.  This failure to "allege any facts in support of the legal conclusion that [Defendants] 'used and/or disclosed' and 'acquired and/or used' [Apple]'s trade secrets or confidential information" warrants dismissal.  *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012).

In *Pellerin*, the Court held that allegations that a former employee disclosed confidential information to a new employer were not enough; the trade secret plaintiff needed to "allege…facts" that the new employer "used and/or disclosed" those trade secrets, too.  *Id.*  Here too, Apple has not alleged any facts to substantiate a claim that OPPO "used and/or disclosed" confidential information that Dr. Shi allegedly disclosed to OPPO, and its claim against OPPO must be dismissed.  *Id.*; *see also Spice Jazz LLC v. Youngevity Int'l, Inc.*, No. 19-cv-0583-BAS-DEB, 2020 WL 6484640, at *5 (S.D. Cal. Nov. 4, 2020) (general allegations of misappropriation on "information and belief" are insufficient); *Space Data Corp.*, 2017 WL 5013363, at *2  (while plaintiff need not "be clairvoyant and allege exactly how [defendant] is improperly using its trade secrets," something more than an allegation that "Defendants have engaged in other business activity based on [plaintiff's] confidential trade secret information" is necessary).

**Second,** Apple also fails to allege any facts that would establish the knowledge element of indirect misappropriation by OPPO.  Setting aside Apple's purely conclusory allegations that the Court need not accept as true, Apple only offers two text message conversations—which Apple grossly mischaracterizes—in an attempt to link OPPO to Dr. Shi's alleged misappropriation.  Apple argues that these exchanges "demonstrate" that "OPPO encouraged, approved, and agreed to Dr. Shi's plan to collect Apple's proprietary information before leaving Apple."  ¶ 65.  The actual exchanges—stripped of Apple's mischaracterizations of their contents—demonstrate nothing of the kind.

In the first exchange, Dr. Zeng allegedly asked Dr. Shi about his knowledge of PPG technology, which is used in certain smartwatches to track health information. ¶ 67.[4] Dr. Shi allegedly responded, "I understand the principles of PPG and related optical knowledge. I'm currently in charge of thermal systems, and our larger team is responsible for PPG. I'll make my best effort to learn as much about it as possible." ¶ 68. Dr. Zeng allegedly replied with what Apple describes as "two 'awesome' emojis." ¶ 69. Apple claims that Dr. Shi's response constitutes "confirm[ation] that [Dr. Shi] was going to obtain Apple confidential information about PPG sensors." ¶ 69; *see id.* ¶ 75 (mischaracterizing the same message and describing it as proving "'Dr. Shi's efforts to gather 'as much information as possible' from Apple"). That is pure editorializing by Apple's attorneys, and the Court should disregard Apple's attempt to insert words into Dr. Shi's text messages that he never wrote. The actual quoted text message makes no mention of obtaining information ***from Apple***, a critical distinction given that there is a wealth of public knowledge about PPG sensors outside Apple. That is dispositive, because indirect misappropriation claims fail at the motion to dismiss stage where they do not foreclose an "innocent explanation" that the employer defendant did not know that the alleged trade secret information "belonged to Plaintiff." *CleanFish, LLC,* 2020 WL 4732192, at *10.

The Court should also disregard Apple's over-reading of Dr. Zeng's "two 'awesome' emojis." *See* ¶ 75 ("Dr. Zeng assented to Dr. Shi's efforts to gather 'as much information as possible' from Apple, referring to Dr. Shi's efforts…as 'awesome.'"). As an initial matter, the two alleged "awesome" emojis were not in response to a text saying Dr. Shi hoped to "'gather as much information as possible' from Apple"—because Dr. Shi never said that. The relevant exchange, as Apple itself pleads (and as the text message itself shows, *see* Dkt. 11-4 at 2), was this: (1) Dr. Zeng

---

[4] PPG sensors are a well-established, widely used technology used in a variety of devices. *See, e.g.*, *Fitbit, Inc. v. Valencell, Inc.*, 964 F.3d 1112, 1116 (Fed. Cir. 2020) (concerning patentability of devices using PPG sensors). It is also public knowledge that Apple uses PPG sensors in the Apple Watch. *See, e.g.*, "Using Apple Watch to measure heart rate, calorimetry, and activity," November 2024, available at https://www.apple.com/health/pdf/Heart_Rate_Calorimetry_Activity_on_Apple_Watch_Novembe r_2024.pdf (describing how Apple watches "measure heart rate at the wrist via photoplethysmography (PPG)").

1    asked Dr. Shi if he understood PPG technology, (2) Dr. Shi confirmed that he did and also said he

2    would do his best to learn more about it (without mentioning Apple at all, let alone Apple

3    confidential information), and (3) Dr. Zeng responded with "awesome" emojis.    Compare the

4    alleged text exchange, ¶¶ 67-68:

5              Dr. Zeng: Are you familiar with PPG? Some optical sensing technologies are also

6                        quite important.

7              Dr. Shi:    Yes, I understand the principles of PPG and related optical knowledge. I'm

8                          currently in charge of thermal systems, and our larger team is responsible

9                          for PPG. I'll make my best effort to learn as much about it as possible.

10             Dr. Zeng: [Two "awesome" emojis.]

11        With Apple's descriptions of the same exchange, ¶69:

12             Dr. Shi…further advised Dr.  Zeng that he was going to "learn as much about it as

13             possible" *from that Apple team*, i.e., learn about PPG by studying Apple's

14             confidential information…. Dr. Shi *confirmed that he was going to obtain Apple*

15             *confidential information about PPG sensors* (emphasis added).

16        And again with Apple's escalating descriptions of the same exchange, ¶ 75:

17             *Dr. Zeng assented* to Dr. Shi's efforts to gather "as much information as possible"

18             from Apple, *referring to Dr. Shi's efforts*—done to benefit and on behalf of both Dr.

19             Shi and his new employer, the OPPO Defendants—as *"awesome"* (emphasis added).

20        The Court need not and should not "accept as true conclusory allegations which are

21    contradicted by documents referred to in the complaint."  *Sprewell v. Golden State Warriors*, 266

22    F.3d 979, 988 (9th Cir. 2001) (quotations omitted).  The actual text exchange gives *no* reason to

23    infer that Dr. Shi was talking about Apple trade secrets, let alone that Dr. Zeng understood Dr. Shi

24    to mean as much.  "When a plaintiff pleads facts in support of a claim that could just as easily lend

25    credence to a completely innocuous scenario, *Iqbal* and *Twombly* instruct that the claim ought to be

26    dismissed."  *Maiberger v. City of Livonia*, 724 F. Supp. 2d 759, 782 (E.D. Mich. 2010); *see also*

27    *Greineder v. Masonic Homes of the R.W. Grand Lodge, F & AM of Penn.*, No. 13–2376, 2014 WL

28    1632143, at *6 (E.D. Pa. Apr. 23, 2014) (dismissing claim where "the plaintiff has failed to plead

1   facts that discount a more natural and innocuous explanation for the events that have given rise to a

2   claim."). Indeed, *Twombly* itself teaches that allegations "just as much in line with" innocuous,

3   lawful behavior fail to state a claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007).

4   Here, Apple's allegations are ***at least*** "as much in line with" innocuous behavior—OPPO wanting

5   to confirm that a potential new hire understood and would undertake to learn about an area of

6   technology that would be involved in his new job—as they are with Apple's nefarious version of

7   the events.

8           Similarly, in the second exchange, weeks later, Dr. Shi allegedly texted Dr. Zeng: "I've also

9   been reviewing various internal materials and doing a lot of 1:1 meetings in an effort to collect as

10  much information as possible—will share with you all later," to which Dr. Zeng allegedly responded

11  "alright" and sent "an 'OK' emoji.'" ¶ 10; *see also* ¶¶ 69-70 (the first exchange allegedly occurred

12  before May 14, 2025) and ¶ 10 (the second exchange allegedly occurred on June 4, 2025). Apple

13  claims that this exchange amounted to Dr. Shi "communicat[ing] with OPPO about his plans to

14  'share with' OPPO the internal materials and information he had gathered from Apple," including

15  "Apple's specific technology implementations, and other highly detailed technical and development

16  information," and that Dr. Zeng's response demonstrates that "OPPO encouraged, approved, and

17  agreed to Dr. Shi's plan to collect Apple's proprietary information before leaving Apple." ¶¶ 64-

18  65. Again here, Apple misleadingly overstates the actual exchange, relying on selective quotation

19  and distortion rather than well-pled facts. The Court should limit its consideration to the well-

20  pleaded allegations of what the texts ***actually say***, and disregard Apple's conclusions about what it

21  thinks the texts ***mean*** (at least as Apple reworded them). The actual exchange reads:

22          Dr. Shi:   Zijing, I heard the offer is in the final stage. Once I receive it, I'll sign it.

23                     Thank you again for your and the company's trust and support. I'll do my

24                     best. [Grin]

25          Dr. Shi:   I'm planning to start on 6/30. This week I'll inform my team about my

26                     resignation. Lately, I've also been reviewing various internal materials and

27                     doing a lot of 1:1 meetings in an effort to collect as much information as

28                     possible—will share with you all later.

Dr. Shi: I've been using Dexcom's newly released Stelo recently—it's their first prescription-free CGM. I think it could be a good benchmark product for us. If there's anything you'd like me to look into, just let me know. Looking forward to joining!

Dr. Zeng: Alright.  😊  Have you discussed everything with your family?  *See* Dkt. 11-4 at 3; *see supra* n. 2.

Dr. Shi sent three separate messages before Dr. Zeng's "Alright" response, but Apple only quotes an excerpt of the second of those three messages, and only part of Dr. Zeng's response.  *See* ¶ 10.  In the actual exchange, it is hardly plausible that Dr. Zeng's "Alright" refers to Dr. Shi's message about gathering information.  In fact, considering the rest of Dr. Zeng's message ("Have you discussed everything with your family?"),[5] it is far more plausible that Dr. Zeng was responding to Dr. Shi's first message in which he confirmed he had decided to join OPPO.  Certainly, the actual exchange does not preclude innocent explanations.  *See Eclectic Props East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) ("plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent" with an innocuous explanation) (internal quotations and citations omitted); *see also CleanFish, 2020 WL 4732192*, at *7 n.3 ("Given the risk that trade secret claims can be misused for anti-competitive purposes, the Court agrees that it is appropriate for a plaintiff to be required to allege facts that tend to exclude general knowledge or innocuous (i.e., competitive marketplace) explanations.").

Instead of providing "factual substantiation of Defendants' knowledge," *Navigation Holdings*, 445 F. Supp. 3d at 79, Apple offers only its own misrepresentation and mischaracterization of text message conversations.  Apple's allegations that the above "messages demonstrate" that OPPO "conspired," "knew well of," "condoned and encouraged," "approved, and agreed to," "assented," and "induced" Dr. Shi's alleged misappropriation are, at best, conclusory. ¶¶ 5, 10, 65, 75.  And a "conclusory allegation that [an employer defendant] 'conspired with'"

---

[5]  Although Apple's English translation splits this message into two separate sentences, the original Chinese message is one sentence separated by a comma (Dkt. 11-4 at 5: "好的，跟家人商量好了吧？"), i.e., "Alright, have you discussed everything with your family?"

1    individual defendants is "not enough" to support a claim against that employer.  *Vox Network Sols.*,

2    2024 WL 1260573, at *4; *see also Agensys, Inc. v. Regents of the Univ. of California*, No. CV 24-

3    3961-JFW(PDX), 2024 WL 5679166 at *6-7 (C.D. Cal. Oct. 22, 2024) (dismissing claim where

4    plaintiff provided "conclusory statements" without "additional factual support" to establish "the

5    knowledge element of indirect trade secret misappropriation").  Nor can Apple state a claim for

6    indirect misappropriation based on OPPO's alleged failure to "discourage" or "protest" allegedly

7    "inappropriate conduct."  ¶¶ 10, 75.  *See Apple v. Rivos*, 2023 WL 5183034 at *8 (rejecting Apple's

8    argument that Rivos ratified individual defendants' misconduct by failing to investigate or

9    responding to individual defendants' misconduct, because: (1) such a theory would never work to

10   impose liability for "torts its employees committed before they became employees," and (2) Apple

11   did not plausibly state any allegations that Rivos failed to investigate or respond to misappropriation

12   charges against individual defendants after they became employees).

13                  3.    Apple Fails to Differentiate Between OPPO and InnoPeak

14   Apple's misappropriation allegations against OPPO fail for the additional reason that Apple

15   fails to differentiate between two legally distinct entities, OPPO and InnoPeak.  To state a claim for

16   trade secret misappropriation, Apple "must…plead distinct facts as to each Defendant that would

17   give rise to trade secret misappropriation."  *Navigation Holdings*, 445 F. Supp. at 80 (dismissing

18   trade secret claims and noting that complaint failed to "differentiate" between the conduct of

19   multiple defendants); *see also Vendavo*, 2018 WL 1456697 at *4; *Beatport LLC v. SoundCloud Ltd*,

20   2020 WL 3977602, No. CV 19-847 MRW, at *6 (C.D. Cal. July 13, 2020) (dismissing trade secret

21   claim without leave to amend in part because "the complaint does not plausibly allege facts

22   sufficient to disregard the corporate distinctions between the two entities"); *Davis v. Cnty. of Los

23   Angeles*, No. CV 15–09343–GHK (DTB), 2016 WL 10647191, at *5 (C.D. Cal. Mar. 9, 2016),

24   report and recommendation adopted, 2016 WL 10646330 (C.D. Cal. Apr. 4, 2016) (dismissing claim

25   against multiple defendants because "plaintiff may not rely on conclusory and generalized

26   allegations against defendants collectively, without specifying the individual participation of each

27   defendant").

28

1    As Apple acknowledges, InnoPeak is a California corporation with its principal place of

2  business in Palo Alto, and OPPO is a Chinese corporation with its principal place of business in

3  Dongguan.  ¶¶ 15-16.  Nevertheless, Apple's allegations lump together InnoPeak and OPPO,

4  defining them collectively as "the OPPO Defendants."  Complaint preamble, page 1.  Apple never

5  differentiates between alleged acts of each distinct entity and never alleges any conduct that any one

6  particular entity undertook.  Instead, Apple alleges everything collectively (*e.g.*, ¶ 88, 92-104), but

7  justifies this only by alleging that the two companies are "related" (¶ 62).

8    The allegation that the companies are "related," even accepted as true, does not give Apple

9  the right to claim, without specific factual allegations, that both Defendants are liable for each

10  other's alleged acts.  In *Vendavo*, the court dismissed a trade secret claim against two related

11  companies that failed to "distinguish between Price f(x) (a Delaware corporation) and Price f(x) AG

12  (a German corporation)."  2018 WL 1456697 at *4.  The court noted that this failure exacerbated

13  the "the lack of specificity" in plaintiff's trade secret allegation and dismissed the claim against both

14  related defendants.  *Id.*  So too here, Apple's failure to distinguish between OPPO and InnoPeak

15  exacerbates the lack of specificity in its allegations of any specific conduct constituting trade secret

16  misappropriation by ***either*** of the corporate defendants.  Because Apple fails to adequately plead

17  misappropriation against OPPO, Apple's trade secret claim must be dismissed.

18    **C.**     <u>**Apple Fails to Allege Any Damages Caused by OPPO**</u>

19    Apple's trade secret misappropriation claim against OPPO should also be dismissed because

20  Apple fails to plausibly allege damages from misappropriation.  To survive a motion to dismiss, a

21  trade secret plaintiff must allege "that it was damaged by the defendants' actions."  *Navigation*

22  *Holdings, LLC*, 445 F. Supp. 3d at 78.  Here, Apple does so in only the most conclusory (and

23  therefore insufficient) terms.  Apple claims that "[t]he OPPO Defendants' misappropriation has

24  proximately caused damage to Apple, including but not limited to loss of profits, goodwill,

25  competitive advantage and business opportunities—for which Apple is seeking damages" and that

26  "[t]he OPPO Defendants have been unjustly enriched as a further proximate result of their

27  misappropriation of Apple's trade secret and confidential information."  ¶¶ 101-102.  But these

28  allegations fail because they are not connected to any "facts to support an inference of actual harm."

1   *See e.g.*, *Cooper Interconnect, Inc. v. Glenair, Inc*, No. CV 14–08018–RGK (JCx), 2015 WL

2   13722129, at *4 (C.D. Cal. Feb. 3, 2015).  This too warrants dismissal.  *Id.*

3   **V.      CONCLUSION**

4          OPPO respectfully requests that the Court dismiss Apple's Complaint against OPPO with

5   prejudice.

6

7    Dated: October 13, 2025                          **STEPTOE LLP**

8
                                                        */s/ Robyn C. Crowther*
9                                            By:        Robyn C. Crowther
                                                        Boyd T. Cloern (*admitted pro hac vice*)
10                                                      Yueyue Wang (*admitted pro hac vice*)
                                                        Sara A. Morse
11
                                                        Paul J. Stancil (*admitted pro hac vice*)
12                                                      pstancil@steptoe.com
                                                        717 Texas Avenue, Suite 2800
13                                                      Houston, TX 77002
                                                        Telephone:    (713) 221-2300
14                                                      FACSIMILE:  (713) 221-2320

15
                                                        **QUINN EMANUEL URQUHART &**
16                                                      **SULLIVAN, LLP**

17                                                      David Eiseman
                                                        Ryan Landes
18                                                      Patrick T. Schmidt

19                                                      Yixuan Zhu (*admitted pro hac vice*)
                                                        yixuanzhu@quinnemanuel.com
20                                                      Central Park Plaza, 13th Floor
                                                        10 Chaoyang Park South Road
21                                                      Chaoyang District
                                                        Beijing 100026, China
22                                                      Telephone: +86 10 53350105

23                                                      Joseph E. Reed (State Bar No. 323524)
                                                        joereed@quinnemanuel.com
24                                                      555 Twin Dolphin Drive, 5th Floor
                                                        Redwood Shores, Ca 94065
25                                                      Telephone: (650) 801-5000

26                                                      GUANGDONG OPPO MOBILE
                                                        TELECOMMUNICATIONS CORP., LTD.
27

28