UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>CHEN SHI, et al.,<br><br>        Defendants. | Case No. 25-cv-07105-EKL (VKD)<br><br>**ORDER RE OCTOBER 28, 2025 DISCOVERY DISPUTE**<br><br>Re: Dkt. No. 110 |

    Plaintiff Apple Inc. ("Apple") and defendant Guangdong Oppo Mobile Telecommunications Corp., Ltd. ("OPPO") ask the Court to resolve their dispute concerning Apple's document production. Dkt. No. 110.[1] The Court finds this dispute suitable for resolution without oral argument. Civil L.R. 7-1(b).[2]

## I.    BACKGROUND

    In anticipation of briefing on Apple's motion for a preliminary injunction, currently scheduled to begin on November 5, 2025 (*see* Dkt. No. 90 at 2), OPPO served five document requests on Apple. Dkt. No. 110-1. Apple has responded, in relevant part, to all but one of these requests with a representation that it will produce "responsive, non-privileged documents . . . that it can locate after a reasonable search of the location or locations where responsive documents are most likely to be located." *Id.* (responses to RFPs 1-2, 4-5). Apple has responded to the

---

[1] The Court will issue a separate order regarding OPPO's motion to seal certain exhibits (Dkt. No. 109) submitted with the parties' October 28, 2025 discovery dispute letter.

[2] The Court is unable to accommodate the parties' requests for a hearing on this dispute given the time-sensitive nature of the issues raised.

1    remaining document request with a slight variation, stating that it will produce "responsive, non-
2    privileged documents [regarding certain subject matter] . . . that Apple can locate after a
3    reasonable search." *Id.* (response to RFP 3).
4        The parties disagree about the scope of OPPO's discovery of Apple, Apple's search
5    methodology, and the date by which Apple should be required to complete its production.

## II.   DISCUSSION

7        The expedited discovery ordered by the presiding judge is limited to discovery needed to
8    address Apple's forthcoming motion for a preliminary injunction. *See* Dkt. No. 41; *see also* Dkt.
9    No. 48 at 14:5-21 (transcript of August 29, 2025 hearing). The scheduling orders entered in this
10   case, adopted based on the parties' own proposals, include deadlines only for *Apple's* discovery of
11   defendants, not defendants' discovery of Apple. *See id.*; *see also* Dkt. No. 90 at 2. The Court has
12   found no prior discussion by the parties or the presiding judge of the proper scope of defendants'
13   discovery, save for the competing views expressed in the parties' September 12, 2025 joint status
14   report, which was filed before OPPO served any discovery. *See* Dkt. No. 59 at 15-16, 18, 22, 29-
15   30. Nevertheless, it appears that Apple does not disagree that OPPO may obtain some discovery
16   on an expedited basis. *See generally* Dkt. No. 110 at 4-7; Dkt. No. 110-1 (responses to RFPs 1-5).
17       The Court addresses below each area of disagreement.

### A.   Apple Custodians

19       As reflected in the joint submission, Apple has agreed to search the files of Dr. Shi, as well
20   as the files of four Apple employees involved in Dr. Shi's "offboarding" from the company:
21   Mathieu Charbonneau-Lefort, Wesley Cheng, Martin Garfias, and Sandy Zhao. Dkt. No. 110 at 2,
22   5. In addition, Apple is willing to search the custodial files of five custodians, to be selected by
23   OPPO, from among the individuals identified in Apple's trade secret disclosure (Dkt. No. 109-3)
24   who had one-on-one meetings with Dr. Shi prior to his departure from Apple. Dkt. No. 110 at 5.
25   The parties disagree about whether Apple should search the files of *all* individuals with whom Dr.
26   Shi had one-on-one meetings or just the files of five such individuals selected by OPPO.
27       The relevant document request is RFP 2, which asks for documents relating to the one-on-
28   one meetings. Apple explains that of the 36 one-on-one meetings Dr. Shi had, only 19 included

discussions of Apple's trade secrets. Dkt. No. 110 at 4-5. Given Apple's present contention that trade secret information was shared with Dr. Shi during 19 one-on-one meetings before his departure from Apple, for RFP 2, Apple should produce responsive, non-privileged documents, if any, showing for each such meeting, the date of the meeting, the participants, and what was disclosed or discussed during the meeting. The Court expects that this will require a search of the relevant custodial files of all individuals identified in the trade secret disclosure for each of the 19 meetings at issue, for the time period during which Dr. Shi had those meetings.[3] Apple need not search the custodial files for any individual involved in the 17 other meetings that Apple now contends did not involve discussion of Apple's trade secrets.

The parties also disagree about whether other custodians' files should be searched in connection with other RFPs. The Court addresses those disputes in the next section.

### B.     Search Methodology for Apple Custodial Files

The parties disagree about whether, for RFPs 2-5, Apple should run "systematic searches," using OPPO's proposed search terms and date cutoffs for all custodial data for all relevant custodians, or whether Apple may use other means to identify responsive documents. *See* Dkt. No. 110 at 3, 5-6.

As reflected in the joint submission, both OPPO and Apple have proposed search terms, although Apple's proposal is limited to search terms to be applied only to Dr. Shi's email. Dkt. No. 109-4 (OPPO); Dkt. No. 109-5 (Apple). OPPO argues that its 43 search terms are "targeted to the alleged trade secrets" and "mirror" the search terms Apple asked OPPO to apply to its own document collections, and thus should be applied to all custodial sources. Dkt. No. 110 at 3. Apple responds that it will apply OPPO's search terms (other than Dr. Shi's name) to Dr. Shi's email and Slack custodial files from the period April 1-June 27, 2025, but will review Dr. Shi's other custodial files using other, unspecified means. *Id.* at 6. In addition, Apple objects to applying OPPO's search terms to all other custodial files, arguing that "the parties are not similarly situated" with respect to the need for expedited discovery. *Id.* Apple argues that for

---

[3] The Court expects the parties to agree on the relevant time period for these searches.

3

purposes of expedited discovery, it has interviewed employees with knowledge about the location of responsive documents and that this is the most efficient approach to identify such documents. *Id.*

The Court agrees with Apple that for purposes of expedited discovery the parties' needs are not the same, and thus, OPPO's argument based on the similarity of its search terms and Apple's is not particularly persuasive. In order to resolve the parties' dispute, the Court considers the parties' arguments about the appropriate search methodology in the context of the RFP at issue.

### 1. RFP 1

It is not clear whether there is any dispute about Apple's obligation to produce "all documents" Apple has identified and that it contends contain Apple trade secrets. *See* Dkt. No. 110-1 (RFP 1). OPPO says that Apple has only produced 54 of the hundreds of documents Apple contends Dr. Shi took without permission. Dkt. No. 110 at 1. Apple's position regarding RFP 1 is not clear, but in the Court's view, there should be no need for Apple to limit its search for responsive documents to those it can locate "after a reasonable search of the location or locations where responsive documents are most likely to be located." *See* Dkt. No. 110-1 (response to RFP 1). Nor is there any need to apply search terms.

If Apple contends that any of the documents within the scope of RFP 1 contain its trade secret information, Apple must produce all such documents. However, Apple need not produce documents within the scope of RFP 1 that it now contends do not contain its trade secret information. Apple must identify for OPPO all of the documents as to which Apple takes that position.[4] If Apple contends that it cannot produce a trade secret document within the scope of RFP 1 because it no longer has the document, e.g., because the document has been removed from Apple's possession, Apple must so advise OPPO.

---

[4] Contrary to OPPO's argument, there is no justification for expedited discovery of documents reflecting that Dr. Shi downloaded "innocuous material" that is not at issue or trade secret documents that Dr. Shi could have taken but did not. *See* Dkt. No. 110 at 3.

### 2. RFP 2

As noted above, RFP 2 asks for documents relating to the one-on-one meetings Dr. Shi had with Apple employees before he left the company. Because Apple must produce, for each of the relevant custodians for the relevant time period, all documents showing for each of the 19 meetings, the date of the meeting, the participants, and what was disclosed or discussed during the meeting, the Court expects that the application of search terms to the custodial files of the individuals involved in the meetings will not be particularly useful in identifying documents responsive to RFP 2. While the custodians themselves must not conduct the document review on their own, Apple's counsel may directly collect and review these custodial documents for the relevant time period, as Apple has proposed to do, without applying all of OPPO's 43 search terms to the collection.

### 3. RFP 3

RFP 3 asks for all documents "related to" Apple's "invention, development, implementation, or commercialization" of all trade secrets Apple contends defendants misappropriated. *See* Dkt. No. 110-1 (RFP 3). Apple objects to the scope of RFP 3, and also to OPPO's demand that it add custodians involved in development of the trade secrets and then apply OPPO's search terms to those custodians' files. *Id.* at 4, 5, 6. Apple represents it will produce responsive documents related to the "invention and development" of the trade secrets at issue that it can "locate after a reasonable search." *Id.* (response to RFP 3).

The Court is not persuaded that OPPO is entitled to any discovery relating to Apple's development of the trade secrets at issue, beyond what Apple has already committed to provide at this time. If, as OPPO contends elsewhere, Apple's alleged trade secrets are not unique to Apple, but are instead "ubiquitous in the category of wearable devices and beyond," Dkt. No. 59 at 20, the Court questions why OPPO needs such comprehensive discovery *from Apple* regarding its development and implementation of these trade secrets in order to defend against Apple's motion for a preliminary injunction. While such discovery may well be warranted at some point in the case, the Court agrees with Apple that the scope of discovery OPPO demands in RFP 3, and the search methodology it advocates, exceed the bounds of reasonable expedited discovery. *See* Dkt.

No. 48 at 14:7-8 ("We are not going to have all the case discovery happen in the next 30 days."). The Court denies OPPO's requested search methodology beyond what Apple has already agreed to search for and produce.

### 4. RFP 4

RFP 4 asks for all documents that "gave rise to, support, call into question, or otherwise relate to" Apple's allegations of misappropriation. *See* Dkt. No. 110-1 (RFP 4). Apple responds that it has produced a forensic report of Dr. Shi's Apple-owned devices and will produce other, unspecified responsive documents. *Id.* (response to RFP 4).

While the Court agrees that Apple should produce documents tending to support or undermine its allegations of misappropriation, it is not clear why OPPO believes that Apple must apply search terms in order to identify responsive files, nor is it clear to which set of custodians' files OPPO believes the search terms should be applied. The Court expects Apple to review the documents of the individuals involved in the investigation of Dr. Shi's conduct, but OPPO does not offer a sufficient justification for requiring Apple to apply all of OPPO's 43 search terms to these individuals' files. The Court denies OPPO's requested search methodology beyond what Apple has already agreed to search for and produce.

### 5. RFP 5

RFP 5 asks for all communications "with any third party, including but not limited to government authorities, relating to this action or Apple's claims or allegations herein." Dkt. No. 110-1 (RFP 5). Apple represents that it will produce non-privileged, responsive documents that it can "locate after a reasonable search of the location or locations where responsive documents are most likely to be located." *Id.* (response to RFP 5).

OPPO does not explain why it requires this discovery in order to defend against Apple's motion for a preliminary injunction. While such discovery may well be warranted at some point in the case, it is not within the scope of reasonable expedited discovery. The Court denies OPPO's requested search methodology beyond what Apple has already agreed to search for and produce.

### C. Apple Non-Custodial Sources

The parties' dispute regarding Apple's search of non-custodial sources is not well-

developed in the joint submission. The Court has already rejected OPPO's arguments that Apple should be required to search for and produce documents reflecting that Dr. Shi downloaded "innocuous material" that is not at issue or that Dr. Shi could have taken other documents but did not. *See supra*, note 4. In addition, OPPO argues that Apple has not been transparent about what non-custodial sources it is searching or how it is conducting those searches. Dkt. No. 110 at 4. Apple responds that it is searching two non-custodial sources: Apple's Box.com repository, and an internal Apple University website. Apple asserts that its searches are "based on" Mr. Roffman's declaration and "assistance from knowledgeable employees." *Id.* at 6. The Court agrees that Apple's description of its search methodology is vague. However, the parties have provided the Court insufficient information to assess whether any of these non-custodial sources is likely to have information OPPO actually needs for its defense to Apple's preliminary injunction motion, and if so, what kind of information Apple needs to find and produce. In any event, to the extent OPPO wishes Apple to search all repositories to which Dr. Shi had access, it is not clear how such a search will yield any information useful for OPPO's defense.

The Court denies OPPO's request.

### D. Deadlines for Apple's Production

Per the existing case schedule, OPPO's opposition to Apple's preliminary injunction motion is due November 19, 2025. Apple must substantially complete its production of documents, consistent with this order, **by November 4, 2025**. The Court expects the parties to work out a date for OPPO's Rule 30(b)(6) deposition of Apple without the Court's assistance.

**IT IS SO ORDERED.**

Dated: October 29, 2025

Virginia K. DeMarchi
United States Magistrate Judge