Robyn C. Crowther (State Bar No. 193840)
*rcrowther@steptoe.com*
Sara A. Morse (State Bar No. 347086)
*smorse@steptoe.com*
**STEPTOE LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

Boyd T. Cloern *(admitted pro hac vice)*
*bcloern@steptoe.com*
Grace Wang *(admitted pro hac vice)*
*gwang@steptoe.com*
**STEPTOE LLP**
1330 Connecticut Avenue NW
Washington, DC 20036
Telephone: (202) 429-2000
Facsimile: (202) 429-3902

David Eiseman (State Bar No. 114758)
*davideiseman@quinnemanuel.com*
Victoria B. Parker (State Bar No. 290862)
*vickiparker@quinnemanuel.com*
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, Ca 94111
Telephone: (415) 875-6600
Facsimile: 415 875 6700

Ryan Landes (State Bar No. 252642)
*ryanlandes@quinnemanuel.com*
Patrick T. Schmidt (State Bar No. 274777)
*patrickschmidt@quinnemanuel.com*
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Defendants
GUANGDONG OPPO MOBILE TELECOMMUNICATIONS CORP., LTD. and ZIJING ZENG

*[Additional counsel in signature page]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

APPLE INC.,

Plaintiff,

v.

CHEN SHI, GUANGDONG OPPO MOBILE TELECOMMUNICATIONS CORP., LTD., INNOPEAK TECHNOLOGY, INC., and ZIJING ZENG,

Defendants.

Case No. 5:25-cv-07105-EKL

**DEFENDANTS GUANGDONG OPPO MOBILE TELECOMMUNICATIONS CORP., LTD. AND ZIJING ZENG'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Date: May 27, 2026
Time: 10:00 a.m.
Courtroom: 7
Judge: The Hon. Eumi K. Lee

Trial Date: None Set

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on May 27, 2026 at 10:00 a.m. or as soon thereafter as the matter may be heard in the above-entitled Court, the Honorable Eumi K. Lee presiding, located at the San Jose Courthouse, Courtroom 7, 5th Floor, 280 South 1st Street, San Jose, CA 95113, Defendants Guangdong OPPO Mobile Telecommunications Corp., Ltd. ("OPPO") and Dr. Zijing Zeng will and hereby do move this Court for an order dismissing Plaintiff Apple Inc.'s ("Apple") Second Amended Complaint ("SAC") as to OPPO and Dr. Zeng, pursuant to Federal Rule of Civil Procedure 12(b)(6).

Pursuant to section VIII(A) of the Court's Standing Order for Civil Cases, counsel for OPPO and Dr. Zeng certify that they met and conferred with counsel for Apple regarding the substance of this motion on January 22 and 23, 2026. No agreement could be reached.

This motion is made on the grounds that Apple's SAC fails to state a claim for which relief may be granted against OPPO and Dr. Zeng.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the other pleadings and filings on record in this action, as well as other written or oral argument that OPPO and Dr. Zeng may present to the Court.

Dated: January 30, 2026

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: */s/ David Eiseman*

David Eiseman
Ryan Landes
Patrick T. Schmidt
Victoria B. Parker

Yixuan Zhu (*admitted pro hac vice*)
*yixuanzhu@quinnemanuel.com*
Central Park Plaza, 13th Floor
10 Chaoyang Park South Road
Beijing 100026, China
Telephone: +86 10 53350105

**STEPTOE LLP**
Robyn C. Crowther
Boyd T. Cloern
Grace Wang
Sara A. Morse

Paul J. Stancil (*admitted pro hac vice*)
*pstancil@steptoe.com*
717 Texas Avenue, Suite 2800
Houston, TX 77002
Telephone: (713) 221-2300
Facsimile: (713) 221-2320

*Counsel for* GUANGDONG OPPO MOBILE TELECOMMUNICATIONS CORP., LTD. AND ZIJING ZENG

**KEKER, VAN NEST AND PETERS LLP**

*/s/ Andrew F. Dawson*

Andrew F. Dawson (SBN 264421)
*adawson@keker.com*
Cody Gray (SBN 310525)
*cgray@keker.com*
JiLon Li (SBN 348025)
*jli@keker.com*
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

*Counsel for* ZIJING ZENG

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ....... 1

II. RELEVANT ALLEGATIONS IN APPLE'S SAC ....... 2

III. LEGAL STANDARD ....... 3

IV. ARGUMENT ....... 4

A. Apple Fails to Adequately Allege the Trade Secrets at Issue ....... 4

1. Apple Fails To Plead Ownership Of An Allegedly Misappropriated Secret ....... 6

2. Apple Alleges Only Broad Categories Of Information, Which Is Insufficient to State a Claim ....... 7

3. Apple Fails To Distinguish Between Alleged Trade Secrets And Publicly Available Information Or General Knowledge ....... 10

B. Apple Fails To State A Claim of Trade Secret Misappropriation Against Dr. Zeng ....... 12

1. Apple's Inducement Allegations Do Not Support A Misappropriation Claim Against Dr. Zeng ....... 12

2. Apple Fails to Otherwise Adequately Allege Indirect Misappropriation ....... 17

C. The SAC Should Be Dismissed With Prejudice ....... 19

V. CONCLUSION ....... 19

# TABLE OF AUTHORITIES

**Page**

## Cases

*Agensys, Inc. v. Regents of the Univ. of Cal.*,
2024 WL 5679166 (C.D. Cal. Oct. 22, 2024) ........ 17

*AlterG, Inc. v. Boost Treadmills LLC*,
388 F. Supp. 3d 1133 (N.D. Cal. 2019) ........ 5, 9

*Ascon Props., Inc. v. Mobil Oil Co.*,
866 F.2d 1149 (9th Cir. 1989) ........ 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 4

*Attia v. Google LLC*,
983 F.3d 420 (9th Cir. 2020) ........ 9, 11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 14

*Cal. Police Activities League v. Cal. Police Youth Charities, Inc.*,
2009 WL 537091 (N.D. Cal. Mar. 3, 2009) ........ 12

*Eclectic Props. E., Ltd. Liab. Co. v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ........ 4, 6, 16

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011) ........ 4

*Fitbit, Inc. v. Valencell, Inc.*,
964 F.3d 1112 (Fed. Cir. 2020) ........ 12

*Genasys Inc. v. Vector Acoustics, LLC*,
638 F. Supp. 3d 1135 (S.D. Cal. 2022) ........ 10

*Greineder v. Masonic Homes of the R.W. Grand Lodge, F & AM of Penn.*,
2014 WL 1632143 (E.D. Pa. Apr. 23, 2014) ........ 14

*Imax Corp. v. Cinema Techs., Inc.*,
152 F.3d 1161 (9th Cir. 1998) ........ 8

*Jobscience, Inc. v. CVPartners, Inc.*,
2014 WL 852477 (N.D. Cal. Feb. 28, 2014) ........ 4, 5, 9

*Khoja v. Orexigen Therapeutics, Inc.*,
889 F.3d 988 (9th Cir. 2018) ........ 3

*Lamont v. Conner*,
2019 WL 1369928 (N.D. Cal. Mar. 26, 2019) .......... 5

*Loop AI Labs Inc. v. Gatti*,
195 F. Supp. 3d 1107 (N.D. Cal. 2016) .......... 8

*Maiberger v. City of Livonia*,
724 F. Supp. 2d 759 (E.D. Mich. 2010) .......... 14

*Maloney v. T3Media, Inc.*,
853 F.3d 1004 (9th Cir. 2017) .......... 19

*Nat'l Specialty Pharmacy, LLC v. Padhye*,
734 F. Supp. 3d 922 (N.D. Cal. 2024) .......... 8

*Navigation Holdings, LLC v. Molavi*,
445 F. Supp. 3d 69 (N.D. Cal. 2020) .......... 4, 12, 16, 17, 18

*Palantir Techs., Inc. v. Abramowitz*,
2020 WL 9553151 (N.D. Cal. July 13, 2020) .......... 8, 10

*PMM Holdings, LLC v. Meyer*,
2025 WL 3764051 (E.D. Cal. Dec. 30, 2025) .......... 6, 7, 10

*Puma SE v. Forever 21, Inc.*,
2017 WL 4771004 (C.D. Cal. June 29, 2017) .......... 11

*Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*,
149 F.4th 1081 (9th Cir. 2025) .......... 4

*Salameh v. Tarsadia Hotel*,
726 F.3d 1124 (9th Cir. 2013) .......... 18

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......... 14

*Synopsys, Inc. v. ATopTech, Inc.*,
2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) .......... 6, 11

*Tao of Sys. Integration, Inc. v. Analytical Serv's. & Materials, Inc.*,
330 F. Supp. 2d 668 (E.D. Va. 2004) *aff'd*, 141 F. App'x 129 (4th Cir. 2005) .......... 7

*Teradata Corp. v. SAP SE*,
2018 WL 6528009 (N.D. Cal. Dec. 12, 2018) .......... 5

*Trustwell v. RLH Assets, LLC*,
2025 WL 2697107 (D. Or. Sept. 22, 2025) .......... 4, 5, 6, 7, 9

*Vendavo, Inc. v. Price*
*f(x) AG*, 2018 WL 1456697 at *4 (N.D. Cal. Mar. 23, 2018) .......... 8, 9, 11

**Other Authorities**

Charles Tait Graves & Brian D. Range, *Identification of Trade Secret Claims in Litigation: Solutions for a Ubiquitous Dispute* ........ 5

Rule 12(f) ........ 5

## I. <u>INTRODUCTION</u>

In its third attempt to state a claim, and with the benefit of extensive expedited discovery and briefing on its motion for a preliminary injunction, Apple has still failed to plead a single alleged trade secret as required by the governing pleading standards. Instead of improving its trade secret identification, Apple merely adds a new defendant, Dr. Zijing Zeng, asserting threadbare allegations against him based on transparent misrepresentations of fact. Because documents cited by the SAC are inconsistent with those misrepresentations, those allegations should be disregarded.

Apple's SAC should thus be dismissed on two grounds. *First*, the SAC's trade secret misappropriation claim should be dismissed as to OPPO and Dr. Zeng because it fails to adequately allege the trade secrets supposedly at issue. Like its previous attempts, Apple continues to offer only generic categories of alleged trade secrets seemingly covering entire areas of smartwatch technology, such as "design information for health sensing technology," without identifying what specific information within those broad categories Apple claims is entitled to trade secret protection. Under black-letter law, that is not enough to state a claim. Apple's failure to identify its trade secrets, especially after obtaining early and extensive discovery, is fatal. *Second*, the claim should also be dismissed as to Dr. Zeng because it fails to adequately allege misappropriation. Apple's claim against Dr. Zeng is, fundamentally, that Dr. Zeng improperly induced Dr. Shi to obtain, disclose, or use Apple's purported trade secrets. But the facts alleged in the SAC, when disentangled from Apple's selective quotations and conclusory editorializing, do not support such a claim. The facts are far more mundane, reflecting nothing more than standard employee recruitment. Because Apple fails to plausibly allege any misappropriation by Dr. Zeng, the claim against him should be dismissed for that independent reason.

Lastly, because Apple has now had three attempts to allege plausible claims, Apple's sole claim against OPPO and Dr. Zeng should be dismissed with prejudice.

## II. RELEVANT ALLEGATIONS IN APPLE'S SAC[1]

OPPO is a consumer electronics company that was founded in 2004. ¶70. OPPO makes and sells a wide range of products; it has made and sold smartwatches since 2020. *Id.* Dr. Zijing Zeng serves as the Vice President and Head of OPPO Health. ¶20.

Apple is one of the largest companies in the world, with a market capitalization of approximately $4 trillion. Among many other products, Apple offers smartwatches under its Apple Watch brand. ¶¶52-53. Apple's smartwatches include health sensing technology that "uses small sensors to collect, process, and transmit data related to the wearer's physiological signals, movements, and environment," which Apple alleges "allows monitoring of metrics such as heart rate, temperature, blood oxygen, sleep patterns, and more." ¶52. Apple claims that it owns certain protectable trade secrets relating to its health sensing technology. But Apple's SAC does not specify what those alleged trade secrets are, instead defining the alleged trade secrets collectively and vaguely as:

> (a) confidential schematics and technical specifications concerning hardware and software implementations of sensors and related technologies on Apple products, including temperature sensors, ECG functionality, and PPG sensors on Apple Watch; (b) confidential materials relating to technological capabilities in unreleased products and features; (c) confidential documents relating to temperature sensing technology, including technical parameters and design elements; (d) Apple's confidential Silicon Engineering Group documents on chip-related technologies, including silicon technologies; and (e) Apple-confidential information concerning engineering innovation, research, methodologies, and techniques.

¶54.

Defendant Dr. Chen Shi is a California resident who worked at Apple from January 2020 through June 2025. ¶¶5, 72. Apple alleges that he worked primarily on the Apple Watch team during his time at Apple. ¶5. Consistent with his rights as a California employee, in April 2025,

[1] Solely for purposes of this motion, OPPO and Dr. Zeng accept the well-pleaded factual allegations in Apple's SAC as true. OPPO and Dr. Zeng do ***not*** accept Apple's self-serving and argumentative mischaracterizations of those factual allegations or the legal conclusions Apple asks the Court to draw from those mischaracterizations. Paragraph citations in this motion are to Apple's SAC, Dkt. 251.

Dr. Shi purportedly reached out to Dr. Zeng about the possibility of working for OPPO or its U.S.-based affiliated company Defendant InnoPeak Technology, Inc. ("Innopeak"). *See* ¶73.

Apple concedes that it does not claim any proprietary interest in information "generally known outside Apple." ¶63. It also concedes that Dr. Shi was free to use "his general knowledge" at any new employer, and that such knowledge itself is "already extremely valuable." ¶72. Nonetheless, Apple alleges that Dr. Shi took numerous categories of purported Apple "trade secrets" to share with OPPO, InnoPeak, and Dr. Zeng. ¶¶57-58; *see also* ¶84. Apple attempts to implicate OPPO and Dr. Zeng in this alleged acquisition of trade secrets, largely by selectively quoting and mischaracterizing communications between Dr. Zeng and Dr. Shi when OPPO was considering hiring Dr. Shi. *See, e.g.*, ¶78 (concluding that Dr. Shi planned to "study[] Apple's confidential information," even though the quoted message makes no reference to confidential information); *see also* ¶¶73-77, 79-81.

Apple further alleges that Dr. Shi incorporated Apple's purported "trade secrets" into two presentations—but does not identify what "trade secret" information those presentations allegedly included, nor how individuals attending those presentations would have known that supposed trade secret information was included. ¶¶96-97. Instead, Apple vaguely alleges that the presentations included Apple's "proprietary sensor technology" and "confidential development plans." *Id.*

The SAC refers extensively—albeit selectively—to messages sent between Dr. Zeng and Dr. Shi. *See* ¶¶12-13, 76-78, 81, 84. These references form the basis for Apple's claims against all Defendants, especially its claims for trade secret misappropriation based on improper acquisition and access. *See* ¶¶105, 109, 111-13. Therefore, Apple has effectively incorporated these complete messages by reference, and OPPO and Dr. Zeng refer below to context strategically omitted by Apple for the purpose of "prevent[ing] [Apple] from selecting only portions of documents that support [its] claims, while omitting portions . . . that weaken—or doom—[its] claims." *Khoja v. Orexigen Therapeutics, Inc.*, 889 F.3d 988, 1002 (9th Cir. 2018).

## III. <u>LEGAL STANDARD</u>

To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," but "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). "Although factual allegations are taken as true, [courts] do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotation omitted). Factual allegations that are equally consistent with an innocent explanation are insufficient; "[s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Eclectic Props. E., Ltd. Liab. Co. v. Marcus & Millichap Co.*, 751 F.3d 990, 996-97 (9th Cir. 2014).

## IV. <u>ARGUMENT</u>

To state a claim for trade secret misappropriation under the DTSA, "a plaintiff must allege (1) that it is the owner of a trade secret; (2) that the defendant misappropriated the trade secret; and (3) that it was damaged by the defendant's actions." *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 78 (N.D. Cal. 2020).

### A. <u>Apple Fails to Adequately Allege the Trade Secrets at Issue</u>

Apple's SAC fails at the threshold because it fails to allege that Apple owns any protectable trade secrets. "A true trade secret plaintiff ought to be able to identify, up front, and with specificity the particulars of the trade secrets without any discovery." *Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014); *see also Trustwell v. RLH Assets, LLC*, 2025 WL 2697107, at *5 (D. Or. Sept. 22, 2025) ("Allegations that set out purported trade secrets in broad, categorical terms that are merely descriptive of the types of information that generally may qualify as protectable trade secrets are insufficient to state a claim.") (internal quotations and citations omitted); *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1088 (9th Cir. 2025) (holding that, even based on "the conventional procedures under the Federal Rules of Civil Procedure," a trade secret plaintiff must "identify a trade secret with sufficient particularity" and not

"simply rely upon catchall phrases or identify categories of trade secrets") (internal quotations and citations omitted).[2]

Despite this clear requirement, it has long been recognized that trade secret plaintiffs virtually never "provide a precise and complete identification of the alleged trade secrets at issue without a court order requiring them to do so." Charles Tait Graves & Brian D. Range, *Identification of Trade Secret Claims in Litigation: Solutions for a Ubiquitous Dispute*, 5 Nw. J. Tech. Intell. Prop. 68, 68 (2006). "This is a strategy, not an accident." *Id.*; *see also JobScience*, 2014 WL 852477 at *5 (describing the "old trick of vague pleading with the blanks to be filled in only after discovery"). It is an effective strategy because, unless courts require plaintiffs to plead trade secrets with the particularity required by law, "it is easy to allege theft of trade secrets with vagueness, then take discovery into the defendants' files, and then cleverly specify what ever happens to be there as having been trade secrets stolen from plaintiff." *Id.*

Courts routinely dismiss trade secret claims where the complaint does not identify the alleged trade secrets with sufficient particularity to put the defendants on notice of which trade secrets they allegedly misappropriated. *Lamont v. Conner*, 2019 WL 1369928, at *8 (N.D. Cal. Mar. 26, 2019) (granting motion to dismiss where "Plaintiff's description of his trade secrets as stated in the complaint are not plead with sufficient particularity"); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144 (N.D. Cal. 2019) (granting motion to dismiss where plaintiff "fail[ed] to identify its allegedly misappropriated trade secrets with sufficient particularity to state a claim under the DTSA"); *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697 at *4 (N.D. Cal. Mar. 23, 2018) (same); *Teradata Corp. v. SAP SE*, 2018 WL 6528009, at *4 (N.D. Cal. Dec. 12, 2018) (same); *Space Data Corp.*, 2017 WL 5013363 at *2 (same); *ESHA Rsch, LLC*, 2025 WL 2697107, at *5-6 (D. Or. Sept. 22, 2025) (same).

---

[2] *Quintara* reversed an order striking portions of a plaintiff's trade secret disclosures under Rule 12(f) and as a discovery sanction ***after*** the plaintiff's DTSA ***claims*** had already survived a motion to dismiss. It did not disturb the Ninth Circuit's DTSA pleading standards.

1. <u>Apple Fails To Plead Ownership Of An Allegedly Misappropriated Secret</u>

In its SAC, Apple once again fails to meet its burden to establish that any information Defendants allegedly misappropriated was a protectable trade secret. Apple's only allegations of improper acquisition, use, or disclosure of trade secrets as to OPPO and Dr. Zeng relate to two presentations Dr. Shi made to OPPO employees. *E.g.*, ¶¶96-97. According to Apple, these presentations disclosed Apple's "proprietary sensor technology" and "confidential development plans." *Id.* Such "broad, categorical descriptions" of trade secrets" are "insufficient to survive the pleading stage." *PMM Holdings, LLC v. Meyer*, 2025 WL 3764051, at *12 (E.D. Cal. Dec. 30, 2025) (dismissing trade secret claim because a list of "generic terms such as services, products, techniques, processes, operations, etc." were not sufficiently particular, even where plaintiff did identify specific product models that were misappropriated) (internal quotations omitted); *see also Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013) (dismissing trade secret claim because descriptions, including "proprietary input and output formats, scripts, and technical product documentation," were "too sweeping and vague").

Instead of describing the technology or development plans with the degree of specificity necessary to separate them from information that is generally known or readily ascertainable, Apple states only that Dr. Shi's presentation "slides and content" "***appear*** to have been copied" from certain Apple documents. ¶97 (emphasis added). Apple apparently bases this conclusion on the allegation that "Defendants have provided no alternative sources for this information other than Apple's trade secrets." *Id.* This allegation does not provide "facts tending to exclude the possibility that [an] alternative explanation is true," such as that the presentation contained only publicly available, commonly known concepts. *See Eclectic Props.*, 751 F. 3d at 996-67.

Further, while Apple identifies the names of the documents that Dr. Shi "appears to have copied," it does not identify any purported trade secrets. *See, e.g.*, ¶89 (stating that the document is trade secret as a whole, describing it only vaguely as "includ[ing] technical information on touch signals relevant to Apple products"); *Synopsys*, 2013 WL 5770542 (finding similarly described "technical product documentation" insufficient to state a trade secret claim). The documents themselves cannot be trade secrets because a "document itself cannot be a trade secret, although it

may contain trade secrets." *Tao of Sys. Integration, Inc. v. Analytical Serv's. & Materials, Inc.*, 330 F. Supp. 2d 668, 678 (E.D. Va. 2004) *aff'd*, 141 F. App'x 129 (4th Cir. 2005). Because Apple's identification of allegedly misappropriated trade secrets is deficient, its trade secret claim should be dismissed. *See Vendavo*, 2018 WL 1456697 at *4 (dismissing trade secret claim where plaintiff only offered "broad, categorical terms," such as "source code" of "information not expressly covered by its patents," because they were "more descriptive of the types of information that generally may qualify as protectable trade secrets than as any kind of listing of particular trade secrets [plaintiff] has a basis to believe actually were misappropriated here").

2. Apple Alleges Only Broad Categories Of Information, Which Is Insufficient to State a Claim

Even as to purported trade secrets that are not tied to allegations of misappropriation, Apple does not identify them with particularity anywhere in the SAC. Indeed, Apple offers only a vague summary of various categories, without tying those categories to any allegations of misappropriation:

> (a) confidential schematics and technical specifications concerning hardware and software implementations of sensors and related technologies on Apple products, including temperature sensors, ECG functionality, and PPG sensors on Apple Watch; (b) confidential materials relating to technological capabilities in unreleased products and features; (c) confidential documents relating to temperature sensing technology, including technical parameters and design elements; (d) Apple's confidential Silicon Engineering Group documents on chip-related technologies, including silicon technologies; and (e) Apple-confidential information concerning engineering innovation, research, methodologies, and techniques.

¶57.[3] But this description merely recites generalized ***categories*** that might include confidential information (along with public information). As such, it is deficient because "allegations of a purported trade secret in 'broad, categorical terms' that simply describe the types of information that generally may qualify as protectable trade secrets are insufficient to state a claim." *PMM Holdings*, 2025 WL 3764051 at *11; *see also ESHA Rsch, LLC*, 2025 WL 2697107 at *5-6

[3] This is substantively identical to the trade secret identification in Apple's original Complaint and First Amended Complaint. *Compare* ¶ 57 *with* Dkt. 1 ¶ 50 *and* Dkt. 129 at ¶ 54. Thus, despite having this deficiency called to its attention in Defendants' two prior motions to dismiss, Apple did nothing to remedy the deficiency in the SAC.

(dismissing trade secret claim where plaintiff listed certain "features and functionalities," because plaintiff provided "only categories of information where trade secret material may lie").

Categories as broad as "hardware and software implementations of sensors and related technologies in Apple products," "technological capabilities in unreleased products and features," "temperature sensing technology," "chip-related technologies," and "information concerning engineering innovation, research, methodologies, and techniques" (¶57) fail to "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade." *CleanFish*, 2020 WL 4732192, at *3. Indeed, such broad categories appear to sweep in entire fields of technology. Courts regularly hold that generic categorical descriptions like these are insufficient to state a claim. *Nat'l Specialty Pharmacy, LLC v. Padhye*, 734 F. Supp. 3d 922, 929 (N.D. Cal. 2024) (dismissing trade secret claim because "catchall categories of the ***kinds*** of trade secrets that might be at issue," such as "vendor and partner information, proprietary formulas, business processes, pricing strategies, pricing data, marketing methods, other data, computer and software processes and systems," did not "clearly refer to tangible trade secret material as required") (internal quotations and citations omitted).

In the context of a case like this one, involving fast-developing, complex technology, Apple's identification of generic categories of alleged trade secrets is especially deficient. The categories Apple identifies—"specifications" and "capabilities" for smartwatches and associated components—involve "incremental variations" in a field (smartwatches and related health monitoring technology) that has been steadily developing for at least a decade. ¶49; *see Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1112 (N.D. Cal. 2016). Apple's description of its alleged trade secrets prevents the Court and Defendants from "discerning exactly which" elements are alleged trade secrets. *See Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998) (finding that "sophisticated and highly complex" technology required more "concrete identification" of trade secrets).

Over the course of expedited discovery, Apple has served Defendants with an ever-changing set of alleged trade secret disclosures. These disclosures are irrelevant to OPPO's motion to dismiss.

Because courts analyzing a motion to dismiss are limited to the complaint, identifying alleged trade secrets in other documents "does not change the Court's analysis." *Palantir Techs., Inc. v. Abramowitz*, 2020 WL 9553151, at *18 (N.D. Cal. July 13, 2020) (finding that, despite filing a separate trade secret disclosure, plaintiff's "complaint still fails to describe with sufficient particularity the trade secrets that were disclosed to Defendants and which parts of the patent applications contain those purported trade secrets"); *see also Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (same).

Even if they could be considered at the motion to dismiss stage, Apple's other documents further underscore Apple's failure to identify any purported trade secrets with the appropriate particularity. Indeed, most recently, in its reply in support of its motion for a preliminary injunction—after Defendants pointed out Apple's failure to identify any trade secrets and demonstrated that the categories Apple is claiming and the documents it has identified contained all manner of material in the public domain—Apple rejoined by claiming entirely new purported trade secrets. *See* Dkt. 276 (Defendants' Objections to Apple's New Reply Evidence) (identifying purported trade secrets Apple did not disclose in any of the three versions of its complaint, three separate trade secret disclosures, or any prior brief). Apple must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and ***to permit the defendant to ascertain at least the boundaries within which the secret lies***.'" *CleanFish LLC*, 2020 WL 4732192 at *3 (citation omitted, emphasis added). The need to ascertain the boundaries of trade secrets is particularly essential where—as here—the plaintiff is attempting the "old trick" of pleading vague, generic categories of information as trade secrets, then filling in the blanks with new allegations to resuscitate its claims." *See JobScience*, 2014 WL 852477 at *5.

Moreover, like the SAC, each of Apple's trade secret disclosures rely on "categories of information where trade secret material may lie." *ESHA Rsch.*, 2025 WL 2697107, at *6; *CleanFish LLC*, 2020 WL 4732192 at *3-4. And also like the SAC, Apple's trade secret disclosures do not distinguish purported trade secrets from "general knowledge" (*see* ¶72) or publicly available information (*see Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020), *infra*). Instead, like the

SAC (*see* ¶89), Apple's trade secret identification essentially lists a series of documents or files and claims that each document or file, "as a whole," is Apple's trade secret. Thus, even if Apple's trade secret disclosures could be considered in deciding this motion to dismiss, they fail to identify any alleged trade secrets with "sufficient particularity." *Vendavo*, 2018 WL 1456697, at *4; *AlterG*, 388 F. Supp. 3d at 1146; *see also Palantir*, 2020 WL 9553151, at *18. If anything, Apple's trade secret disclosures show that Apple could not sufficiently identify its trade secrets even if given leave to amend.

Because Apple identifies only "broad categories of information," it has failed to plead ownership of a trade secret and its trade secret claim should be dismissed. *See PMM Holdings, LLC*, 2025 WL 3764051, at *12.

3. Apple Fails To Distinguish Between Alleged Trade Secrets And Publicly Available Information Or General Knowledge

Further, Apple claims that "many aspects of its wearable health sensing technology" are "confidential" and that certain "specifications," "processes," "plans," and "assessments" are proprietary, ¶55, but does not tie its claims of ownership to any reasonably identified trade secret. In fact, Apple acknowledges that trade secret protection does not extend to all of Apple's technology and products. *See* ¶52 ("Apple relies on its trade secrets, ***in addition to*** its copyrights, patents, and trademarks") (emphasis added); ¶72 (acknowledging that "general knowledge" may be "extremely valuable," but is not a trade secret owned by Apple). "[V]ague references" to an "array of potential sources" are not enough to plead ownership of a trade secret." *Genasys Inc. v. Vector Acoustics, LLC*, 638 F. Supp. 3d 1135, 1152 (S.D. Cal. 2022) (dismissing trade secret claim because plaintiff "fail[ed] to allege ownership of any trade secret with sufficient particularity"). Apple cannot satisfy its pleading burden to show ownership of a trade secret by claiming that it maintains "many" but not all "aspects of its wearable health sensing technology" as confidential (¶55) or claiming that "many" but not all "of the documents" that Dr. Shi allegedly copied were "highly confidential" to Apple (¶72). *See Genasys*, 638 F. Supp. 3d at 1155 (noting that without adequate distinction between "confidential and non-confidential" information, the court cannot determine "which allegations—if any—contain valid trade secrets") (internal quotations and citations omitted).

The need to identify the specific trade secrets is especially critical where the plaintiff itself acknowledges that "some of the information within the categories is publicly available." *Id.* at 1152. Apple acknowledges that it protects some of its purported inventions with patents (¶52) and cannot dispute that it owns and has applied for numerous patents covering health sensor technology in smartwatches. *See, e.g.*, U.S. Patent App. Pub. No. US 2016/0058312-A1 (filed Dec. 12, 2014) (Apple patent for PPG sensors); U.S. Patent No. 10537284-B1 (issued Jan. 21, 2020) (Apple patent for PPG sensors); U.S. Patent No. 10987054-B2 (issued April 27, 2021) (Apple patent for wearable electronic device with electrodes for sensing biological parameters).[4] Publicly disclosing an alleged invention, in a patent or patent application or elsewhere, "extinguishes the information's trade secret status." *Attia* , 983 F.3d at 426.

There can be no dispute that certain aspects of the broad categories of alleged trade secrets Apple identifies are general knowledge for those skilled and knowledgeable in the development of smartwatches and related health monitoring technology; Apple does not claim otherwise. *See* ¶72 (admitting that "extremely valuable" information that Dr. Shi may have obtained at Apple was "general knowledge" that Dr. Shi "could take…to the OPPO Defendants without issue"). For example, Apple does not and cannot deny that temperature sensors, ECG functionality, and PPG sensors are longstanding, widely utilized technologies that are routinely incorporated into wearables, but Apple does nothing to identify the specific information within each category that it claims is a trade secret, as opposed to information that is publicly available. Apple's failure to do so warrants dismissal. *Vendavo*, 2018 WL 1456697 at *3; *Synopsys*, 2013 WL 5770542, at *6.

Apple's SAC, like its original Complaint and First Amended Complaint, does nothing to separate the alleged trade secret features of its smartwatch health sensor technology from publicly available information such as patented, non-trade secret features of that technology and general knowledge to those in the industry. Thus, Apple fails to plead ownership of any protectable trade secret.

[4] The Court may take judicial notice of publicly filed patents on a motion to dismiss. *Puma SE v. Forever 21, Inc.*, 2017 WL 4771004, at *2 n.1 (C.D. Cal. June 29, 2017) (internal citation omitted).

**B. <u>Apple Fails To State A Claim of Trade Secret Misappropriation Against Dr. Zeng</u>**

Apple's claim against Dr. Zeng should be dismissed for a separate and independent reason: the SAC does not plausibly allege that Dr. Zeng misappropriated any trade secret information. At the outset, it should be noted that Apple does not allege that Dr. Zeng directly misappropriated any trade secret information from Apple. Instead, its case relies primarily on allegations that Dr. Zeng "induced Dr. Shi to obtain Apple trade secrets and confidential information for use in his work for OPPO and InnoPeak alongside Dr. Zeng." ¶112.

Courts in this district frequently distinguish between "direct trade secret misappropriation claims and indirect trade secret misappropriation claims, depending on whether a plaintiff alleges that a defendant obtained the trade secrets directly from the plaintiff or indirectly from someone other than plaintiff." *Navigation Holdings, LLC*, 445 F. Supp. 3d at 78. Because Apple alleges that Dr. Zeng obtained trade secret information from Dr. Shi—not from Apple itself—it alleges a theory of indirect misappropriation, which requires that Dr. Zeng "knew or had reason to know before the use or disclosure that the information was a trade secret." *Id.* at 79 (quoting *Cal. Police Activities League v. Cal. Police Youth Charities, Inc.*, 2009 WL 537091, at *3 (N.D. Cal. Mar. 3, 2009)).

1. <u>Apple's Inducement Allegations Do Not Support A Misappropriation Claim Against Dr. Zeng</u>

The SAC fails to adequately allege that Dr. Zeng "induced" Dr. Shi to misappropriate trade secrets because Apple does not plausibly allege that Dr. Zeng knew that any information Dr. Shi discussed acquiring constituted Apple's trade secrets. The critical set of allegations in the SAC as to Dr. Zeng concerns a series of text communications between Dr. Zeng and Dr. Shi from April to June 2025. *See* ¶¶73-84. Apple argues that these exchanges demonstrate that Dr. Zeng (and OPPO) "condoned and encouraged" Dr. Shi's alleged misconduct. ¶12. The actual exchanges—stripped of Apple's mischaracterizations of their contents—demonstrate nothing of the kind.

In the first exchange, Dr. Zeng allegedly asked Dr. Shi about his knowledge of PPG technology, which is used in certain smartwatches to track health information. ¶76. PPG sensors are a well-established, widely used technology used in a variety of devices. *See, e.g.*, *Fitbit, Inc. v.*

*Valencell, Inc.*, 964 F.3d 1112, 1116 (Fed. Cir. 2020) (concerning patentability of devices using PPG sensors). Dr. Shi allegedly responded, "I understand the principles of PPG and related optical knowledge. I'm currently in charge of thermal systems, and our larger team is responsible for PPG. I'll make my best effort to learn as much about it as possible." ¶77. Dr. Zeng allegedly replied with what Apple describes as "two 'awesome' emojis." ¶78. Apple claims that Dr. Shi's response constitutes "confirm[ation] that [Dr. Shi] was going to obtain Apple confidential information about PPG sensors." ¶78; *see id.* ¶1 (mischaracterizing the same message and describing it as proving Dr. Shi's efforts to "'collect as much information as possible' from Apple"). That is pure editorializing by Apple's attorneys, and the Court should disregard Apple's attempt to insert words into Dr. Shi's text messages that are simply not there. The actual quoted text message makes no mention of obtaining information ***from Apple***, a critical distinction given that there is a wealth of public knowledge about PPG sensors outside Apple. That is dispositive, because indirect misappropriation claims fail at the motion to dismiss stage where they do not foreclose an "innocent explanation" that the employer defendant did not know that the alleged trade secret information "belonged to Plaintiff." *CleanFish, LLC*, 2020 WL 4732192, at *7.

The Court should also disregard Apple's over-reading of Dr. Zeng's "two 'awesome' emojis." *See* ¶84 ("Dr. Zeng assented to Dr. Shi's efforts to gather 'as much information as possible' from Apple, referring to Dr. Shi's efforts…as 'awesome.'"). As an initial matter, the two alleged "awesome" emojis were not in response to a text saying Dr. Shi hoped to "'gather as much information as possible' from Apple"—because Dr. Shi never said that. The relevant exchange, as Apple itself pleads (and as the text message itself shows, *see* Dkt. 11-4 at 2), was this: (1) Dr. Zeng asked Dr. Shi if he understood PPG technology, (2) Dr. Shi confirmed that he did and also said he would do his best to learn more about it (without mentioning Apple at all, let alone Apple confidential information), and (3) Dr. Zeng responded with "awesome" emojis. Compare the alleged text exchange, ¶¶76-78:

> Dr. Zeng: Are you familiar with PPG? Some optical sensing technologies are also quite important.

> Dr. Shi: Yes, I understand the principles of PPG and related optical knowledge. I'm currently in charge of thermal systems, and our larger team is responsible for PPG. I'll make my best effort to learn as much about it as possible.
>
> Dr. Zeng: [Two "awesome" emojis.]

With Apple's descriptions of the same exchange, ¶78:

> Dr. Shi…further advised Dr. Zeng that he was going to "learn as much about it as possible" ***from that Apple team,*** i.e., learn about PPG by studying Apple's confidential information…. Dr. Shi ***confirmed that he was going to obtain Apple confidential information about PPG sensors*** (emphasis added).

And again with Apple's escalating descriptions of the same exchange, ¶84:

> ***Dr. Zeng assented*** to Dr. Shi's efforts to gather "as much information as possible" from Apple, ***referring to Dr. Shi's efforts***—done to benefit and on behalf of both Dr. Shi and his new employer, the OPPO Defendants—as ***"awesome"*** (emphasis added).

The Court need not and should not "accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (quotations omitted). The actual text exchange gives ***no*** reason to infer that Dr. Shi was talking about Apple trade secrets, let alone that Dr. Zeng understood Dr. Shi to mean as much. "When a plaintiff pleads facts in support of a claim that could just as easily lend credence to a completely innocuous scenario, *Iqbal* and *Twombly* instruct that the claim ought to be dismissed." *Maiberger v. City of Livonia*, 724 F. Supp. 2d 759, 782 (E.D. Mich. 2010); *see also Greineder v. Masonic Homes of the R.W. Grand Lodge, F & AM of Penn.*, 2014 WL 1632143, at *6 (E.D. Pa. Apr. 23, 2014) (dismissing claim where "the plaintiff has failed to plead facts that discount a more natural and innocuous explanation for the events that have given rise to a claim."). Indeed, *Twombly* itself teaches that allegations "just as much in line with" innocuous, lawful behavior fail to state a claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007). Here, Apple's allegations are ***at least*** "as much in line with" innocuous behavior—Dr. Zeng wanting to confirm that a potential new hire understood and would undertake to learn about an area of technology that would be involved in his new job—as they are with Apple's nefarious version of the events.

Similarly, in the second exchange, weeks later, Dr. Shi allegedly texted Dr. Zeng: "I've also been reviewing various internal materials and doing a lot of 1:1 meetings in an effort to collect as much information as possible—will share with you all later," to which Dr. Zeng allegedly responded "alright" and sent "an 'OK' emoji.'" ¶12; *see also* ¶79 (the first exchange allegedly occurred before May 14, 2025) and ¶12 (the second exchange allegedly occurred on June 4, 2025). Apple claims that this exchange amounted to Dr. Shi "communicat[ing] with OPPO about his plans to 'share with' OPPO the internal materials and information he had gathered from Apple," including "Apple's specific technology implementations, and other highly detailed technical and development information," and that Dr. Zeng's response demonstrates that "OPPO encouraged, approved, and agreed to Dr. Shi's plan to collect Apple's proprietary information before leaving Apple." ¶¶72-73. Again here, Apple misleadingly overstates the actual exchange, relying on selective quotation and distortion rather than well-pled facts. The Court should limit its consideration to the well-pleaded allegations of what the texts ***actually say***, and disregard Apple's conclusions about what it thinks the texts ***mean*** (at least as Apple reworded them). The actual exchange reads:

> Dr. Shi: Zijing, I heard the offer is in the final stage. Once I receive it, I'll sign it. Thank you again for your and the company's trust and support. I'll do my best. [Grin]
>
> Dr. Shi: I'm planning to start on 6/30. This week I'll inform my team about my resignation. Lately, I've also been reviewing various internal materials and doing a lot of 1:1 meetings in an effort to collect as much information as possible—will share with you all later.
>
> Dr. Shi: I've been using Dexcom's newly released Stelo recently—it's their first prescription-free CGM. I think it could be a good benchmark product for us. If there's anything you'd like me to look into, just let me know. Looking forward to joining!
>
> Dr. Zeng: Alright. 👌 Have you discussed everything with your family? *See* Dkt. 11-4 at 3.

Dr. Shi sent three separate messages before Dr. Zeng's "Alright" response, but Apple only quotes an excerpt of the second of those three messages, and only part of Dr. Zeng's response. *See* ¶13. In the actual exchange, it is hardly plausible that Dr. Zeng's "Alright" refers to Dr. Shi's message about gathering information. In fact, considering the rest of Dr. Zeng's message ("Have you discussed everything with your family?"), it is far more plausible that Dr. Zeng was responding to Dr. Shi's first message in which he confirmed he had decided to join OPPO. Certainly, the actual exchange does not preclude innocent explanations. *See Eclectic Props*, 751 F.3d at 996 ("plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent" with an innocuous explanation) (internal quotations and citations omitted); *see also CleanFish*, 2020 WL 4732192, at *7 n.3 ("Given the risk that trade secret claims can be misused for anti-competitive purposes, the Court agrees that it is appropriate for a plaintiff to be required to allege facts that tend to exclude general knowledge or innocuous (i.e., competitive marketplace) explanations.").

Instead of providing "factual substantiation of Defendants' knowledge," *Navigation Holdings, LLC*, 445 F. Supp. 3d at 79, Apple offers only its own misrepresentations and mischaracterizations of text message conversations. Defendants urge the Court to review the broader context of the messages at issue, which are available at Dkt. 11-3. Separate and apart from the specific misrepresentations articulated above, the broader context of these messages is entirely inconsistent with the allegation that Dr. Zeng was encouraging any form of misconduct. The messages include precisely what one would expect from an eager job applicant trying to impress a potential new employer—references to Dr. Shi's connections in academia and in the health industry, questions regarding where the job would be located, and generic discussions of "some ideas for future wearable devices" after a discussion with unnamed professors in New York. *See* Dkt. 11-4 at 3-4. References to Apple are fleeting and make no reference to confidential information or anything resembling a trade secret. Shorn of Apple's editorializing, the only plausible interpretation is that Dr. Zeng had no inkling that, as Apple alleges, Dr. Shi intended to take confidential and protected information from Apple.

2. <u>Apple Fails to Otherwise Adequately Allege Indirect Misappropriation</u>

Apple's allegations regarding Dr. Shi's actions after joining OPPO likewise do not plausibly allege that ***Dr. Zeng***, an individual defendant, is personally liable for indirect trade secret misappropriation. Much of the remainder of Apple's allegations as to Dr. Zeng pertain to two presentations Dr. Shi made to OPPO employees, one on July 16, and another on August 1, 2025. ¶¶96-97. Once again, Apple's allegations as to Dr. Zeng are conclusory, devoid of factual support, and insufficient under the law.

As to the July 16 presentation, the SAC does not allege that Dr. Zeng played any role in preparing, reviewing, or authorizing the presentation. ¶96. While Apple alleges that portions of the presentation "appear[] to have been copied from misappropriated Apple trade secrets," ¶96, Apple fails to allege that Dr. Zeng had any knowledge of those portions at all, let alone whether those portions might contain protected information. As noted above, to adequately allege an indirect misappropriation theory, Apple must allege that Dr. Zeng "knew or had reason to know" that the information was a trade secret. *Navigation Holdings, LLC*, 445 F. Supp. 3d at 79. The SAC fails to do so as to the July 16 presentation.

With regard to the August 1 presentation, Apple alleges that "Dr. Zeng arranged for Dr. Shi to give a detailed presentation" to employees, and that "[a]t Dr. Zeng's request, Dr. Shi shared details about Apple's trade-secret and confidential information concerning Apple's sensor technology." ¶97. The SAC alleges no facts in support of this assertion. *See Agensys, Inc. v. Regents of the Univ. of Cal.*, 2024 WL 5679166 at *6-7 (C.D. Cal. Oct. 22, 2024) (dismissing claim where plaintiff provided "conclusory statements" without "additional factual support" to establish "the knowledge element of indirect trade secret misappropriation"). Instead, Apple appears to rely on its previous inducement allegations—addressed at length above—to support the assumption Dr. Zeng believed there to be trade-secret information in Dr. Shi's possession. But, again, no such ***facts*** have been alleged. On the contrary, based on the facts alleged in the SAC, Dr. Zeng would have no reason to know that, as Apple alleges, certain slides in the August 1 presentation "appear to have been copied from the misappropriated Apple trade secrets that Dr. Shi took from Apple." ¶97.

With regard to indirect misappropriation, courts scrutinize complaints to determine whether they "plead[] facts to substantiate the defendant's knowledge." *Navigation Holdings, LLC*, 445 F. Supp. 3d at 79. In *Genentech, Inc. v. JHL Biotech, Inc.*, for example, the court was satisfied that the defendant had sufficient knowledge when it received a report "clearly labeled" with the plaintiff's name and "clearly marked 'Confidential' and 'Internal Only.'" 2019 WL 1045911, at *12 (N.D. Cal. Mar. 5, 2019). No such allegations exist here. On the contrary, as in *Navigation Holdings, LLC*, Apple here "makes[] a conclusory assertion that Defendants had reason to know that the confidential information and trade secrets were acquired under circumstances giving rise to the duty to maintain their secrecy." 445 F. Supp. 3d at 79 (internal quotation marks omitted). As in *Navigation Holdings, LLC*, because Apple's allegations as to Dr. Zeng's knowledge of the protected status of certain portions of the presentation is "devoid of any factual substantiation of Defendants' knowledge," the allegations cannot sustain a claim of indirect trade secret misappropriation.

Lastly, Apple includes for the first time in the SAC an allegation that "Dr. Shi revealed to Dr. Zeng that Apple would be launching headphones with heart rate PPG sensors in September 2025." ¶100. Unlike the claimed trade secrets in the two presentations, Apple does not allege that this headphone-related information corresponds in any way to the supposed trade secret information identified at paragraphs 85 through 90. *Compare* ¶97 (discussing August 1 presentation and identifying by name four documents alleged (inadequately) to contain trade secret information and identified at ¶89), *with* ¶100 (discussing PPG headphones without reference to any previously alleged trade secret information). Indeed, the SAC does not allege that the anticipated release of PPG headphones was confidential in any way. And this is no surprise—anticipated releases of new Apple products are widely discussed in the industry in the weeks and months leading up to the launch. *See, e.g.*, Joe Rossignol, *Apple to Launch These 20+ Products This Year*, MacRumors (Jan. 25, 2026), https://www.macrumors.com/2026/01/25/rumored-apple-products/. There is simply no factual allegation that the information addressed in ¶100 is, in fact, entitled to protection as a trade secret.

Apple's allegations against Dr. Zeng—introduced at the 11th hour and premised on aggressive misrepresentations of the record—must be dismissed. Innuendo and conclusory

allegations, no matter how many times they are repeated, cannot sustain Apple's claim against Dr. Zeng.

### C. The SAC Should Be Dismissed With Prejudice

This Court has discretion to deny leave to amend. *See, e.g.*, *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). Its discretion is "particularly broad where plaintiff has previously amended the complaint." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). And "[d]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Salameh*, 726 F.3d at 1133 (internal quotations and citations omitted). Where the plaintiff has already had an opportunity to amend ***and*** to conduct even "minimal discovery," dismissal with prejudice is warranted. *See Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1009 (9th Cir. 2017) (affirming dismissal with prejudice).

The SAC reflects Apple's third attempt to state a claim. Even with the benefit of not just "minimal discovery" (*see id.*) but ***extensive*** expedited discovery from Defendants in connection with Apple's motion for preliminary injunction, Apple is unable to state a claim of misappropriation. Accordingly, the Court should deny any request by Apple for leave to amend and dismiss the SAC with prejudice.

## V. CONCLUSION

Despite Defendants' motions to dismiss pointing out in detail the deficiencies in Apple's trade secret identification in its original Complaint and First Amended Complaint, Apple did not make any changes to its trade secret identification in Apple's SAC. The SAC still fails to identify a single alleged trade secret with particularity and, therefore, fails to state a claim for trade secret misappropriation against OPPO or Dr. Zeng. Similarly, because Apple fails to allege facts sufficient to support its misappropriation claim against Dr. Zeng, that claim must be dismissed on such grounds as well. Under the circumstances, OPPO and Dr. Zeng respectfully request that the Court dismiss Apple's SAC against them with prejudice.

Dated: January 30, 2026

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: */s/ David Eiseman*

David Eiseman
Ryan Landes
Patrick T. Schmidt
Victoria B. Parker

Yixuan Zhu (*admitted pro hac vice*)
*yixuanzhu@quinnemanuel.com*
Central Park Plaza, 13th Floor
10 Chaoyang Park South Road
Beijing 100026, China
Telephone: +86 10 53350105

**STEPTOE LLP**
Robyn C. Crowther
Boyd T. Cloern
Grace Wang
Sara A. Morse

Paul J. Stancil (*admitted pro hac vice*)
*pstancil@steptoe.com*
717 Texas Avenue, Suite 2800
Houston, TX 77002
Telephone: (713) 221-2300
Facsimile: (713) 221-2320

*Counsel for* GUANGDONG OPPO MOBILE TELECOMMUNICATIONS CORP., LTD. AND ZIJING ZENG

**KEKER, VAN NEST AND PETERS LLP**
*/s/ Andrew F. Dawson*
Andrew F. Dawson (SBN 264421)
*adawson@keker.com*
Cody Gray (SBN 310525)
*cgray@keker.com*
JiLon Li (SBN 348025)
*jli@keker.com*
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

*Counsel for* ZIJING ZENG