UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Virginia K. DeMarchi, Magistrate Judge

APPLE, INC., )
)
   Plaintiff, )
)
vs. ) Case No. C 25-07105-EKL
)
SHI, et al., )
)
   Defendants. )
_____)

          San Jose, California
          Tuesday, March 17, 2026

TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
   RECORDING 10:07 - 10:39 = 32 MINUTES

APPEARANCES:

For Plaintiff:
        Kirkland & Ellis, LLP
        2049 Century Park East
        Suite 37th Floor
        Los Angeles, California 90057
     BY: MARIA M. BELTRAN, ESQ.
     BY: SARA A. STOHL, ESQ.

        Kirkland & Ellis, LLP
        555 California Street
        San Francisco, California
         94104
     BY: GINA CAMPINELLI, ESQ.

    (APPEARANCES CONTINUED ON NEXT PAGE)

*Echo Reporting, Inc.*

2

For Plaintiff:
                        Kirkland & Ellis, LLP
                        601 Lexington Avenue
                        707 Wilshire Boulevard
                        Suite 6000
                        Los Angeles, California 90017
                   BY:  LESLIE M. SCHMIDT, ESQ.

For Defendants:
                        Steptoe & Johnson, LLP
                        633 West Fifth Street
                        Suite 1900
                        Los Angeles, California 90017
                   BY:  ROBYN C. CROWTHER, ESQ.

                        Katz Ruby & Carle
                        3420 Bristol Street
                        Suite 600
                        Costa Mesa, California 92626
                   BY:  VICTOR H. YU, ESQ.

Transcribed by:         Echo Reporting, Inc.
                        Contracted Court Reporter/
                        Transcriber
                        echoreporting@yahoo.com

3

Tuesday, March 17, 2026                                    10:07 a.m.

P-R-O-C-E-E-D-I-N-G-S

--oOo--

THE CLERK:  Calling Case 25-CV-07105-EKL, Apple, Inc. versus Shi, et al.

Counsel, if you can please state your appearances for the record, beginning with the Plaintiff.

MS. STOHL:  Good morning.  My name is Adina Stohl on behalf of Plaintiff Apple.  Along with me are my colleagues, Leslie Schmidt, Maria Beltran, and Gina Campinelli.

THE COURT:  Okay.  Good morning.

MS. STOHL:  And along with us as well from Apple is Meredith Angueira.

THE COURT:  Okay.  Thank you.  Good morning.  And you may remain seated at counsel to address the Court.  Make sure you have the microphone pulled in front of you so that we can make a good audio recording.

MS. STOHL:  Thank you, your Honor.

THE COURT:  And for the Defendants?

MS. CROWTHER:  Yes.  Good morning, your Honor.  Robyn Crowther of Steptoe, LLP for Defendant Oppo.

THE COURT:  Okay.  Good morning.

MR. YU:  Good morning, your Honor.  Victor Yu of Katz Ruby and Carle, for Defendant InnoPeak Technology.

4

THE COURT:  Okay.  Thank you.  Good morning.

So, we are here on a discovery dispute.  It's the one filed at Docket 350 regarding the terms of a protective order.  Let me begin by asking whether there are any updates in light of the status conference I believe that you had before Judge Lee.  I saw that she did not permit in-house counsel to attend the preliminary injunction hearing, but is there any other guidance that bears on this dispute?  I'm not sure which party would like to address that issue.

MS. CROWTHER:  I think I will, your Honor.

THE COURT:  Okay.

MS. CROWTHER:  In light of Judge Lee's ruling, the Defendants have withdrawn their request for in-house counsel and mock jurors to generally have access to HC AEO and HC source code information and, instead, will make specific requests on documents to the extent that that is -- that comes up.

THE COURT:  Okay.  So, then from the Defendants' perspective, the only matter to address today is the prosecution bar at section nine?

MS. CROWTHER:  That's correct, your Honor.

THE COURT:  Okay.  Do the -- does the Plaintiff agree with that as well?

MS. STOHL:  Yes, your Honor.

THE COURT:  Okay.  Then this should be a really

5

short hearing I hope.

So, let me turn to the prosecution bar that's at section nine.  I'll begin with Apple and Apple's proposal.  So, the proposed text defining the scope of the bar from Apple is pretty broad.  I have it as the prosecution of patents and patent applications relating to the functionality, operation and design of devices that utilize or integrate with health sensing technologies or the underlying health sensing technologies, including optical temperature and ECG sensor technologies generally or as described in the trade secret documents at issue.

There's a couple issues I see with that.  First of all, it's breadth in terms of utilize or integrate with.  That's pretty broad.  Including, so not just the three specific technologies but including those, and then generally or as described in.  I think the last clause is particularly tricky because it's important that the scope of the bar be clear so we don't have a lot of disputes about that.  And generally or as described in, does the person who's subject to the bar potentially have to go and look at every single document to know what is described in the trade secret documents at issue?  It's not very clearly defined.

So, those were my concerns when I saw Apple's proposal.  And, of course, many of those issues are raised in the Defendants' portion of the discovery dispute letter.  So,

6

I'm not sure I need a slide presentation for this, but I would like someone to address that scope issue and the ambiguity -- potential ambiguity issue.

MS. STOHL:  Yes, your Honor.  And I apologize.  I actually don't know how to take it down.

THE COURT:  It's okay.  You can leave it up.  I have paper.  You can refer me to pages if you need to, but go ahead.

MS. STOHL:  Yes.  I think at least on the one that gave your Honor the most pause, we have spoken with Defendants last night and actually have agreed -- first of all, the way we delineated it was into five different sort of sections, and we agreed on the fifth section to go with Defendants' proposal there.  So, that would be as generally related to or described in the documents at issue that Apple has designated highly confidential attorneys' eyes only or highly confidential source code.

THE COURT:  Okay.  So, maybe you should -- if there's something that's not in the papers that you have agreed on since submitting them, maybe you should point me to the page that you have in mind.

MS. STOHL:  Yes, your Honor.  So, if -- just to make --

THE COURT:  Just tell me what slide.

MS. STOHL:  -- sort of Slide 11, the one that's

above you where --

THE COURT:  Slide 11, okay.

MS. STOHL:  Yeah.  So, if you -- if you look at that very bottom row there, there we have Apple's proposal and the corporate Defendants' proposal.  We have agreed there to go with the corporate Defendants' proposal.

THE COURT:  Okay.  So, I am not inclined to like disagree with something the parties have agreed on, but I still wonder how does this get enforced.  Like, how does somebody know what this is without actually looking at every single document?

MS. STOHL:  Yeah.  And, so, that's sort of part of the -- the idea behind the prosecution bar is that unlike in a preliminary injunction or something like that, you're not trying to actually very narrowly tailor it to the documents themselves.  What you're trying to ensure is that there's no inadvertent disclosure or inadvertent use.

And, so, this language is -- we -- we took it from -- as well as the Defendants, have taken it from, you know, commonly used patent prosecution bars within the Northern District of California.  And I think that that sort of relates back to the other elements of the prosecution bar which, with your Honor's permission, I think if we go through those, it will make it a bit more clear.

THE COURT:  Okay.  I mean, I'm reacting to the

8

phrase "or described in the document", meaning it suggests that somebody has to actually go look at what's in the documents, and that seems to me to be just problematic. But if you all agree, you can have that. It's just I -- I don't want to have any fights about that later on in discovery or -- or later on, you know, post-discovery when you find out somebody's prosecuted something that fits in that bucket.

Okay. So, let me hear your argument as to the other aspects of the definition that you think are in dispute.

MS. STOHL: Okay. So, the -- the first one is this language of relating to versus claiming. The Northern District of California model at section eight actually uses the word "relating to". And, again, the idea there is that the purpose of a prosecution bar is to prevent against the inadvertent disclosure. It's not concerned with specifically the problem of someone taking or misusing confidential information. That's obviously separately covered in the protective order.

On this one and with Defendants' permission, we've sort of been able to narrow a little bit before this hearing. I think that's related to the next element, which is the language of devices that utilize or integrate with health sensing technologies.

And here too, the majority of Apple's trade secret documents are discussing these devices. They're discussing

how these devices can function in order to allow these other types of sensing modalities.

So, for example, you know, right here what you -- what we put in the papers and you can see -- I'll forward it so you see it on slide 13, are directly from the trade secret disclosures.  They include trade secrets related to touch. They include trade secrets related to the actual silicon chip necessary in order to allow the various sensing modalities to be possible.

THE COURT:  And the sensing modalities are the categorical things that you -- the three categories, optical, temperature and ECG?

MS. STOHL:  Those are the primary three.  We contend that there are additional sensing modalities as I will, you know, cover.  But those are the -- the primary three that relate to health sensing that are being disclosed in these trade secret documents that were taken from Apple and, therefore, will be -- those who have access to having confidential Apple materials will be exposed to them.

I'm happy to provide some exemplary Bates numbers for your Honor if --

THE COURT:  So, one thing I was wondering, just to kind of short circuit this because I -- I appreciate the goal is to make it clear what the scope is.  Everybody has that goal.  I have that goal.

What if you just had this language?  And it will be language I'll also raise with the Defendants.  So, the phrase would be "Prosecution of patents or patent applications relating to the functionality, operation, design of".  That's all standard in the model.  Here's the -- here's the actual additional text, "optical, temperature and/or ECG sensor technologies for use in health sensing products or services."

"Why is that not broad enough to cover the category of patent prosecution that would most concern Apple if someone was engaged in doing that?  Because it's very confusing to have these sort of layers, devices that utilize or integrate with technologies or the technologies themselves, including but not limited to these three categories.  It's like layer upon layer and open ended, ill defined, including but not limited to.

So, again, based on my understanding of what's at issue and the domain that's at issue, it seems like that would be pretty straightforward.  Again, I'll say it again, optical, temperature and/or ECG sensor technologies for use in health sensing products or services.

Why -- and I'll give you a moment to ponder, but why would that not be sufficient?

MS. STOHL:  So, to respond to that, for example, there's 52 trade secret documents that were produced by

Apple and are subject to the highly confidential designation that discuss sort of these other elements that the use of it or the reason why it was -- exists in this context is so that it can integrate with health sensing.

They're not limited to that.  So, as one example, there's technology discussed that, for example, Apple Shi at 10618, which is one of the documents produced, that discusses the ability of -- essentially light noise suppression, right.  And the -- one of the benefits of it is that it assists with the application and integration of the sensing technologies.  But it can be used on its own.

And, so, what happens here is because of the breadth of the materials taken, you end up with a whole -- a whole bunch that are basically excluded from these categories when that's really the focus on what Apple was doing.

THE COURT:  So -- but what's the it?  So, if it's not optical, temperature or ECG sensoring technology, if it's some other kind of technology, we can add to the list. If the problem is for use in and what you really need is for use in or integration with, then we can add that in.  But it seems like the domain is health sensing products, either using it in health sensing products or services or to be integrated with such health sensing.  So, if that's the issue, then the modification, using my text -- and I don't mean to sort of like take over your argument here, but it's

12

too confusing and too many layers as you have it right now. So, I'm trying to see if I can get it down to what -- what really is necessary because you do have to do this at a categorical level or it won't work.

So, how about for use in or integration with health sensing products or services?

(Pause.)

THE COURT:  Something like that?  Again, I'll let you tinker with it, but if the integration part is pretty important, then that can be captured.  If it's sort of otherwise stand alone not health sensing specific technologies that are integrated with, I think you can capture that.

Would that make sense?

MS. STOHL:  Yes, your Honor.  We would ask for permission to just confer with our client --

THE COURT:  Sure.

MS. STOHL:  -- and ensure that that's okay with them.

THE COURT:  Okay.  That's fine.  Is there anything else that you would like me to understand about the prosecution bar issue before I turn to Defendants and then, you know, maybe after this hearing you all can put your heads together, having heard my reaction, and come up with something that is a little more workable and sort of has the

scope that I hope we've all saw now is appropriate as a result of this hearing.  That's where I hope to get today.

MS. STOHL:  Yes, your Honor.  The only other point I'd like to make is that if it would be limited to optical, temperature or ECG sensor technology, we would ask that that also be a little bit broadened because of the additional sensing technologies at issue in our trade secret documents.

If you look at, for example, slide 14, which is up right now --

THE COURT:  Um-hmm.

MS. STOHL:  -- some of the other technologies there include, you know, accelerometers, motion sensors, those types which -- which would be excluded from a limited -- a limited definition that only included optical, temperature and --

THE COURT:  I mean, one approach is to just say any health sensing technology, can't prosecute patents in that area.  That might be too broad.  But if it doesn't capture what -- you know, what is sort of reflected in the scope of the -- the trade secret -- so -- so, maybe you -- here's what I'm trying to avoid is having to go consult a document in order to figure out if you can prosecute a patent because that can't happen.  That's just impractical.  So, if you need to add more to the list, that's fine.  But the word "including" just in -- in itself sort of takes over

14

the whole field of health sensing technology.  And if that's not what you mean or if it's objectionable and I end up agreeing with that, which I don't know if I will, then, yes, you may need to add more to the list.  So --

MS. STOHL:  Understood, your Honor.

THE COURT:  Okay.  All right.  Let me turn to the Defendants.  And, Ms. Crowther, are you going to begin?

MS. CROWTHER:  I will, your Honor.

THE COURT:  Okay.  And I believe in the language that -- that you proposed, it captures our primary concern, which is to limit the prosecution to products and services.

Just practically speaking, because now we have agreed that the patent prosecution bar will be limited to documents that are designated as highly confidential and AEO and source code, it means generally speaking, our client will not be able to see them.

So, our concern here really relates to the retention of experts and consultants, and with a very broad bar, it makes it difficult for us to have someone who is qualified and willing to sign on.

THE COURT:  Okay.

MS. CROWTHER:  So, that's why the limitation is important, and where we were trying to compromise and have some broader language on the documents, we looked for narrower language.  That's why we changed relating to to

15

claiming in the first clause and also why we were narrowing the bar to, in our language, consumer products.

THE COURT:  Okay.

MS. CROWTHER:  But probably the products and services is acceptable.

THE COURT:  Okay.  So, let me -- let me reflect on that.  So, I don't mean to suggest that products and services is limited to consumer products or consumer services.

MS. CROWTHER:  Understood.

THE COURT:  So, just to be clear, I don't think that would be appropriate.  But, as to the word "claiming", that's super problematic for a couple of reasons.  First, I think that sometimes you don't know what gets claimed until the very end of the process.  Meanwhile, you've engaged in patent prosecution for months, years, whatever.  And, so, that seems like not a good -- a good hook.  And most of the patent prosecution bars that -- that I've seen don't use that language.  They use the relating to, and they -- they try to define it by subject matter, not by what ends up in a claim or not.

So, I think that's not really workable.  That's my reaction to that.  Also, it's not in the proposal.  So, there's a disconnect between Apple's -- sorry -- Defendants' portion of the letter and the Exhibit 1 I have which shows

16

the parties' respective position, and that may be just because the positions evolved.  But, if I look at section nine, page 14, it looks to me that both parties are using their relating to language here.  And -- and that's fine. If there was a modification between the draft and the letter, you know, okay, positions evolve.  But I don't think it's workable sort of bottom line.

And then let me just ask, as to the -- as generally related to or described in the documents at issue language, which the parties now tell me they all agree on, how does that impact the definition?  Like, how do you see that working?  So, what is the -- if somebody says, okay, I'm -- I'm an expert or I'm a person who for whatever reason is seeking access to these materials, these highly confidential materials in this case and I'm trying to figure out if I can be -- if I can prosecute patents, who does someone do that?

MS. CROWTHER:  It is challenging hand especially because there are a lot of documents, and they're very long, that -- that have been designated by Apple as HC AEO and source code.  So, I think the reason we were willing to compromise that way is because we can to a certain extent control what's given to the experts.  We keep a list of the documents that are given to the experts and what they review.  Perhaps as I say that out loud, it would make sense that they're limited to prosecution on the documents they

17

receive and review and not just the universe of documents that Apple produces and designates as HC AEO or source code in the case.

THE COURT:  But, in other words, you'd have to disclose the material to the expert can't prosecute or participate in, you know, in prosecution.  You can't sort of up front have a conversation with a proposed expert and say, This is the category in which you would not be able to prosecute patents.  Is that okay with you?  Yes, no, because if it's not okay, we can't sign you up.

You -- it seems like this is putting a burden on both -- well, not on both parties but on the Defendants, which may be fine.  I just -- it seems sort of odd.  So, that's why I was -- it caught my attention.  But if that's what you all have agreed to, that's fine.

Let me inquire about the expert issue.  My understanding is that there have been many experts obtained by the Defendants in this case, and are they subject currently to a bar or not?

MS. CROWTHER:  I believe so.  I believe that what we have agreed is to operate under the model order, although the model order, obviously doesn't define exactly the scope of the patent prosecution bar.  But at least on our end, we have had discussions with the experts we have retained about the general topics that would be subject to the bar, and so

18

far so good.  But there's a lot of litigation left.

But, I mean, forgive me, but you -- you've already retained many experts, have you not?

MS. CROWTHER:  We have retained three.

THE COURT:  Okay.  So, I'm not sure how many more you need, but it doesn't -- I appreciate that it can be a problem retaining experts, but I wonder whether that's a real -- actually a practical problem, and the parties probably have figured it out by now, whether it is a practical problem or not.

MS. CROWTHER:  Some of it depends on the breadth. You know, there are technologies that are in Apple's slide show that have been mentioned for the first time today in any of the litigation.  And, so, if we go forward and those are -- those become part of the claims instead of what we've seen so far, we may need a different expert who has experience in that technology.

It is a little bit challenging to do it in advance and somewhat hypothetically.  I think that identifying the technologies helps.  That's part of what we were trying to do in our proposed language.  But it's -- there's more art than science.

THE COURT:  Yeah.  So, what I have in mind is the parties should, you know, consult with your respective clients about this, but I think something that uses the

19

relating to formulation that's already part of the model order.  Of course, the functionality, operation and design of is already part of the model order.

And then in terms of the fill in the blank that comes after, the list of at a category level technologies, sensing technologies, maybe the complete list or an appropriate list, not all sensing technologies but the appropriate list that matches what's at issue in the case.  And then the proposal on the table is a formulation that is -- that captures the idea of for use in health sensing products or services or for integration with or to be integrated with, so, having that integration concept in there which Apple suggests is necessary and appropriate here.

So, let me ask specifically about that integration with formulation.  Is there any objection from the Defendants?

MS. CROWTHER:  At the moment, no.  It is something that I would want to just confer with our -- with our client about.

THE COURT:  Okay.  And Apple wishes to confer as well.  I think that that formulation, you know, with the addition of the agreed text that you have at the end as well, that might be a workable solution.  So, it's not too broad.  It's sufficiently concrete that a prospective expert can make an assessment about whether he or she practices in that space or, you know, would otherwise, you know, be

20

putting at risk some future activity if they were to sign up as an expert and get access.  I mean, I think those assessments can be made in a more concrete way if you use that kind of formulation.

So, is there anything else from the Defendants before I turn back to Apple briefly?

MS. CROWTHER:  Not form Oppo, your Honor.

THE COURT:  Okay.

MR. YU:  Not from InnoPeak.

THE COURT:  Okay.  Thank you.

Let me go back to Apple.  Anything else to add or reflect on in terms of what I'm proposing the parties do as -- as homework?

MS. STOHL:  No, your Honor.  I think that this sounds very much workable, and we will work with Defendants.

THE COURT:  Okay.  And how long do you all think you need to sort this out if I asked for you to file a proposed -- well, we may have one other issue you -- that you -- you advertised might still be holding up a complete protective order, but how long would you need to get this prosecution bar issue resolved?  Would a week be sufficient?

MS. STOHL:  Yes, your Honor.

MS. CROWTHER:  Yes, it would.

THE COURT:  Okay.  And then --

MR. YU:  Yes, it would.

21

THE COURT: Okay. Excellent. All right. So, one week. And now I know I have pending before me another dispute, an earlier dispute regarding the source code designations that have been made by Apple, and there's a footnote in the discovery dispute letter I have today that suggests that the finalization of a protective order may depend -- will depend on the Court's resolution of that issue as well.

I don't intend to have you argue that today, but I did want to find out whether anything that has happened, any developments in the case, including the -- I think you are all in the process of preparing something for Judge Lee regarding the trade secret issue, and I just wondered whether any of those further procedures or developments have any bearing on the source code designation dispute that's before me.

So, let me ask Apple.

MS. SCHMIDT: Thank you, your Honor. This is Leslie Schmidt for Apple. Your Honor, no, I -- I don't think that -- that they do this (audio glitch) on the specific (indiscernible) preliminary injunction (indiscernible), and I think from Apple's perspective, if -- if your Honor agrees that Apple -- that Apple's documents are entitled (indiscernible), I think our -- our position is that the provisions set forth in this protective order is

22

what would apply.

THE COURT:  Let me just make sure I understand what you are trying to tell me.  Can you tell -- remind me of the section number.  Is it 2 -- 2.9 is the definition?

MS. SCHMIDT:  Yes, your Honor.  I believe 2.9 on page three of Docket 350-1.

THE COURT:  Right.  The parties don't disagree on that language or do they?  And the question -- I mean, because it could be -- what I'm trying to figure out is if you all can just kind of go forth and submit a proposed protective order for -- for finalization by me, and -- and the dispute that remains would simply be whatever what Apple has designated falls within this agreed definition or not, that kind of thing.

What do you think about that?

MS. SCHMIDT:  Your Honor, from our perspective yes, because the definition is agreed, and then, your Honor, in Section 8.4 --

THE COURT:  Yes.

MS. SCHMIDT:  -- which is on page 11 that -- that sets out the procedures for the disclosure of (audio glitch) and that -- that section is -- is agreed.

THE COURT:  That section is also agreed.  So, it's really a question of whether the treatment that Apple has given to this certain set of disputed documents is

23

appropriate under these agreed definitions from Apple's perspective.

Okay.  Let me find out from the Defendants if they agree with that assessment.

MS. CROWTHER:  I do, your Honor, that what has been submitted to you is what qualifies as source code and then the restrictions -- the only reason I'm hesitating at all is because we've had some discussions about trying to resolve the issue that also involve how the material will be handled, but that is not something that we have -- that we have submitted for your Honor.

THE COURT:  I see.  Okay.  So, it sounds like once you all come to agreement on the prosecution bar, you can submit a protective order, proposed protective order for my signature without any further delay or further resolution of any other issue.

So, if I give you a deadline of one week from today to do that, that should take care of it.  Do you agree?

MS. SCHMIDT:  Yes.

MS. CROWTHER:  Yes, your Honor.

THE COURT:  Okay.  Great.

And then as to the pending dispute at Docket 179, if there is a chance that you all don't need me to do something because you will have agreed on it, it would be lovely if you could let me know sooner rather than later.  Otherwise,

24

I will get to it.  I don't want to be holding up anybody's preparation or efforts.  I don't think I am given where you are right now, but I don't intend for it to linger unduly. It's just that it's in the queue with a couple of other things.

So, but please do let me know if you think you have a resolution.  Okay?

MS. SCHMIDT:  We will, your Honor.  And if it would be helpful, we could maybe confer on that and try and (audio glitch) and update you a week from today as well.

THE COURT:  That's fine.  Does that work for the Defense?

MS. CROWTHER:  It does, your Honor.

THE COURT:  Okay.  Great.  Thank you very much. So, that would be very helpful.

All right.  Anything else for today?

MS. SCHMIDT:  Not from Apple, your Honor.

MS. CROWTHER:  Not from Oppo.

MR. YU:  Not from InnoPeak, your Honor.

THE COURT:  Okay.  Thank you all very much.  This matter is concluded.  I'll issue a short order with that deadline as one week.

ALL:  Thank you, your Honor.

(Proceedings adjourned at 10:39 a.m.)

CERTIFICATE OF TRANSCRIBER

25

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

Echo Reporting, Inc., Transcriber

Friday, March 20, 2026