UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC.,<br><br>             Plaintiff,<br><br>      v.<br><br>CHEN SHI, et al.,<br><br>             Defendants. | Case No. 25-cv-07105-EKL (VKD)<br><br>**ORDER RE DISPUTE RE PROPOSED PROTECTIVE ORDER AND RE APPLE'S MOTION TO RETAIN "SOURCE CODE" DESIGNATIONS**<br><br>Re: Dkt. Nos. 263, 350, 384 |

This order addresses two related disputes. The first dispute concerns the appropriate scope of the "Source Code" designation for purposes of a protective order governing the exchange of discovery in this action. *See* Dkt. Nos. 350, 384. The second dispute concerns Apple's application of this designation to more than 120 discovery documents or portions of documents. *See* Dkt. No. 263.[1] These disputes are suitable for resolution without oral argument. *See* Civil L.R. 7-1(b). The Court addresses each dispute separately.

---

[1] The parties have filed several motions to seal portions of their respective briefs regarding Apple's Motion to Retain "Source Code" Designations, as well as certain exhibits submitted with those papers. Dkt. Nos. 264, 311, 327, 339. Apple requests that these materials (including a slightly narrower set of redacted information in defendants' opposition brief) remain sealed, because the public disclosure of the subject information would harm Apple. Apple says that the documents in question refer to Apple's trade secret files and highly confidential information (including internal projects and code names, confidential testing and design information, and unreleased Apple features) that are not publicly known. As these sealing motions relate to a discovery matter, the good cause standard applies. *Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1098-99 (9th Cir.), *cert. denied sub nom FCA U.S. LLC v. Ctr. for Auto Safety*, 137 S. Ct. 38 (2016); *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179-80 (9th Cir. 2006). Good cause appearing, the Court grants the motions to seal. All materials provisionally filed under seal shall remain sealed.

## I.    PROTECTIVE ORDER

### A.    Scope of "Source Code" Designation

The parties agree that a protective order with three categories of confidentiality designations should be entered in this action. They disagree about what materials should qualify for designation in the third, most-protective category, which the parties refer to as "HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY–SOURCE CODE" ("Source Code"). *See* Dkt. No. 350.

The Northern District of California Model Stipulated Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets ("Model Order")[2] defines "HIGHLY CONFIDENTIAL–SOURCE CODE Information or Items" as:

> extremely sensitive "Confidential Information or Items" representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

Model Order, sec. 2.9. The Model Order affords material designated under section 2.9 heightened protections, including: (1) permitting inspection only on a secured computer in a secured room without Internet access or network access to other computers; (2) disallowing electronic copies and restricting the availability of printed copies; and (3) requiring the receiving party to keep records of access to the material. *Id.*, sec. 9.

The parties' proposed protective order is adapted from the Model Order. Plaintiff Apple, Inc. ("Apple") urges the Court to adopt a definition for "Source Code" in section 2.9 that tracks the Model Order's definition, with one significant addition, noted below:

> extremely sensitive "Confidential Information or Items" representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of

---

[2] https://cand.uscourts.gov/sites/default/files/documents/ND_Cal_Patent_Highly_Sensitive_Model_Prot_Ord_Revised.pdf

United States District Court
Northern District of California

software or hardware designs, or roadmaps for unreleased products or features, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

Dkt. No. 384-1 (sec. 2.9) (emphasis added). Apple argues that its product roadmaps "reveal Apple's most strategic priorities, including unreleased technologies, future product plans, and methods for overcoming technical or competitive barriers." Dkt. No. 263 at 5. It argues that because roadmap-related documents contain specific and extremely sensitive technical information, improper or inadvertent disclosure of these documents, like the improper or inadvertent disclosure of "computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs," would cause Apple irreparable harm, "as it would provide insight into Apple's product plans for years into the future." *Id*. at 8.

Defendants Guangdong Oppo Mobile Telecommunications Corp., Ltd. ("OPPO") and InnoPeak Technology, Inc. ("InnoPeak") (collectively, "Defendants") argue that the Court should adopt the Model Order's definition, which does not include "roadmaps for unreleased products or features." Dkt. No. 384-1 (sec. 2.9) (Defendants' proposal). According to Defendants, documents within the scope of the Model Order's Source Code definition receive the extra protection associated with that designation because source code and associated materials are particularly vulnerable to exploitation if copied because they are "portable and executable." Dkt. No. 384 at 4; Dkt. No. 310 at 2. Specifically, Defendants argue that the "essential characteristic that justifies Source Code handling" is "the ability to copy to an electronic file and use it to replicate functional technology." Dkt. No. 310 at 2.

In this District, the few decisions addressing the scope of section 2.9 of the Model Order recognize that it encompasses not only source code and associated comments and revision histories, but also "formulas, engineering specifications, [and] schematics" that "define or otherwise describe in detail the algorithms or structure of software or hardware designs," disclosure of which to others would create a substantial risk serious harm that could not be avoided by protections less restrictive than the heightened protections afforded by the Model

3

United States District Court
Northern District of California

Order for this category of material. *See, e.g., Andersen v. Stability AI Ltd.,* No. 23-cv-00201-WHO (LJC), 2025 WL 870358, at *9 (N.D. Cal. Mar. 19, 2025); *Lone Star Silicon Innovations LLC v. Toshiba Corp.*, No. 17-cv-4034-WHA, Dkt. No. 215 (N.D. Cal. Dec. 20, 2017). As explained in *Lone Star*, section 2.9 does not cover all formulas, engineering specification, or schematics, but only those that "require protection on par with true source code" *because* they define or describe in detail the algorithms or structure of software or hardware designs for which heightened protections are needed. *Lone Star*, No. 17-cv-4034-WHA, Dkt. No. 215 at 4. However, the protections of section 2.9 of the Model Order are not limited to technical information that is both "portable and executable," as Defendants argue. The Court agrees with *Lone Star*'s construction of section 2.9.

Generally, the Model Order provisions are regarded as "presumptively reasonable." *See Barnes & Noble, Inc. v. LSI Corp*., No. 11-cv-02709 EMC (LB), 2012 WL 601806, at *1 (N.D. Cal. Feb. 23, 2012). To the extent Apple argues that "roadmaps for unreleased products or features" that do *not* "define or otherwise describe in detail the algorithms or structure of software or hardware designs" should nevertheless receive the heightened protections afforded documents "on par with true source code," this argument is not persuasive. As Defendants observe, many product or feature roadmaps are higher-level business strategy documents that serve as a guide for product and technology development, prioritization, and planning, but do not reveal the details of the products or technology. While such documents may well contain extremely sensitive confidential information, Apple has not shown that these documents cannot be protected from the risk of inadvertent disclosure by invoking, for example, the Model Order protections for "HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY Information or Items" ("HC-AEO"). *See* Model Order, secs. 2.8, 7.3, 7.4. Conversely, a product or feature roadmap may contain information that defines or otherwise describes in detail the algorithms or structure of software or hardware designs. *See* Dkt. No. 264-6 ¶ 10. If that is the case, the roadmap document (or portion thereof) containing that kind of information may properly be designated as Source Code and afforded the same heightened protection.

Accordingly, unless the parties agree otherwise, the Court resolves their dispute regarding

section 2.9 of the proposed protective order by adopting the following Source Code" definition:

> extremely sensitive "Confidential Information or Items"
> representing computer code and associated comments and revision
> histories, formulas, engineering specifications, ~~or~~ schematics, <u>or</u>
> <u>roadmaps for unreleased products or features</u> that define or
> otherwise describe in detail the algorithms or structure of software
> or hardware designs, disclosure of which to another Party or Non-
> Party would create a substantial risk of serious harm that could not
> be avoided by less restrictive means.[3]

The Court's resolution of this dispute regarding proposed section 2.9 does not preclude any party from seeking additional or different protections on a document-specific basis for good cause shown.

### B.    Protections for "Source Code"

Apple argues that the Model Order's protections for "Source Code" should be adopted in section 8.4 of the parties' proposed protective order.  Dkt. No. 384 at 3; *see* Dkt. No. 350-1 (sec. 8.4).  Defendants suggest that the parties should confer further regarding the applicable protections once the Court resolves Apple's motion to retain its existing Source Code designations.  Dkt. No. 384 at 3.

The Court is inclined to adopt Apple's proposed text for section 8.4, which generally tracks the Model Order provisions for protection of such material but defers doing so at this time. If Defendants wish to propose any modifications to Apple's proposed text in view of this order, Defendants must send their proposal to Apple no later than **May 22, 2026**.  The parties shall confer regarding any such proposal, after which they must submit a final proposed protective order, including their agreed or competing proposals for section 8.4, for approval by the Court no later than **June 1, 2026.**

## II.    APPLE'S DISPUTED SOURCE CODE DESIGNATIONS

### A.    Summary of Dispute

Apple advises that, at present, it has designated 13 documents in their entirety and portions of an additional 116 documents as Source Code under section 2.9 of the parties' proposed

---

[3] Strike through and underlining show changes to the Model Order text.

United States District Court
Northern District of California

protective order.  Dkt. No. 263 at 2.  Defendants object that Apple has designated material that does not qualify for protection as Source Code.  Dkt. No. 310 at 1.  At the Court's direction (Dkt. No. 179), the parties have submitted eight documents for *in camera* review:

1.  Ex. 3 (APL-SHI_00000893) / Ex. 4 (APL-SHI_00007945) (redacted)

2.  Ex. 5 (APL-SHI_00001071) / Ex. 6 (APL-SHI_00008043) (redacted)

3.  Ex. 7 (APL-SHI_00001073) / Ex. 8 (APL-SHI_00008087) (redacted)

4.  Ex. 9 (APL-SHI_00000748) / Ex. 10 (APL-SHI_00006987) (redacted)

5.  Ex. 11 (APL-SHI_00000754) / Ex. 12 (APL-SHI_00006690) (redacted)

6.  Ex. 13 (APL-SHI_00001123)

7.  Ex. 14 (APL-SHI_00001434) / Ex. 15 (APL-SHI_00010516) (redacted)

8.  Ex. 16 (APL-SHI_00006441) / Ex. 17 (APL-SHI_00012821) (redacted)

Dkt. No. 263 at 3-4.  Apple argues that the documents and portions of documents that it has designated as Source Code should retain that designation.  *Id.* at 1.  Defendants argue that all eight documents should be designated HC-AEO, with the exception of pages 37, 39 and 40 of Exhibit 16.  Dkt. No. 310 at 1.  For purposes of its review, the Court applies the definition of Source Code adopted above in section I.A of this order.

**B.    Review of Disputed *In Camera* Documents**

The parties group the eight documents for review into three categories, and the Court follows this organization.  In conducting its review and assessment, the Court has carefully considered the parties' respective arguments, the declaration of Brian Land (Dkt. Nos. 264-5 and 339-5), and the documents submitted *in camera*.

**1.    Schematics, engineering specifications, specific components requirements**

Apple argues that the designated portions of Exhibits 11, 13, and 16 contain "annotated system schematics, engineering specifications, and specific requirements for components," and that these materials fall within the scope of section 2.9 of the Model Order.  Dkt. No. 263 at 5-6.  Defendants argue that while these documents present "closer calls" than the other disputed documents, Exhibits 11, 13, 1and 16 generally include only "high-level" technical information that

does not meet the Source Code definition.  Dkt. No. 310 at 7.

### a.   Exhibit 11

Exhibit 11 is a presentation relating to wearable ECG technology.  Two pages of this presentation contain system-level schematics (pp. 5, 25).  While the Court questions whether these schematics reveal the level of detail contemplated by the Source Code definition, the Court accepts Mr. Land's declaration testimony regarding these schematics, including his assertion that they could be used to replicate the functional components of systems depicted.

The remainder of the designated portions of Exhibit 11 do not meet the Source Code definition because they do not define or otherwise describe in detail the algorithms or structure of software or hardware design.  Instead, these pages contain performance specifications, including testing parameters, values, and metrics (pp. 6, 35); voltage requirements for electrical components, with illustrations and examples (pp. 29-33); and device or component dimensions (p. 36).

### b.   Exhibit 13

Exhibit 13 is an "engineering requirements specification" for an optical PPG sensor in the Apple watch.  It is addressed to system integration engineers, test engineers, and firmware and software engineers, and provides a comprehensive description of the design and testing requirements for hardware and related software for the sensor.  As Defendants acknowledge, this document "contains detailed specifications."  Dkt. No. 310 at 8.  While some discrete aspects or portions of this document may not merit Source Code protection in isolation, Apple has demonstrated that the document as a whole meets the applicable Source Code definition, as the document describes in technical detail the structure of software and hardware designs.

### c.   Exhibit 16

Exhibit 16 is a presentation relating to a noise sensitivity analysis for a particular feature. Defendants agree that pages 37, 39 and 40 of Exhibit 16 may properly be designated as Source Code, and the Court grants Apple's motion as to these pages.

Several designated pages of this document contain formulas that Apple claims are "important to calculating relevant assumptions related to noise sensitivity."  Dkt. No. 263 at 7. However, these formulas appear to concern performance analysis and testing, and it is not at all

clear that any of them define or describe in detail engineering specifications for software or hardware design. Giving Apple the benefit of the doubt here, the Court concludes that Apple may designate the formulas that appear on pages 48, 49, 51, 57, 59, 61, 63 and 64 as Source Code.

The remainder of the designated pages of Exhibit 16 do not meet the Source Code definition because they do not define or otherwise describe in detail the algorithms or structure of software or hardware design. Instead, most of the remaining pages contain noise sensitivity analyses; descriptions of testing conditions, dependencies and constraints; error contributions; performance targets; and testing methodologies (pp. 47-49, 50, 51, 57, 59, 61, 63-64).[4] Indeed, Apple acknowledges that the information contained in Exhibit 16 is sensitive because it reveals important information about noise sensitivity and how it impacts performance. *See* Dkt. No. 263 at 7 (citing Dkt. No. 264-6 ¶¶ 34-35).

### 2. Chipset schematics, design notes, and feature definitions

Apple argues that the designated portions of Exhibits 5 and 7 contain "highly sensitive schematics defining in detail the structure of the designing [sic] specifications [] and specific engineering requirements for components," and that these materials fall within the scope of section 2.9 of the Model Order. Dkt. No. 263 at 7. Defendants argue that the majority of Exhibits 5 and 7 include "non-technical feature nomenclature and descriptions" and "business planning" information that does not qualify for Source Code protection. Dkt. No. 310 at 5-7.

#### a. Exhibit 5

Exhibit 5 is an "architecture update" presentation for an unreleased product. Apple claims the designated portions of this document include "chipset schematics" and "system integration diagrams describing in detail the design and component optical architecture" of the product. Dkt. No. 263 at 7. In addition, Apple explains that its designations extend to "specific assumptions" and "engineering specifications," as well as "future opportunities." *Id.*

The only designated portions of Exhibit 5 that meet the applicable Source Code definition are pages 4, which contains a "chipset and system integration diagram," and 31-34, which contain

---

[4] Page 50 is not addressed in Mr. Land's declarations.

component schematics.  While the Court questions whether these schematics and diagrams reveal the level of detail contemplated by the Source Code definition, the Court accepts Mr. Land's declaration testimony that they are sufficiently detailed to describe the design of the system architecture and components depicted.

The remainder of the designated pages of Exhibit 5 include meeting agendas (pp. 2, 26); feature summaries (pp. 3, 5-6); implementation options for the product (pp. 7, 27); battery life and power consumption considerations (pp. 8, 13-21, 28-29); high-level overview of the product architecture, including a comparison with an earlier generation product (pp. 10-12, 24); proposed next steps and a product roadmap (pp. 22, 25); and a summary of system integration considerations (p. 35).  This material does not meet the Source Code definition because it does not define or otherwise describe in detail the algorithms or structure of software or hardware design.

### b.      Exhibit 7

Exhibit 7 is a "feature definition" presentation for an unreleased product.  Apple claims the designated portions of this document include "schematics of chipsets," as well as development timelines and roadmap, strategy, and planning information for next generation product features. Dkt. No. 263 at 7-8.

The Court has reviewed all designated portions of Exhibit 7 and has identified no chipset schematics.  Rather, as Apple acknowledges, the designated portions of Exhibit 7 contain: feature definition, product strategy, cost analysis, user requirements, development timelines, and product roadmap information.  This material does not meet the Source Code definition because it does not define or otherwise describe in detail the algorithms or structure of software or hardware design.

### 3.      Product and feature roadmaps

Apple acknowledges that product and feature roadmaps do not fall within the scope of section 2.9 of the Model Order.  *See*, *e.g.*, Dkt. No. 263 at 1, 2.  Likewise, these roadmap documents generally do not meet the applicable Source Code definition in the parties' proposed protective order.

### a.    Exhibit 3

Exhibit 3 is a roadmap for certain Apple watch systems.  The designated portions of the document include typical roadmap subject matter, such as feature and product planning, timelines, anticipated changes, and historical overviews.  No portion of this document is properly designated Source Code.

### b.    Exhibit 9

Exhibit 9 is a presentation for an "all hands" meeting regarding health sensing hardware. The designated portions of the document include typical roadmap subject matter, such as feature and product planning, timelines, anticipated changes, and historical overviews.  The document also includes high-level discussion of product architecture, key technologies, and implementation considerations, as well as functional diagrams for hardware components and systems.  No portion of this document is properly designated Source Code.

### c.    Exhibit 14

Exhibit 14 is an introductory presentation about health sensing hardware.  The designated portions of the document contain the following information: functional diagrams and high-level descriptions of features; discussion of design issues; topology diagram; feature overview; historical overview; feature planning; sensor platform roadmap; feature roadmap; high-level architecture diagram; design challenges; study; and feature definitions.  In addition, the designated portions include a detailed discussion of the results of a noise sensitivity analysis (pp. 7-12, 14-20, 24).  With one exception, none of this material is properly designated Source Code.

The one exception is a schematic on page 37 that shows a chipset "block diagram" and "system connectivity."  While it is not clear whether this schematic reveals the level of detail contemplated by the Source Code definition, it is similar to other schematics the Court has found do meet that definition, and the Court concludes that this page likewise may be designated Source Code.

## III.    CONCLUSION

As to the parties proposed protective order, the Court adopts the definition of Source Code set out above (section 2.9) and defers decision on section 8.4.  If Defendants wish to propose any

modifications to Apple's proposed section 8.4, they must send their proposal to Apple no later than **May 22, 2026**.  The parties must submit a final proposed protective order, including their agreed or competing proposals for section 8.4, for approval by the Court no later than **June 1, 2026**.

As to Apple's motion to retain Source Code designations, Apple's motion is granted as to the following documents or portions thereof:

1. Exhibit 5 (pages 4 and 31-34)
2. Exhibit 11 (pages 5 and 25)
3. Exhibit 13 (all pages)
4. Exhibit 14 (page 37)
5. Exhibit 16 (pages 37, 39, and 40, and formulas on pages 48, 49, 51, 57, 59, 61, 63 and 64)

Apple's motion is otherwise denied.  Unless the parties agree otherwise, Apple must re-designate all other portions of the eight documents submitted for *in camera* review.

**IT IS SO ORDERED.**

Dated: May 18, 2026

Virginia K. DeMarchi
United States Magistrate Judge

United States District Court
Northern District of California