Adam R. Alper (SBN: 196834)
adam.alper@kirkland.com
Laura Vartain Horn (SBN: 258485)
laura.vartain@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone:    (415) 439-1400

Michael W. De Vries (SBN: 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
695 Town Center Drive
Costa Mesa, CA 92626
Telephone:    (714) 982-8822

Leslie M. Schmidt (admitted *pro hac vice*)
leslie.schmidt@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022-4611
Telephone:    (212) 446-4800

Maria M. Beltran (SBN: 327237)
maria.beltran@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone:    (310) 552-4200

*Attorneys for Plaintiff Apple Inc.*

*[Additional counsel in signature page]*

Annabel Hayoung Chang (SBN: 267261)
annabel@ahc-law.com
LAW OFFICES OF ANNABEL H. CHANG APC
39116 Fremont Hub #1121
Fremont, CA 94536
Telephone:    (510) 404-8186

*Attorney for Defendant Chen Shi*

Robyn Carrico Crowther (SBN: 193840)
rcrowther@steptoe.com
STEPTOE LLP
633 West Fifth Street, Suite 1900
Los Angeles, CA 90017
Telephone:    (213) 439-9428

*Attorneys for Defendant Guangdong Oppo Mobile Telecommunications Corp., Ltd.*

Nathaniel M. Carle (SBN: 304846)
ncarle@katzruby.com
Victor H. Yu (SBN: 325411)
vyu@katzruby.com
KATZ RUBY & CARLE LLP
3420 Bristol St Ste 600
Costa Mesa, CA 92626
Telephone:    (510) 386-4919

*Attorneys for Defendant InnoPeak Technology, Inc.*

*[Additional counsel in signature page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., | CASE NO. 5:25-CV-07105-EKL |
| Plaintiff, | **JOINT CASE MANAGEMENT STATEMENT** |
| v. | |
| CHEN SHI, GUANGDONG OPPO MOBILE TELECOMMUNICATIONS CORP., LTD., INNOPEAK TECHNOLOGY, INC., and ZIJING ZENG, | Judge: Honorable Eumi K. Lee
Complaint Filed: August 21, 2025
Proposed Case Management Conference: July 15, 2026 |
| Defendants. | |

Pursuant to Civil Local Rule 16-9, the Standing Order for All Judges of the Northern District of California – Contents of Joint Case Management Statement, and Standing Order for Civil Cases Before Judge Eumi K. Lee, Plaintiff Apple Inc. ("Apple"), Defendant Chen Shi, Defendant Guangdong Oppo Mobile Telecommunications Corp., Ltd., Defendant InnoPeak Technology, Inc., and Defendant Zijing Zeng (collectively, "the Parties") respectfully submit this Joint Case Management Statement.  The Parties certify that their respective lead trial counsel have met and conferred for the preparation of this statement as required by Civil Local Rule 16-3:

## I.     JURISDICTION AND SERVICE

The Parties agree that jurisdiction and venue are proper.  This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  Venue is proper pursuant to 28 U.S.C. § 1391(b).  Defendants do not contest service.

## II.    FACTS

### A.     Apple's Statement

Apple is a global technology company recognized for its innovative consumer electronics products.  Since its founding in 1976, Apple has introduced transformative products like the Macintosh, iPhone, iPad, Apple Watch, and AirPods.  Dkt. 251 ¶ 48.  Apple's release of its first-generation Apple Watch in 2015 set a new standard for smartwatches, distinguishing itself not only with its robust health and fitness tracking features but also with its sleek, customizable design and its seamless integration across the Apple ecosystem.  *Id.* ¶ 79.  Apple's innovative health sensing technology is a key area of its cutting-edge technologies and product design.  *Id.*  Health sensing technology uses small sensors to collect, process, and transmit data related to the wearer's physiological signals, movements, and environment.  This allows monitoring of metrics such as heart rate, temperature, blood oxygen, sleep patterns, and more—creating actionable insights into health, fitness, and well-being.  *Id.*

Apple has spent billions of dollars researching new technologies and developing a wide range of consumer electronic products.  *Id.* ¶ 52.  Apple's substantial investments in research and other forms of innovation deserve protection, and Apple relies on its trade secrets, in addition to its copyrights, patents, and trademarks, to guard the ingenuity and industry of its employees.  *Id.*

Defendant Chen Shi ("Dr. Shi") worked at Apple from September 2019 through his termination in late-June 2025. During his employment at Apple, Dr. Shi was entrusted with valuable trade secret information about Apple Watch, including its design and development documentation, internal specifications, and product roadmaps. *Id.* ¶ 5. Dr. Shi knew well the importance of maintaining the confidentiality of this information. Upon joining Apple, Dr. Shi executed a Confidentiality and Intellectual Property Agreement ("IPA"), (*id.* ¶ 6), and received numerous trainings throughout his tenure at Apple. Despite his legal obligations, and his ethical obligations to his fellow engineers to maintain the secrecy of their work product, Dr. Shi conspired to steal Apple's trade secrets relating to Apple Watch and to disclose them to Dr. Zeng and his new employers, OPPO and InnoPeak. *Id.* ¶ 7.

After salary discussion with OPPO, but before leaving Apple, Dr. Shi told Dr. Zeng that he planned to "collect as much information as possible" from Apple while still at Apple and to "share [Apple's information] with you all later" after starting his new job with OPPO and InnoPeak. OPPO and InnoPeak—through Dr. Zeng and others—expressly informed, encouraged, and approved Dr. Shi's plan. *Id.* ¶ 1. Dr. Shi then executed the plan. In the weeks leading up to his departure, he gathered highly sensitive information about Apple Watch, including by downloading highly sensitive documents from an internal Apple system and transferring those files to a USB one day before his departure. *Id.* ¶¶ 9, 10. Concealing his impending employment with a direct competitor, Dr. Shi also set up and attended ***dozens*** of one-on-one meetings with Apple Watch technical team members to learn about their ongoing research and development efforts, including their work on optical sensors, temperature sensors, and ECG sensors. *Id.*

Apple filed its complaint on August 21, 2025, asserting trade secrets misappropriation claims against InnoPeak and OPPO and a breach of contract claim against Dr. Shi. On August 22, 2025, Apple filed a motion for a TRO, Order to Show Cause, and requested expedited discovery ("Apple's TRO Application"). Shortly thereafter, to resolve Apple's TRO without Court intervention, OPPO, InnoPeak, and Dr. Shi entered into a stipulation with Apple, which the Court granted, to refrain from accessing or using Apple confidential information, to preserve documents, and to immediately provide the Apple documents they retained for forensic inspection. Dkt. 30. Dr. Shi and Dr. Zeng were placed on leave. *Id.*

Expedited discovery confirmed that, in the first six weeks of Dr. Shi's employment with OPPO and InnoPeak, Defendants disseminated Apple's trade secrets, including via Dr. Shi's presentation of Apple's trade secrets to hundreds of OPPO and InnoPeak engineers. *Id.* ¶ 2. Certain slides from Dr. Shi's presentation contain images copied directly from the Apple trade secret materials that were misappropriated. OPPO, InnoPeak, and Dr. Zeng not only encouraged these disclosures; they touted them, advertising Dr. Shi's presentation to their personnel as one at which they would learn about "how Apple's sensors are developed" from a "former Apple technical director" (even though Dr. Shi was not a director at Apple). *Id.* ¶ 13.

On November 3, 2025, Apple amended its complaint under Rule 15(a)(1)(B), and again pursuant to Fed. R. Civ. P. 15(a)(2) on January 5, 2026, adding Dr. Zeng as an additional defendant. On January 30, 2026, Defendants filed motions to dismiss Apple's SAC and briefing was completed on February 20, 2026.

On November 14, 2025, Apple filed a motion seeking a preliminary injunction, and the Court held a hearing on March 10, 2026. The Parties submitted a Joint Status Report pursuant to the Court's order related to the scope of relief in Apple's preliminary injunction motion on March 28, 2026. Dkt. 382.

### B. Defendants' Statements

Defendants deny that they have misappropriated any Apple trade secret and deny that they encouraged or participated in any such misappropriation. Defendants further deny that Apple has identified any protectable trade secret with the particularity the law requires. Apple's narrative rests on inference and characterization rather than evidence, and the record developed during expedited and preliminary injunction discovery refutes that narrative at every step.

#### 1. OPPO's Statement

OPPO is a global technology company with its own substantial health-sensing research. Guangdong OPPO Mobile Telecommunications Corp., Ltd. ("OPPO") was founded in 2004, employs over 40,000 people across more than 60 countries, and has ranked among the top five global smartphone vendors for years. Guan Decl. (Dkt. 333-35) ¶ 2; Efimov Decl. (Dkt. 333-49) ¶ 33. The company invests substantially in its own research and development, having filed over 110,000 patent applications. *Id.* OPPO independently developed its own wrist temperature sensing technology beginning no later than

2020 and 2021, years before Dr. Shi was associated with OPPO or InnoPeak. Peng Decl. (Dkt. 335-31) ¶¶ 41–81, 123–126; Young Decl. (Dkt. 335-35) §§ V.B, IX. OPPO's thermal models are complex, multi-dimensional models tailored to OPPO's own product architecture and materials. Peng Decl. (Dkt. 335-31) ¶¶ 100–101.

InnoPeak hired Dr. Shi as a Technical Director effective June 30, 2025, and he was employed for approximately seven weeks before Apple filed suit. Yin Decl. (Dkt. 333-39) ¶18; Preliminary Injunction Opp. (Dkt. 332-40) at 6. During that period, he had limited interactions with OPPO and its engineering teams, and focused primarily on learning about OPPO's existing research-and-development efforts. Dr. Shi did not transmit any Apple documents to OPPO or any other defendant. And while Dr. Shi provided some generalized suggestions to OPPO, none of his suggestions were incorporated into any OPPO product. Peng Decl. (Dkt. 335-31) ¶¶ 86–89, 99-102.

The contemporaneous record confirms the opposite of Apple's theory. OPPO maintains and enforces robust policies prohibiting the receipt or use of third-party confidential information and trade secrets, requires interviewer training and new-hire commitments, and had Dr. Shi complete trade secret protection training on July 9, 2025. Guan Decl. (Dkt. 333-35) ¶¶ 4–12. When OPPO learned of Apple's allegations, OPPO and InnoPeak acted immediately to preserve the status quo by revoking Dr. Shi's system access, suspending his physical access, and issuing a litigation preservation notice. Guan Decl. (Dkt. 333-35) ¶¶ 13–18; Peng Decl. (Dkt. 335-31) ¶ 129. Out of an abundance of caution, OPPO also placed Dr. Zeng on administrative leave. OPPO also entered into the stipulation that the Court granted on August 26, 2025 (Dkt. 30), without admitting to Apple's allegations or the merits of any requested relief and has complied with it since. Through expedited discovery, OPPO identified more than 400 information-technology repositories, collected and searched the relevant systems and custodial data for Dr. Shi, Dr. Zeng, and 25 additional custodians, ran the search terms Apple itself proposed, and forensically analyzed the devices in its possession. That search did not reveal any protectable Apple trade secret, confidential, or proprietary information in OPPO's possession, custody, or control. Guan Decl. (Dkt. 333-35) ¶¶ 17–27.

That exhaustive search confirms what the nature of the alleged trade secrets independently establishes: all of Apple's alleged trade secrets rest on publicly available information. Because Dr. Shi did not transmit any Apple documents to the other defendants, Apple asserts that Dr. Shi created internal

presentations discussing thermal-sensing information, the use of PPG sensors, and various engineering methodologies, which purportedly reflect Apple trade secrets. But these alleged trade secrets comprise nothing more than publicly available information. The thermal-sensing concepts were publicly disclosed before Dr. Shi's presentations, much of it in Apple's own published patents and applications and in fundamental physics. Young Decl. (Dkt. 335-35) §§ V.A, VIII. The PPG-in-earbud concepts were likewise public, and OPPO independently studied them through a teardown of commercially available competitor products three months before Dr. Shi joined. Efimov Decl. (Dkt. 333-49) ¶¶ 31, 149–174; Peng Decl. (Dkt. 335-31) ¶¶ 78–81. And the engineering methodologies that Apple claims are confidential are instead derived from generally recognized, decades-old industry frameworks. Haughey Decl. (Dkt. 335-33) ¶¶ 14–19.

The two OPPO presentations that Apple identifies in its allegations did not disclose any Apple trade secret information. Dr. Shi's July 16, 2025 wrist temperature presentation contained five slides of publicly known formulas and stock images sourced from public websites, delivered to two engineers. Peng Decl. (Dkt. 335-31) ¶¶ 90-94. The August 1, 2025 "OTalk" was an introductory, company-wide talk on OPPO's internal speaker-series platform addressing high-level, generally known sensor-development concepts. Peng Decl. (Dkt. 335-31) ¶¶ 103–109. Apple's "hundreds of engineers" characterization is further misleading: the OTalk was a general audience talk open to all employees, not a presentation to just engineers, and a person attending would not have understood it to disclose any company's proprietary information. *Id*. OPPO neither solicited, encouraged, nor approved the misappropriation of any third party's information, and it disputes Apple's characterization of the communications Apple attributes to Dr. Shi and Dr. Zeng, including the isolated phrases Apple quotes about collecting and sharing information. Those communications are presented out of context, and do not bear the meaning Apple assigns them. Zeng Decl. (Dkt. 193) ¶¶ 5-8.

For these reasons, the Court should deny Apple's motion for a preliminary injunction. Apple has not shown a likelihood of success on the merits, because the information at issue is publicly known or readily ascertainable and there is no evidence that OPPO ever received, used, or disclosed any Apple trade secret. Nor can Apple show imminent, irreparable harm, given that any information Dr. Shi is alleged to have disclosed has been quarantined and was never used in OPPO's business, and that Apple's PPG-

related information became public upon the commercial release of its AirPods with PPG sensors in September 2025. The balance of hardships and the public interest likewise weigh against an injunction that would chill OPPO's use of its own independently developed technology.

Separately, Dr. Zeng should be permitted to return to work immediately. The investigation that justified the interim measures has concluded and confirmed that Dr. Zeng has no unique knowledge of or access to any alleged Apple trade secret, and he was, at most, exposed to the same handful of slides shown to many other OPPO employees. There is no factual or legal basis to single Dr. Zeng out for restrictions more onerous than those applicable to OPPO generally, and California law and policy disfavor restraints that keep an employee from practicing his profession. *See* Dkt. 382 at pp. 12-13. The interim measures as to Dr. Zeng should therefore be lifted.

### 2.    Innopeak's Statement

InnoPeak is an American company headquartered in Palo Alto, California. While it shares a corporate parent with OPPO, InnoPeak is a separate company. It does not manufacture, market, or sell commercial products, but rather focuses exclusively on research and development. Tan Decl. (Dkt. No. 228) ¶¶ 3–4, 7. Apple's sole claim against InnoPeak—for purported violation of the DTSA—is meritless.

InnoPeak hired Dr. Shi to fill a research-and-development role. During the hiring process, InnoPeak identified Dr. Shi as a candidate based on his generalized experience and knowledge. Yin Decl. (Dkt. No. 333-39) ¶¶ 4, 9. And Dr. Shi did not provide any Apple confidential information to InnoPeak during his hiring process. Rather, he was repeatedly instructed not to use or disclose any Apple confidential information. Further, as a condition of employment, InnoPeak required him to execute a confidentiality agreement confirming that he had not taken any confidential information from Apple. *See id*. ¶¶ 15–16.

Immediately after Apple informed InnoPeak of its intention to sue, InnoPeak placed Dr. Shi on administrative leave and conducted its own review of Dr. Shi's actions. InnoPeak reviewed Dr. Shi's forensic activity and exhaustively searched communications and other materials related to Dr. Shi's work during the seven weeks that he was active at InnoPeak. Connolly Decl. (Dkt. No. 333-43) ¶¶ 54-65.  In addition, InnoPeak responded to Apple's broad-reaching discovery requests, and had numerous witnesses

testify under oath about its research projects and operations. Apple did not once seek the Court's intervention to broaden the scope of InnoPeak's investigation.

InnoPeak found no evidence that Dr. Shi disclosed any Apple trade secrets or that InnoPeak itself used, disclosed, or misappropriated any trade secrets. Indeed, no Apple documents were found on InnoPeak's systems—including any of the files that Apple claims Dr. Shi exfiltrated. *See id*. ¶ 8. And not only did Dr. Shi's presentations merely reiterate publicly known or readily ascertainable information, but also InnoPeak had no use for much of the information that Apple purportedly asserts as a trade secret. Indeed, Apple was able to point to only one InnoPeak-specific project where Dr. Shi allegedly disclosed confidential Apple product information. *See*, *e.g.*, Mar. 10, 2026 Hr'g Tr. 68:10–13. But even that project reflected information about PPG earbuds that was known before Dr. Shi joined InnoPeak and was even later disclosed by Apple. *See* Efimov Suppl. Decl. (Dkt. No. 336-36) ¶ 15.

### 3.    Dr. Zeng's Statement

Dr. Zijing Zeng is an experienced executive and engineer who has dedicated his career to the healthcare, technology, and research & development spaces. Dr. Zeng has worked for over 18 years in health sensor research and development, and his inventions have earned him over 40 personal patents. At OPPO, Dr. Zeng was an Associate Vice President and Head of OPPO Health where he built the OPPO Health Lab from scratch into an organization with more than 120 engineers that helped generate more than 100 patents and 10 papers. Dr. Zeng and his team have developed health technologies that help millions of users improve their health.

Dr. Zeng's interactions with Dr. Shi arose in the ordinary course of recruiting for a legitimate business need. In April 2025, Dr. Zeng had been looking for over a year to fill a role on the sensor team following the departure of a critical employee. Apple's allegations distort Dr. Zeng's routine recruitment communications and salary discussions with Dr. Shi. Dr. Zeng did not request, suggest, or have any awareness that Dr. Shi—as alleged by Apple—took confidential materials in the lead-up to his departure from Apple. Dr. Zeng would never condone misappropriation of any third party's confidential information. Consistent with that principle, following Dr. Shi's hire by InnoPeak, Dr. Zeng never prompted Dr. Shi to provide or present on any confidential Apple information.

Following the initiation of this litigation, Dr. Zeng was placed on administrative leave from OPPO without any ability to access OPPO's or InnoPeak's "systems or facilities." *See* Dkt. No. 30 (the "Interim Measures.")  His 20-year career was, in effect, frozen.  It has now been nearly a year since the Interim Measures were put into place.  Every day Dr. Zeng remains excluded from the OPPO Health Lab—the organization he built from the ground up—causes serious and escalating harm.  As discussed at the hearing on Apple's Motion for a Preliminary Injunction, the ongoing restrictions of the Interim Measures have jeopardized Dr. Zeng's position at OPPO, and the longer he remains sidelined, the less likely it will be that he will have a position to return to.

### 4.    Dr. Shi's Statement

Dr. Chen Shi is an engineer with substantial experience in health sensing technologies. Apple employed Dr. Shi from January 2020 until June 2025, after which he accepted employment with InnoPeak.[1] Apple subsequently filed this action asserting a single claim against Dr. Shi for alleged breach of his Intellectual Property Agreement ("IPA"), while asserting trade secret misappropriation claims against the corporate defendants and Dr. Zeng.

Dr. Shi denies that he is liable to Apple and disputes Apple's characterization of the facts and applicable law. He further disputes that Apple is entitled to the injunctive or monetary relief it seeks against him.

Since the commencement of this action, Dr. Shi has complied with the Court's orders, including the Interim Measures entered shortly after the filing of the Complaint. He participated in expedited discovery, including the forensic collection of his electronic devices and accounts, the production of documents, written discovery, and deposition discovery. Dr. Shi will continue to comply with his obligations under the Federal Rules of Civil Procedure and this Court's orders as discovery proceeds.

Dr. Shi intends to vigorously defend against Apple's claims and reserves all rights, defenses, privileges, and objections available under applicable law.

---

[1] Both Mr. Land and Dr. Shi have testified that, although Dr. Shi signed his work papers in September of 2019, Dr. Shi did not actually start working at Apple until January 2020. *See* Dkt. 331-19 (Land Decl.) at ¶ 14 ("Dr. Shi joined Apple in 2020"); Dkt. 223-7 (Shi Dep. Tr.) at 19:2-4 ("Q: When did you first start working for Apple? A: January of 2020.")

## III.     LEGAL ISSUES

This case for misappropriation under the Defend Trade Secrets Act and breach of contract has and will involve at least the following legal issues.  The Parties reserve the right to amend this identification of issues as the litigation progresses:

- Whether Apple has properly identified any cognizable trade secrets;

- Whether Apple's asserted trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of that information; and whether Apple has taken reasonable measures to protect those trade secrets from disclosure;

- Whether Defendants OPPO, InnoPeak, and/or Dr. Zeng have each misappropriated Apple's asserted trade secrets as defined in 18 U.S.C. § 1839(5), and whether the misappropriation has been willful and malicious;

- Whether Apple can establish that Dr. Shi has breached his Intellectual Property Agreement (IPA);

- Whether the IPA is enforceable to the extent Apple seeks relief inconsistent with applicable California law, including California Business and Professions Code section 16600;

- Whether Apple can establish that any alleged breach of the IPA by Dr. Shi caused it recoverable damages;

- Whether Apple is entitled to damages for misappropriation under the DTSA pursuant to 18 U.S.C. § 1836(b)(3)(B) and breach of contract;

- The amount of damages, prejudgment interest, and post-judgment interest recoverable by Apple, if any, if Defendants OPPO, InnoPeak, and/or Dr. Zeng are found to have misappropriated Apple's trade secrets and/or if Dr. Shi is found to have breached his IPA;

- Whether Apple is entitled to exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C);

- Whether Apple or any Defendant is entitled to attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D);

- Whether Apple is entitled to an injunction (preliminary and/or permanent) pursuant to 18 U.S.C. § 1836(b)(3)(A); or, in the alternative, ongoing royalties pursuant to pursuant to 18 U.S.C. § 1836(b)(3)(A)(iii); and

- Whether any other forms of relief are due to Apple or any Defendant.

- Whether the Interim Measures, which act as a de facto "restrictive covenant", should be lifted as to Dr. Zeng.

## IV.    MOTIONS

The Parties identify the following prior and pending motions before the Court, not inclusive of Discovery letter disputes:

- Apple's *Ex Parte* Motion for Temporary Restraining Order against Defendants Dr. Shi, OPPO, and InnoPeak (Dkt. 11):  Resolved by the Interim Measures Order (Dkt. 30).

- Apple's Motion for Preliminary Injunction against Defendants Dr. Shi, OPPO, and InnoPeak (Dkt. 155):  Pending after hearing on March 10, 2026.  Dkts. 359, 368, 369.

- Defendants' Motions to Dismiss Apple's Complaint (Dkts. 84, 87, 94):  Terminated by the Court as moot (Dkt. 146) due to the filing of Apple's First Amended Complaint (Dkt. 129).

- Defendants' Motions to Dismiss Apple's First Amended Complaint (Dkts. 181, 182, 183): Terminated by the Court as moot (Dkt. 247) upon Court's grant of the Parties' stipulation to allow Apple to file its Second Amended Complaint (Dkts. 246, 247, 251).

- Defendants' Motions to Dismiss Apple's Second Amended Complaint (Dkts. 312, 313, 314): Pending after taken under submission on May 19, 2026 (Dkt. 389).

The Parties are considering the following motions as potentially necessary in this case:

- Motions for Summary Judgement or Partial Summary Judgment.

- Motions to Exclude or Preclude Testimony of Experts.

- Motions *in Limine* to Exclude or Preclude Particular Evidence at Trial.

The Parties propose briefing the above-identified motions in mid- to late-2027, with a hearing thereafter at the Court's earliest convenience.

## V.   AMENDMENT OF PLEADINGS

All Parties reserve the right to move to amend their pleadings as permitted under the Federal Rules of Civil Procedure.

## VI.   EVIDENCE PRESERVATION

The Parties certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and confirm that they have met and conferred regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.  Additionally, as part of the Interim Measures ordered by the Court (Dkt. 30), Defendants Dr. Shi, OPPO, and InnoPeak stated that they "(including subsidiaries, officers, agents, and employees) will comply with their obligations under the law to preserve all documents, data, devices, communications, and other evidence potentially relevant to the facts and circumstances of this case." *Id*.

## VII.   DISCLOSURES

The Parties served initial disclosures pursuant to Federal Rule of Civil Procedure 26(a) on June 24, 2026.

Apple served its initial Trade Secret Disclosure on September 11, 2025, and supplementations thereto on October 20, 2025, and November 3, 2025.

## VIII.   DISCOVERY

### A.   Expedited Discovery Taken to Date

The Parties have conducted expedited discovery in connection with the preliminary injunction process, as set forth below.  *See* Dkts. 30, 41, 90. Apple served the following discovery, to which Defendants have responded. Specifically, OPPO produced 1,684 documents, InnoPeak produced 192 documents, and Dr. Shi produced 16,568 documents, almost all of which were part of the forensic collection of Dr. Shi's personal devices in accordance with Dkt. 79:

- First Set of Interrogatory Requests on Dr. Shi on August 26, 2025, amended on September 12, 2025;
- First Set of Requests for Production on Dr. Shi on August 26, 2025, amended on September 12, 2025;
- First Set of Interrogatory Requests on OPPO on August 26, 2025;

- First Set of Requests for Production on OPPO on August 26, 2025;
- First Set of Interrogatory Requests on InnoPeak on August 26, 2025; and
- First Set of Requests for Production on InnoPeak on August 26, 2025.

Apple additionally served its Trade Secret Disclosure, First Supplemental Disclosure, and Second Supplemental Disclosure on September 11, 2025, October 20, 2025, and November 3, 2025, respectively.

OPPO served the following discovery, to which Apple responded and produced certain responsive documents:

- First Set of Interrogatory Requests on Apple on September 18, 2025;
- First Set of Requests for Production on Apple on September 18, 2025; and
- First Set of Requests for Admission on Apple on September 18, 2025.

InnoPeak served the following discovery, to which Apple responded and produced certain responsive documents:

- First Set of Interrogatory Requests on Apple on September 18, 2025;
- First Set of Requests for Production on Apple on September 18, 2025; and
- First Set of Requests for Admission on Apple on September 18, 2025.

Dr. Shi served the following discovery, to which Apple responded and produced certain responsive documents:

- First Set of Interrogatory Requests on Apple on November 5, 2025; and
- First Set of Requests for Production on Apple on November 5, 2025.

Dr. Zeng was named as a party in an amended complaint filed on January 5, 2026, and did not serve discovery requests during expedited discovery, because he was not yet a party.  Dkt. 251.

Apple has produced 1,298 documents.

Apple took depositions between October 22, 2025 and January 12, 2026.  Of those depositions, four were 30(b)(1) depositions of OPPO/InnoPeak employees, three were witnesses OPPO designated as 30(b)(6) witnesses, and two were witnesses InnoPeak designated as 30(b)(6) witnesses.  The remaining five depositions were of OPPO's expert witnesses:

- Igor Efimov
- Paul Connolly

- William Haughey
- Yunwen Su
- Han Lai

Defendants took four depositions between October 22, 2025 and January 12, 2026, two of which were 30(b)(1) and 30(b)(6) depositions of Apple employees and two were of Apple experts presented by Apple in support of Apple's Motion for Preliminary Injunction:

- Daniel Roffman
- Majid Sarrafzadeh

**B.  Scope of Anticipated Discovery**

The Parties agree that full discovery is now open and that fact discovery should not be conducted in phases or otherwise limited, except as provided under the Federal Rules of Civil Procedure, Local Rules, and this Court's Standing Orders, for matters related to the above-captioned matter.  The Parties do not agree or concede that any of the material listed below is discoverable or admissible, and the Parties reserve all of their objections to any forthcoming discovery requests.

**Plaintiff Apple's Anticipated Discovery:**

Apple served the following written discovery requests on each of the Defendants on May 18, 2026, for which Defendants' responses are due on July 8, 2026 by the Parties' agreement, and for which additional productions of documents and other materials will be necessary:

- Second Set of Interrogatory Requests on Dr. Shi;
- Second Set of Requests for Production on Dr. Shi;
- Second Set of Interrogatory Requests on OPPO;
- Second Set of Requests for Production on OPPO;
- Second Set of Interrogatory Requests on InnoPeak;
- Second Set of Requests for Production on InnoPeak;
- First Set of Interrogatory Requests on Dr. Zeng; and
- First Set of Requests for Production on Dr. Zeng.

Apple will continue to take additional discovery regarding, but not limited to the following topics, including through written discovery, third party discovery, and depositions (including in the near term):

- Defendants' past and ongoing misappropriation of Apple's trade secrets;

- Dr. Shi's breach of his Intellectual Property Agreement with Apple through his taking, use, and dissemination of Apple trade secrets and proprietary information, and Defendants' encouragement and knowledge of thereof;

- Technical documentation relevant to Defendants' use and disclosure of Apple trade secrets and proprietary information in Defendants' products and business;

- Defendants' failure to maintain or produce materials containing or evidencing Apple trade secrets and proprietary information, including whether, when, and why materials were deleted or withheld;

- Defendants' development and/or incorporation of the functionality, operation, and/or design of optical, thermal, ECG, MEMS, and spatial sensor technologies into Defendants' products;

- Financial information relevant to calculation of damages;

- The dissemination, disclosure, and use of Apple's trade secrets within Defendants' operations and to and by third parties;

- Forensic images of relevant devices and accounts, including devices and accounts used in furtherance of trade secret misappropriation, dissemination of Apple's trade secrets within Defendants, and communications with Dr. Shi; and

- Injunctive relief.

Apple additionally anticipates taking forensic discovery of Defendants' devices and systems, including through the provision of forensic images not exchanged during expedited discovery and forensic inspection of devices and other storage media not subjected to forensic discovery during expedited discovery.

**Defendants' Anticipated Discovery:**

Defendants anticipate taking additional discovery regarding, but not limited to, the following topics:

- Apple's development of its claimed trade secrets;

- The value that Apple's claimed trade secrets derive from not being publicly known;

- The steps Apple takes to maintain the confidentiality of its claimed trade secrets;

- The basis for Apple's allegations that Defendants have misappropriated Apple's claimed trade secrets;

- The irreparable harm Apple is allegedly suffering;

- The basis for and calculation of Apple's alleged damages, including but not limited to any claimed unjust enrichment, avoided development costs, or reasonable royalty damages;

- The public availability and ascertainability of Apple's claimed trade secrets through Apple's own patents, patent applications, publications, marketing materials, product teardowns, and other public disclosures;

- Apple's failure to take reasonable measures to protect its claimed trade secrets;

- The public availability and ascertainability of Apple's claimed trade secrets through third-party patents, patent applications, publications, marketing materials, product teardowns, and other public disclosures; and

- Apple's identification and definition of its claimed trade secrets, including the timing, scope, and sufficiency of Apple's trade secret disclosures.

### C.    Limitations or Modifications of the Discovery Rules

Pursuant to applicable limitations under Federal Rule of Civil Procedure 30, each side is limited to ten (10) depositions of up to seven (7) hours absent stipulation of the Parties or order of the Court [**Apple proposes and Defendants disagree:** and not inclusive of any depositions or deposition hours spent in expedited discovery.][2]. However, the Parties shall meet and confer regarding the appropriate

---

[2] [**APPLE:** Expedited discovery was limited in scope. Defendants' suggestion (made for the first time on the day the parties filed their joint discovery report) that depositions taken in expedited discovery should count against total depositions severely limits Apple's ability to take depositions in fact discovery at all. This is improper and highly prejudicial, particularly given the number of defendants (four) and the limited scope of expedited discovery, which the Court acknowledged. *See, e.g.*, Dkt. 315 at 3-4 ("Apple was constrained at that time by the presiding judge's order's and admonishments to 'focus' its discovery on what it required to file its preliminary injunction motion."). Apple took five 30(b)(1) depositions during expedited discovery, meaning Defendants would presumptively limit Apple to only five more. The five depositions that Apple did take were severely constrained by the limited record during expedited discovery. Each of the five depositions was translated, yet none exceeded 7 hours on the record (and some were shorter than that). The deposition of Dr. Shi was significantly limited because Dr. Shi refused to provide discovery on many topics. Dkt. 125 (limiting Dr. Shi's deposition to agreed topics). And Dr. Zeng's deposition was conducted while Defendants were withholding critical, relevant discovery, including critical evidence of copying of Apple's trade secret information into presentations at OPPO

number of depositions after the exchange of initial disclosures. The Parties shall additionally meet and confer regarding any request for a second deposition of a witness who was previously deposed during expedited discovery. This agreement to meet and confer shall not be used to suggest that there is a presumption for or against proceeding with such depositions. The Parties may additionally take depositions of third-party witnesses and expert witnesses, and [**Apple proposes and Defendants disagree:** third-party witnesses and] expert depositions shall not be included in the number of depositions prescribed for Party witnesses. A deposition shall not exceed seven hours on the record absent a showing

(Dkt. 299 at 4 (referencing documents first produced in *March* 2025; Dkt. 266 at 1 (referring to Defendants' belated production of misappropriation evidence)), evidence of his "loaner laptop" at InnoPeak during key months of misappropriation (April to July 2025), (Dkt. 218 (Connolly Decl.) ¶ 35; Dkt. 219-1 (Zeng Dep. Tr.) at 15:19-23, 26:22-27:9, 40:19-24), and before he was identified as a Defendant himself. Defendants' decision to change their position on the day of filing regarding how depositions should be counted prevented the parties from conferring on this issue, and reaching an alternative solution, e.g., deposition hours. Defendants should not be permitted to benefit from their gamesmanship and refusal to meaningfully confer, and instead, the parties should continue to confer as Defendants proposed (and Apple agreed) to do with respect to interrogatories.]

[**DEFENDANTS:** Contrary to Apple's suggestion, Defendants have been consistent in their position that depositions should proceed pursuant to Rule 30 of the Federal Rules of Civil Procedure, with the opportunity to meet and confer in the context of a specific deposition request should good cause arise that requires a departure from those rules. Apple has taken five 30(b)(1) depositions to date. Its contention that it will be essentially unable to take any discovery is hyperbolic. Instead, Defendants position simply requires Apple to be mindful in the depositions it pursues and efficient in discovery, particularly given that the expedited discovery Apple received was far-reaching in breadth and directly relevant to the core issues in the case, including essentially all of the subjects that Apple lists in its anticipated discovery above. *See e.g., Jones v. Sunbelt Rentals, Inc.*, 2023 WL 10691302, at *2 (N.D. Cal. Nov. 16, 2023) (denying request for leave to depose every person identified on initial disclosures, noting that "[b]y imposing a presumptive ten-deposition limit, the Rule's objective is to emphasize that counsel have a professional obligation to develop a mutual cost-effective plan for discovery in the case.") (internal quotation omitted). Apple's suggestion that Dr. Zeng should be deposed again is meritless. Dr. Zeng has already sat for a 7-hour deposition, answering a wide variety of questions related to Apple's claims. The fact that his testimony flatly contradicts Apple's accusations does not justify giving Apple a second opportunity. And the suggestion that discovery produced after his testimony justifies such an imposition is similarly meritless. The discovery identified by Apple is either cumulative to other materials previously produced, or immaterial to Apple's claims. Regardless, Defendants intend to meet and confer with Apple in good faith should there be good cause to exceed the default limits set by the Federal Rules. It is premature, however, to determine if such good cause exists before any additional depositions have been noticed. There is no need for the Court to address an exception to the presumptive ten deposition limit at the outset, and in a vacuum.]

of good cause. The Parties shall meet and confer regarding an appropriate time limit for 30(b)(6) depositions.

Additionally, pursuant to other applicable limitations under Federal Rule of Civil Procedure 33, the Parties are continuing to confer regarding the number of interrogatories each Party will serve. The framework for the discussion provides that a certain number of interrogatories will be served on or by certain groups of Defendants (i.e. individual or corporate Defendants), and a certain number of interrogatories will be served on or by a group of Defendants. The goal for all Parties is to avoid duplicative discovery amongst the Parties, with each Party responding to no more than twenty-five (25) interrogatories served by any other Party (individually or jointly), including those served during expedited discovery.

**D.      E-Discovery Order**

The Parties submitted a proposed ESI protocol to the Court on June 29, 2026. The Parties have additionally discussed the number of ESI custodians, and a schedule for exchanges attendant to the ESI protocol, including the identification of custodians, search terms, search term hits, and production of ESI and will continue to seek an agreement between the parties.

**E.      Discovery Plan**

The Parties have agreed on the Discovery Plan pursuant to Federal Rule of Civil Procedure 26(f) as set forth in their Joint Proposed Discovery Plan, filed on June 17, 2026, (Dkt. 395), and as in Exhibit A to this Joint Case Management Statement:

**F.      Issues Regarding Claims of Privilege or Protection**

The Parties are not presently aware of any disputes related to privilege. The Parties have met and conferred regarding privilege logs, and have agreed to produce privilege logs consistent with their practice in expedited discovery.

**G.      Modification of Discovery Plan**

The Parties do not presently seek changes to the Discovery Plan (Dkt. 395). The Parties may modify the Discovery Plan only by written agreement or by order of the Court.

### H.    Identified Discovery Disputes

The Parties identify the discovery disputes set forth herein on pages 15-17 regarding deposition counting and hours (and similarly set forth in the Parties' Joint Discovery Plan (Dkt. 395) at pages 5-6) as ready for the Court's determination. The Parties additionally note that they are continuing to meet and confer regarding (1) the process by which custodial ESI will be identified and produced, (2) the number of interrogatories, and their counting, by each Party, and (3) the production of forensic discovery, as set forth in the Parties' Joint Status Report (Dkt. 397).

Should additional disputes arise, the Parties will meet and confer regarding any discovery disputes and, if needed, will raise any discovery disputes in accordance with the governing federal and local rules, and pursuant to any orders issued by the Court.

## IX.    CLASS ACTION

This is not a class action lawsuit.

## X.    RELATED CASES

The Parties are not aware of any related cases or proceedings before this Court, another court, or administrative body.

## XI.    RELIEF

### A.    Apple's Statement For Relief

Apple has requested a preliminary injunction to stop Defendants OPPO's and InnoPeak's misappropriation of Apple's trade secrets and Dr. Shi's breach of his confidentiality obligations in his IPA.  Dkt. 155; *see also* Dkt. 382. Apple further requests a judgment that Defendants OPPO, InnoPeak, and Dr. Zeng willfully and maliciously misappropriated Apple's trade secrets, and that Dr. Shi breached his IPA by exfiltrating, disclosing, and using Apple's confidential and proprietary information.  Upon such a finding, Apple requests entry of a permanent injunction enjoining Defendants from retaining, using, disseminating, or otherwise utilizing Apple's trade secrets and proprietary information.  Apple also requests an order awarding damages in an amount permissible under the Defend Trade Secrets Act and for breach of contract, including (as appropriate to the claim) actual losses, unjust enrichment, or a reasonable royalty, along with prejudgment and post-judgment interest, attorneys' fees and costs, and exemplary damages.

For the first time during the CMC exchange process on June 30, Defendants alleged that Apple's complaint was supposedly brought in bad faith as to all Defendants. Defendants provided no basis for such an assertion, and it is flatly contradicted by the detailed evidence of their concerted efforts to misappropriate Apple's trade secrets as described in Apple's complaint and PI briefing. Defendants are not entitled to any relief.

### B.    Defendants' Statement for Relief

Defendants deny that Apple is entitled to any relief, including any form of equitable relief (whether preliminary or permanent) or any sort of monetary recovery. Defendants reserve all rights to seek attorneys' fees and costs against Apple for bad-faith prosecution of claims against each Defendant alongside any and all other forms of equitable relief as may be available under the law and that the Court may deem just and proper. Dr. Zeng further requests that the restrictions imposed on him by the Interim Measures be lifted and that he be permitted to pursue his life's work, developing technology to improve the health of users around the world.

Apple's suggestion that Defendants raised this issue "for the first time" on June 30 is incorrect. Defendants expressly reserved these rights earlier in their initial disclosures. For example, OPPO's disclosures stated that OPPO "reserves all rights in respect of the recovery of all damages, costs, and expenses arising from Apple's claims in this action, as well as any future claims or counterclaims that OPPO may assert, including but not limited to OPPO's attorneys' fees and costs incurred in defending this action."

Nor is the basis for these reservations unsupported. As set forth in Defendants' preliminary injunction opposition and the accompanying expert and fact declarations, the information Apple claims as trade secrets is publicly known or readily ascertainable, no Defendant received, used, or disclosed any Apple trade secret, and OPPO independently developed the technologies at issue years before Dr. Shi's arrival. Apple's decision to pursue sweeping relief on that record, including the continued sidelining of Dr. Zeng, supplies one basis for Defendants' reservation of the right to seek fees and costs. In addition, should Apple continue to maintain claims and theories based on assertions that have been proven demonstrably false or trade secrets that do not exist, Defendants may seek fees and costs from defending against such bad-faith claims. In any event, Apple cannot reasonably complain about this reminder when Civil Local Rule 16-9

and the Court's Case Management Statement form requires the parties to set forth any contemplated relief. As such, Defendants do not, by this statement, waive or limit any of the reservations set forth above, and they expressly preserve all rights to seek attorneys' fees, costs, and any other relief available under applicable law.

## XII.    SETTLEMENT AND ADR

Pursuant to Civil Local Rule 16-8 and ADR Local Rule 3-5, the Parties met and conferred regarding ADR, have read the handbook entitled "Alternative Dispute Resolution Procedures Handbook" on the Court's ADR website, and agree to private mediation with a mediator to be agreed-to by all Parties. Plaintiff Apple and Defendants OPPO, InnoPeak, and Dr. Shi filed ADR Certifications on November 12, 2025, and Dr. Zeng filed an ADR certification on June 30, 2036.  Dkts. 137, 139, 140, 141, and 401. All parties have agreed to stipulate to an ADR process.

The Parties believe additional discovery is necessary prior to an ADR session, and propose completing ADR within six weeks after the close of fact discovery.

## XIII.   OTHER REFERENCES

The Parties do not believe that special procedures, such as reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation, are warranted at this time.

## XIV.   NARROWING OF ISSUES

The parties are not aware of any issues for narrowing at this time.  The Parties will continue to meet and confer on any potential future narrowing as appropriate.

## XV.    SCHEDULING

The Parties' proposed schedule is set forth in the attached Exhibit A, which includes proposed pretrial and trial dates.

## XVI.   TRIAL

The Parties estimate that trial will last approximately ten days.  A jury trial has been demanded on all issues triable by a jury.

## XVII.  DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Plaintiff Apple and Defendants Dr. Shi, Dr. Zeng, OPPO and InnoPeak have filed their respective Certificates of Interested Parties and Entities pursuant to Civil Local Rule 3-15 and Federal Rule of Civil Procedure 7.1(a).  Dkts. 3, 86, 89, 95 and 400.

Apple states that, other than the named parties, there are no such interests to report.

Defendants state that, other than the named parties as well as the parties identified in their respective Certificate of Interested Entities, there are no such interests to report.

## XVIII. PROFESSIONAL CONDUCT

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

DATED: July 1, 2026

/s/ Leslie M. Schmidt
Adam R. Alper (SBN: 196834)
adam.alper@kirkland.com
Laura Vartain Horn (SBN: 258485)
laura.vartain@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone:      (415) 439-1400
Facsimile:      (415) 439-1500

Michael W. De Vries (SBN: 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
695 Town Center Drive
Costa Mesa, CA 92626
Telephone:      (714) 982-8822
Facsimile:      (714) 982-8844

Leslie M. Schmidt (admitted *pro hac vice*)
leslie.schmidt@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

David I. Horowitz (SBN: 248414)
david.horowitz@kirkland.com
S. Adina Stohl (SBN: 301252)
adina.stohl@kirkland.com
Maria M. Beltran (SBN: 327237)
maria.beltran@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone:      (310) 552-4200
Facsimile:      (310) 552-5900

*Attorneys for Plaintiff Apple Inc.*

Respectfully submitted,

/s/ Annabel H. Chang
Annabel Hayoung Chang (SBN: 267261)
annabel@ahc-law.com
LAW OFFICES OF ANNABEL H. CHANG APC
39116 Fremont Hub #1121
Fremont, CA 94536
Telephone:      (510) 404-8186

Max C. Nicholas (admitted *pro hac vice*)
maxn@maxnicholasllc.com
40 Exchange Place, 18th Floor
New York, NY 10005
Telephone:      (646) 741-0229

*Attorney for Defendant Chen Shi*

/s/ David Eiseman
Robyn Carrico Crowther (SBN: 193840)
rcrowther@steptoe.com
STEPTOE LLP
633 West Fifth Street, Suite 1900
Los Angeles, CA 90017
Telephone:      (213) 439-9428

Boyd T. Cloern (admitted *pro hac vice*)
bcloern@steptoe.com
Yueyue Wang (admitted *pro hac vice*)
gwang@steptoe.com
STEPTOE LLP
1330 Connecticut Ave., Ste. 2800
Washington, DC 20036
Telephone:      (202) 429-3000

Ryan S. Landes (SBN: 252642)
ryanlandes@quinnemanuel.com
Patrick Schmidt
patrickschmidt@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone:      (213) 443-3145

David Eiseman (SBN: 114758)
davideiseman@quinemmanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP

50 California St., 22nd Floor
San Francisco, CA 94111
Telephone:     (415) 875-6314

Yixuan Zhu (admitted *pro hac vice*)
yixuanzhu@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Central Park Plaza, 13th Floor
10 Chaoyang Park South Road
Chaoyang District
Beijing 100026, China
Telephone: +86 10 53350105

*Attorneys for Defendant Guangdong Oppo Mobile
Telecommunications Corp., Ltd.,*

 /s/ Victor H. Yu
Nathaniel M. Carle (SBN: 304846)
ncarle@katzruby.com
Victor H. Yu (SBN: 325411)
vyu@katzruby.com
KATZ RUBY & CARLE LLP
3420 Bristol St Ste 600
Costa Mesa, CA 92626
Telephone:     (510) 386-4919

*Attorneys for Defendant InnoPeak Technology,
Inc.*

 /s/ Andrew F. Dawson
Andrew F. Dawson (SBN: 264421)
adawson@keker.com
Cody J.K. Gray (SBN: 310525)
cgray@keker.com
JiLon Li (SBN: 348025)
jli@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     (415) 391-5400

*Attorneys for Defendant Zijing Zeng*

**ATTESTATION:** Pursuant to Local Rules 5-1(i)(3) I hereby attest that concurrence in the filing of this document has been obtained from Annabel H. Chang, David Eiseman, Victor H. Yu, and Andrew F. Dawson.

/s/ Leslie M. Schimdt
Leslie M. Schmidt